No. 23-40137

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

Diamond Services Corporation,

Plaintiff – Appellant

v.

RLB Contracting, Incorporated;
Harbor Dredging, Incorporated;
Travelers Casualty and Surety Company of America

Defendants – Appellees

---

On Appeal from
United States District Court for the Southern District of Texas (Galveston)
3:21-CV-00253

---

**RECORD EXCERPTS OF APPELLANT**
DIAMOND SERVICES CORPORATION

## INDEX

1. Docket Sheet
      (ROA.23-40137.1-10)


2. Memorandum Opinion and Order denying [30]
      (ROA.23-40137.11-39)


3. Memorandum Opinion and Order [60] [58] [63] [46] [50] [65] [64] [49]
      (ROA.23-40137.40-59)


4. Notice of Appeal
      (ROA.23-40137.60)

Respectfully submitted,

/S/Harry E. Morse
Bohman Morse, LLC
400 Poydras Street, Suite 2050
New Orleans, Louisiana 70130

Attorney for Appellant,
Diamond Services Corporation

## Certificate of Service

I hereby certify that on the 5th day of May, 2023, an electronic copy of the *Record Excerpts* were filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit suing the appellate CM/ECF system, which will serve all counsel.

# Tab 1

APPEAL,MOTREF

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Galveston)
### CIVIL DOCKET FOR CASE #: 3:21-cv-00253

Diamond Services Corporation v. RLB Contracting, Inc. et al          Date Filed: 09/16/2021
Assigned to: Judge Jeffrey V Brown                                   Jury Demand: Both
Cause: 28:1332 Diversity-Miller Act                                  Nature of Suit: 130 Miller Act
                                                                     Jurisdiction: Federal Question

**Plaintiff**

**Diamond Services Corporation**                represented by   **Harry Edson Morse**
                                                                 Bohman Morse, LLC
                                                                 400 Poydras St.
                                                                 Ste. 2050
                                                                 New Orleans, LA 70130
                                                                 504-930-4009
                                                                 Email: harry@bohmanmorse.com
                                                                 *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**RLB Contracting, Inc.**                       represented by   **Mark Christopher Guthrie**
                                                                 Winstead PC
                                                                 2728 N. Harwood Street
                                                                 500 Winstead Building
                                                                 Dallas, TX 75201
                                                                 713-650-8400
                                                                 Email: mguthrie@winstead.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Cody Nathan Schneider**
                                                                 Winstead PC
                                                                 600 Travis Street
                                                                 Suite 5200
                                                                 Houston, TX 77002
                                                                 713-650-2665
                                                                 Fax: 713-650-2400
                                                                 Email: cschneider@winstead.com
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **John Thomas Wooldridge , Jr.**
                                                                 Winstead PC
                                                                 600 Travis
                                                                 Ste 5200
                                                                 Houston, TX 77056
                                                                 713-739-7007
                                                                 Email: jwooldridge@winstead.com
                                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Harbor Dredging, Inc.**

represented by **Christopher Solop**
Biggs, Pettis, Ingram & Solop, PLLC
Suite 101
111 East Capitol Street
Jackson, MS 39201
601.987.4822
Email: csolop@bpislaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Barfield**
Maron Marvel Bradley Anderson & Tardy LLC
1020 Highland Colony Parkway
Ste 400
Ridgeland, MS 39157
601-812-6630
Fax: 601-206-0119
Email: dbarfield@maronmarvel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Travelers Casualty and Surety Company of America**

represented by **Elliot W. Scharfenberg**
Krebs Farley, PLLC
400 Poydras Street
Ste 2500
New Orleans, LA 70130
504-299-3570
Fax: 504-299-3582
Email: escharfenberg@krebsfarley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**j. Megan daily**
Krebs Farley & Dry, PLLC
Suite 2500
400 Poydras Street,
New Orleans, LA 70130
504-299-3588
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cody Nathan Schneider**
(See above for address)
*TERMINATED: 11/05/2021*
*ATTORNEY TO BE NOTICED*

**Steven Kyle Cannon**
Dry Law PLLC
909 18th St
Plano, TX 75074
972-797-9512
Fax: 972-797-9510

Email: scannon@drylaw.com
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**RLB Contracting, Inc.**                    represented by  **Mark Christopher Guthrie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cody Nathan Schneider**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Thomas Wooldridge , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Diamond Services Corporation**            represented by  **Harry Edson Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**RLB Contracting, Inc.**                    represented by  **Mark Christopher Guthrie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cody Nathan Schneider**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Thomas Wooldridge , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Diamond Services Corporation**            represented by  **Harry Edson Morse**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2021 | 1 | COMPLAINT against Harbor Dredging, Inc., RLB Contracting, Inc., Travelers Casualty and Surety Company of America (Filing fee $ 402 receipt number 0541-27051636) filed by Diamond Services Corporation. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Morse, Harry) (Entered: 09/16/2021) |
| 09/17/2021 | 2 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 1/19/2022 at 09:00 AM in by video before Magistrate Judge Andrew M Edison(Signed by Judge Jeffrey V Brown) Parties notified.(agould, 3) (Entered: 09/17/2021) |

ROA.23-40137.3

| 09/28/2021 | 3 | Request for Issuance of Summons as to Harbor Dredging, Inc., RLB Contracting, Inc., Travelers Casualty and Surety Company of America, filed. (Attachments: # 1 Errata, # 2 Errata)(Morse, Harry) (Entered: 09/28/2021) |
|---|---|---|
| 09/28/2021 | 4 | CERTIFICATE OF INTERESTED PARTIES by Diamond Services Corporation, filed.(Morse, Harry) (Entered: 09/28/2021) |
| 09/29/2021 | 5 | Summons Issued as to Travelers Casualty and Surety Company of America. Issued summons delivered to plaintiff by NEF, filed.(MarySanchez, 3) (Entered: 09/29/2021) |
| 09/29/2021 | 6 | Summons Issued as to Harbor Dredging, Inc.. Issued summons delivered to plaintiff by NEF, filed. (MarySanchez, 3) (Entered: 09/29/2021) |
| 09/29/2021 | 7 | Summons Issued as to RLB Contracting, Inc.. Issued summons delivered to plaintiff by NEF, filed. (MarySanchez, 3) (Entered: 09/29/2021) |
| 10/18/2021 | 8 | CERTIFICATE OF INTERESTED PARTIES by RLB Contracting, Inc., Travelers Casualty and Surety Company of America, filed.(Schneider, Cody) (Entered: 10/18/2021) |
| 10/26/2021 | 9 | NOTICE *of Compliance with Local Rule 6* by RLB Contracting, Inc., filed. (Schneider, Cody) (Entered: 10/26/2021) |
| 11/04/2021 | 10 | NOTICE of Appearance by Steven K. Cannon on behalf of Travelers Casualty and Surety Company of America, filed. (Cannon, Steven) (Entered: 11/04/2021) |
| 11/04/2021 | 11 | MOTION to Substitute Attorney Steven K. Cannon in place of Mark C. Guthrie, Cody N. Schneider, and D. Blake Wilson by Travelers Casualty and Surety Company of America, filed. Motion Docket Date 11/26/2021. (Attachments: # 1 Proposed Order)(Cannon, Steven) (Entered: 11/04/2021) |
| 11/05/2021 | 12 | ORDER granting 11 Motion to Substitute Attorney Attorney Cody Nathan Schneider terminated. (Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 4) (Entered: 11/05/2021) |
| 11/08/2021 | 13 | NOTICE *of Compliance with LR 6* by Travelers Casualty and Surety Company of America, filed. (Cannon, Steven) (Entered: 11/08/2021) |
| 11/09/2021 | 14 | ANSWER to 1 Complaint, with Jury Demand by Harbor Dredging, Inc., filed.(Barfield, David) (Entered: 11/09/2021) |
| 11/09/2021 | 15 | CORPORATE DISCLOSURE STATEMENT by Harbor Dredging, Inc., filed.(Barfield, David) (Entered: 11/09/2021) |
| 11/11/2021 | 16 | MOTION for Megan Daily to Appear Pro Hac Vice by Travelers Casualty and Surety Company of America, filed. Motion Docket Date 12/2/2021. (Cannon, Steven) (Entered: 11/11/2021) |
| 11/11/2021 | 17 | MOTION for Elliot Scharfenberg to Appear Pro Hac Vice by Travelers Casualty and Surety Company of America, filed. Motion Docket Date 12/2/2021. (Cannon, Steven) (Entered: 11/11/2021) |
| 11/12/2021 | 18 | ORDER granting 16 Motion for J. Megan Daily to Appear Pro Hac Vice.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 4) (Entered: 11/12/2021) |
| 11/12/2021 | 19 | ORDER granting 17 Motion for Elliot Scharfenberg to Appear Pro Hac Vice.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 4) (Entered: 11/12/2021) |
| 11/12/2021 | 20 | MOTION for Christopher Solop to Appear Pro Hac Vice by Harbor Dredging, Inc., filed. Motion Docket Date 12/3/2021. (Barfield, David) (Entered: 11/12/2021) |
| 11/17/2021 | 21 | ORDER granting 20 Motion for Christopher Solop to Appear Pro Hac Vice.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 4) (Entered: 11/17/2021) |
| 12/03/2021 | 22 | MOTION to Dismiss by RLB Contracting, Inc., filed. Motion Docket Date 12/27/2021. (Attachments: # 1 Exhibit Ex. 1, # 2 Exhibit Ex. 2, # 3 Exhibit Ex. 3, # 4 Exhibit Ex. 4)(Guthrie, Mark) (Entered: 12/03/2021) |

| 12/27/2021 | 23 | RESPONSE in Opposition to 22 MOTION to Dismiss , filed by Diamond Services Corporation. (Attachments: # 1 Exhibit)(Morse, Harry) (Entered: 12/27/2021) |
|---|---|---|
| 01/03/2022 | 24 | REPLY in Support of 22 MOTION to Dismiss , filed by RLB Contracting, Inc.. (Attachments: # 1 Exhibit Exhibit 5 - Excerpts from Prime Contract, # 2 Exhibit Exhibit 6 - Ltr & Joint Check to Diamond (Redacted))(Schneider, Cody) (Entered: 01/03/2022) |
| 01/07/2022 | 25 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Diamond Services Corporation, filed. (Morse, Harry) (Entered: 01/07/2022) |
| 01/18/2022 | 26 | RESPONSE to 23 Response in Opposition to Motion *Request for Summary Judgment Pursuant to Rule 56(f)*, filed by RLB Contracting, Inc.. (Attachments: # 1 Exhibit Exhibit 1, # 2 Proposed Order Proposed Order)(Schneider, Cody) (Entered: 01/18/2022) |
| 01/19/2022 | 27 | Corrected CORPORATE DISCLOSURE STATEMENT by Harbor Dredging, Inc., filed.(Barfield, David) (Entered: 01/19/2022) |
| 01/19/2022 | 28 | DOCKET CONTROL ORDER. Jury. Amended Pleadings due by 2/4/2022. Joinder of Parties due by 2/4/2022 Pltf Witness List due by 5/27/2022. Pltf Expert Report due by 5/27/2022. Deft Expert Witness List due by 6/24/2022. Deft Expert Report due by 6/24/2022. Discovery due by 7/29/2022. Dispositive Motion Filing due by 8/5/2022. Non-Dispositive Motion Filing due by 9/16/2022. Exchange Pretrial Materials due by 11/4/2022. Docket Call set for 11/11/2022 at 09:30 AM in Sixth Floor Courtroom Galveston before Judge Jeffrey V Brown(Signed by Magistrate Judge Andrew M Edison) Parties notified.(agould, 3) (Entered: 01/19/2022) |
| 01/19/2022 | | Minute Entry for proceeding held before Magistrate Judge Andrew M Edison on January 19, 2022. Initial Conference Held. Docket Control Order to be entered. Appearances: Harry Morse for Plaintiff, Mark Guthrie and John Wooldridge Jr for Defendant RLB Contracting, Christopher Solop and David Barfield for Defendant Harbor Dredging, Inc., Elliot Scharfenberg for Travelers Casualty and Surety Company of America.(ERO: yes), filed.(rcastro, 4) (Entered: 01/19/2022) |
| 01/21/2022 | 29 | MOTION for Leave to File file excess pages by Travelers Casualty and Surety Company of America, filed. Motion Docket Date 2/11/2022. (Attachments: # 1 Proposed Order)(Cannon, Steven) (Entered: 01/21/2022) |
| 01/21/2022 | 30 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Travelers Casualty and Surety Company of America, filed. Motion Docket Date 2/11/2022. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Cannon, Steven) (Entered: 01/21/2022) |
| 01/25/2022 | 31 | NOTICE of Appearance by John Wooldridge, Jr. on behalf of RLB Contracting, Inc., filed. (Wooldridge, John) (Entered: 01/25/2022) |
| 02/07/2022 | 32 | MOTION for Leave to File amended complaint by Diamond Services Corporation, filed. Motion Docket Date 2/28/2022. (Attachments: # 1 Exhibit Proposed pleading)(Morse, Harry) Modified on 5/9/2022 (GeorgeCardenas, 4). Modified on 5/9/2022 (GeorgeCardenas, 4). (Entered: 02/07/2022) |
| 02/08/2022 | 33 | ORDER granting 29 Motion for Leave to File.(Signed by Judge Jeffrey V Brown) Parties notified. (GeorgeCardenas, 4) Modified on 5/5/2022 (GeorgeCardenas, 4). (Entered: 02/08/2022) |
| 02/11/2022 | 34 | RESPONSE in Opposition to 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , filed by Diamond Services Corporation. (Attachments: # 1 Affidavit)(Morse, Harry) (Entered: 02/11/2022) |
| 02/22/2022 | 35 | MOTION to Strike 34 Response in Opposition to Motion *to Dismiss* by RLB Contracting, Inc., filed. Motion Docket Date 3/15/2022. (Attachments: # 1 Proposed Order Order Granting Motion to Strike)(Wooldridge, John) (Entered: 02/22/2022) |
| 02/24/2022 | 36 | RESPONSE to 32 MOTION for Leave to File amended complaint filed by RLB Contracting, Inc.. (Attachments: # 1 Proposed Order Order Granting Motion for Leave)(Wooldridge, John) (Entered: 02/24/2022) |
| 03/14/2022 | 37 | RESPONSE in Opposition to 35 MOTION to Strike 34 Response in Opposition to Motion *to Dismiss*, filed by Diamond Services Corporation. (Morse, Harry) (Entered: 03/14/2022) |

| 03/21/2022 | 38 | REPLY to 37 Response in Opposition to Motion *to Strike*, filed by RLB Contracting, Inc.. (Wooldridge, John) (Entered: 03/21/2022) |
|---|---|---|
| 05/09/2022 | 39 | NOTICE of Referral of Motion to Magistrate Judge Andrew Edison re 32 MOTION for Leave to File amended complaint, filed. (GeorgeCardenas, 4) (Entered: 05/09/2022) |
| 05/10/2022 | 40 | NOTICE of Setting re: 32 MOTION for Leave to File amended complaint. Parties notified. Oral Hearing set for 5/13/2022 at 09:30 AM by video before Magistrate Judge Andrew M Edison, filed. (rcastro, 4) (Entered: 05/10/2022) |
| 05/13/2022 | 41 | AMENDED COMPLAINT against Harbor Dredging, Inc., RLB Contracting, Inc., The Travelers Companies, Inc., Travelers Casualty and Surety Company of America, Travelers Property Casualty Corporation filed by Diamond Services Corporation.(Morse, Harry) (Entered: 05/13/2022) |
| 05/13/2022 | | Minute Entry for proceeding held before Magistrate Judge Andrew M Edison on May 13, 2022. Oral Hearing on Motion for Leave to file Amended Complaint [Dkt. 32]. Court granted motion First Amended Complaint to be filed by 5/16/2022. Parties agreed that current motion to dismiss [Dkt. 22] and accompanying briefing will apply to First Amended Complaint. No additional briefing needed. Appearances: Harry Morse for Plaintiff, John Wooldridge and Cody Schneider for Defendant RLB Contracting, Christopher Solop for Defendant Harbor Dredging, Inc. (Court Reporter: L. Wells), filed.(rcastro, 4) Modified on 5/16/2022 (rcastro, 4). (Entered: 05/13/2022) |
| 05/25/2022 | 42 | ANSWER to 41 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by Harbor Dredging, Inc., filed.(Barfield, David) (Entered: 05/25/2022) |
| 07/11/2022 | 43 | NOTICE to Take Deposition of Jim Furlette by Harbor Dredging, Inc., filed. (Barfield, David) (Entered: 07/11/2022) |
| 07/26/2022 | 44 | Agreed MOTION for Continuance by RLB Contracting, Inc., filed. Motion Docket Date 8/16/2022. (Schneider, Cody) (Entered: 07/26/2022) |
| 07/27/2022 | 45 | ORDER granting 44 Motion for Continuance; Motion-related deadline set re: 44 Agreed MOTION for Continuance. Discovery due by 8/29/2022. Dispositive Motion Filing due by 9/29/2022. Joint Pretrial Order due by 1/9/2023. Docket Call set for 2/10/2023 at 09:30 AM in Sixth Floor Courtroom Galveston before Judge Jeffrey V Brown.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 4) (Entered: 07/27/2022) |
| 09/19/2022 | 46 | MOTION for Summary Judgment by Harbor Dredging, Inc., filed. Motion Docket Date 10/11/2022. (Attachments: # 1 Exhibit "A" Prime Contract Cover, # 2 Exhibit "B" Subcontract Agreement, # 3 Exhibit "C" Sub-Subcontract Agreement, # 4 Exhibit "D" Letter, # 5 Exhibit "E" Harbor REA, # 6 Exhibit "F" Diamond REA, # 7 Exhibit "G" RLB REA, # 8 Exhibit "H" A/R Aged, # 9 Exhibit "I" Furlette Deposition Excerpts, # 10 Exhibit "J" Summary of Payments, # 11 Exhibit "K" Swiber Deposition Excerpts, # 12 Exhibit "L" Boyd Deposition Excerpts, # 13 Exhibit "M" Project Close Out, # 14 Exhibit "N" Modification P00002, # 15 Exhibit "O" Letter, # 16 Exhibit "P" Audio File, # 17 Exhibit "Q" Letter, # 18 Exhibit "R" Swiber Affidavit, # 19 Exhibit "S" Maturin Deposition Excerpts)(Barfield, David) (Entered: 09/19/2022) |
| 09/20/2022 | 47 | Audio EXHIBIT P to DKT 46 MOTION for Summary Judgment by Harbor Dredging, Inc. (1) USB drive placed in an expandable folder on the Clerk's shelf, filed.(CynthiaBenavides, 3) Exhibit checked out by J. Long on 1/11/2023. Modified on 1/11/2023 (CynthiaBenavides, 3). (Entered: 09/21/2022) |
| 09/22/2022 | 48 | ANSWER to 41 Amended Complaint/Counterclaim/Crossclaim etc., 1 Complaint, with Jury Demand, ANSWER to 41 Amended Complaint/Counterclaim/Crossclaim etc., 1 Complaint, with Jury Demand, COUNTERCLAIM against Diamond Services Corporation by RLB Contracting, Inc., filed.(Schneider, Cody) (Entered: 09/22/2022) |
| 09/29/2022 | 49 | MOTION for Summary Judgment *Against Diamond's Claims* by RLB Contracting, Inc., filed. Motion Docket Date 10/20/2022. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 1-A, # 3 Exhibit Exhibit 1-B, # 4 Exhibit Exhibit 1-C, # 5 Exhibit Exhibit 1-D, # 6 Exhibit Exhibit 1-E, # 7 Exhibit Exhibit 1-F, # 8 Exhibit Exhibit 1-G, # 9 Exhibit Exhibit 2, # 10 Exhibit Exhibit 3, # 11 Exhibit Exhibit 4, # 12 Exhibit Exhibit 5, # 13 Exhibit Exhibit 6, # 14 Exhibit Exhibit 7, # 15 |

| | | |
|---|---|---|
| | | Exhibit Exhibit 8, # 16 Exhibit Exhibit 9, # 17 Exhibit Exhibit 10, # 18 Exhibit Exhibit 11, # 19 Proposed Order Proposed Order)(Schneider, Cody) (Entered: 09/29/2022) |
| 09/29/2022 | 50 | MOTION for Summary Judgment *on RLB's Counterclaims Against Diamond* by RLB Contracting, Inc., filed. Motion Docket Date 10/20/2022. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 1-A, # 3 Exhibit Exhibit 1-B, # 4 Exhibit Exhibit 1-C, # 5 Exhibit Exhibit 1-D, # 6 Exhibit Exhibit 1-E, # 7 Exhibit Exhibit 1-F, # 8 Exhibit Exhibit 1-G, # 9 Exhibit Exhibit 2, # 10 Exhibit Exhibit 3, # 11 Exhibit Exhibit 4, # 12 Exhibit Exhibit 5, # 13 Exhibit Exhibit 6, # 14 Exhibit Exhibit 7, # 15 Exhibit Exhibit 8, # 16 Exhibit Exhibit 9, # 17 Exhibit Exhibit 10, # 18 Proposed Order Proposed Order)(Schneider, Cody) (Entered: 09/29/2022) |
| 10/07/2022 | 51 | RESPONSE in Opposition to 46 MOTION for Summary Judgment , filed by Diamond Services Corporation. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit) (Morse, Harry) (Entered: 10/07/2022) |
| 10/13/2022 | 52 | MOTION for Extension of Time To file its reply to Diamond Services Corporation's Opposition to Harbor Dredging's Motion for Summary Judgment by Harbor Dredging, Inc., filed. Motion Docket Date 11/3/2022. (Attachments: # 1 Proposed Order Agreed Order for Extension of Time)(Barfield, David) (Entered: 10/13/2022) |
| 10/14/2022 | 53 | ORDER granting 52 Motion for Extension of Time; Motion-related deadline set re: 52 MOTION for Extension of Time To file its reply to Diamond Services Corporation's Opposition to Harbor Dredging's Motion for Summary Judgment. Replies due by 10/21/2022.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 3) (Entered: 10/14/2022) |
| 10/20/2022 | 54 | RESPONSE in Opposition to 49 MOTION for Summary Judgment *Against Diamond's Claims*, 50 MOTION for Summary Judgment *on RLB's Counterclaims Against Diamond*, filed by Diamond Services Corporation. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(Morse, Harry) (Entered: 10/20/2022) |
| 10/21/2022 | 55 | REPLY to Response to 46 MOTION for Summary Judgment , filed by Harbor Dredging, Inc.. (Attachments: # 1 Exhibit A - Deposition Excerpts of Stephen P. Swiber)(Barfield, David) (Entered: 10/21/2022) |
| 10/25/2022 | 56 | Unopposed MOTION for Extension of Time Replies for Motions for Summary Judgment by RLB Contracting, Inc., filed. Motion Docket Date 11/15/2022. (Attachments: # 1 Proposed Order) (Schneider, Cody) (Entered: 10/25/2022) |
| 10/26/2022 | 57 | ORDER granting 56 Motion for Extension of Time; Motion-related deadline set re: 56 Unopposed MOTION for Extension of Time Replies for Motions for Summary Judgment. Replies due by 11/4/2022.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 3) (Entered: 10/26/2022) |
| 11/04/2022 | 58 | MOTION for Leave to File Excess Pages by RLB Contracting, Inc., filed. Motion Docket Date 11/25/2022. (Attachments: # 1 Proposed Order)(Schneider, Cody) (Entered: 11/04/2022) |
| 11/04/2022 | 59 | REPLY in Support of 49 MOTION for Summary Judgment *Against Diamond's Claims*, 50 MOTION for Summary Judgment *on RLB's Counterclaims Against Diamond*, filed by RLB Contracting, Inc.. (Attachments: # 1 Exhibit Exhibit 1 - Swiber Depo Excerpts, # 2 Exhibit Exhibit 2 - Maturin Depo Excerpts)(Schneider, Cody) (Entered: 11/04/2022) |
| 11/08/2022 | 60 | MOTION to Supplement Motion for Leave to Include Certificate of Conference as to 58 MOTION for Leave to File Excess Pages by RLB Contracting, Inc., filed. Motion Docket Date 11/29/2022. (Schneider, Cody) (Entered: 11/08/2022) |
| 11/09/2022 | 61 | ORDER granting 58 Motion for Leave to File Excess Pages.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 3) (Entered: 11/09/2022) |
| 11/14/2022 | 62 | MEMORANDUM OPINION AND ORDER denying 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, denying 35 MOTION to Strike 34 Response in Opposition to Motion to Dismiss, granted in part and denied in part 22 MOTION to Dismiss (Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 3) (Entered: 11/14/2022) |

| | | |
|---|---|---|
| 12/05/2022 | 63 | MOTION for Judgment by Travelers Casualty and Surety Company of America, filed. Motion Docket Date 12/27/2022. (Attachments: # 1 Proposed Order)(Scharfenberg, Elliot) (Entered: 12/05/2022) |
| 12/06/2022 | 64 | AMENDED COMPLAINT against All Defendants filed by Diamond Services Corporation.(Morse, Harry) (Entered: 12/06/2022) |
| 12/08/2022 | 65 | MOTION to Strike 64 Amended Complaint/Counterclaim/Crossclaim etc. by Travelers Casualty and Surety Company of America, filed. Motion Docket Date 12/29/2022. (Attachments: # 1 Proposed Order)(Scharfenberg, Elliot) (Entered: 12/08/2022) |
| 12/08/2022 | 66 | ANSWER to 64 Amended Complaint/Counterclaim/Crossclaim etc. by Harbor Dredging, Inc., filed.(Barfield, David) (Entered: 12/08/2022) |
| 12/14/2022 | 67 | ORDER (Signed by Judge Jeffrey V Brown) Parties notified.(agould, 3) (Entered: 12/14/2022) |
| 12/15/2022 | 68 | NOTICE of Setting. Parties notified. Mediation set for 1/4/2023 at 11:00 AM by video before Magistrate Judge Andrew M Edison, filed. (rcastro, 3) (Entered: 12/15/2022) |
| 12/22/2022 | 69 | Agreed MOTION for Extension of Time Exchanging Pretrial Material Among the Parties by RLB Contracting, Inc., filed. Motion Docket Date 1/12/2023. (Attachments: # 1 Proposed Order) (Schneider, Cody) (Entered: 12/22/2022) |
| 12/23/2022 | 70 | ORDER granting 69 Motion for Extension of Time; Motion-related deadline set re: 69 Agreed MOTION for Extension of Time Exchanging Pretrial Material Among the Parties..(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 3) (Entered: 12/23/2022) |
| 12/27/2022 | 71 | NOTICE *OF WITHDRAWAL OF DEMAND FOR JURY TRIAL* by Harbor Dredging, Inc., filed. (Barfield, David) (Entered: 12/27/2022) |
| 12/27/2022 | 72 | RESPONSE in Opposition to 63 MOTION for Judgment, filed by Diamond Services Corporation. (Morse, Harry) (Entered: 12/27/2022) |
| 12/27/2022 | 73 | ANSWER to 64 Amended Complaint/Counterclaim/Crossclaim etc., COUNTERCLAIM against Diamond Services Corporation by RLB Contracting, Inc., filed.(Schneider, Cody) (Entered: 12/27/2022) |
| 12/28/2022 | 74 | NOTICE *of Withdrawal of Demand for Jury Trial* by RLB Contracting, Inc., filed. (Schneider, Cody) (Entered: 12/28/2022) |
| 12/28/2022 | 75 | ANSWER to 48 Answer to Amended Complaint,, Answer to Complaint,, Counterclaim, by Diamond Services Corporation, filed.(Morse, Harry) (Entered: 12/28/2022) |
| 12/29/2022 | 76 | RESPONSE in Opposition to 65 MOTION to Strike 64 Amended Complaint/Counterclaim/Crossclaim etc. , filed by Diamond Services Corporation. (Morse, Harry) (Entered: 12/29/2022) |
| 01/03/2023 | 77 | ANSWER to 73 Answer to Amended Complaint, Counterclaim with Jury Demand by Diamond Services Corporation, filed.(Morse, Harry) (Entered: 01/03/2023) |
| 01/03/2023 | 78 | NOTICE *of withdrawal of 9(h) designation* by Diamond Services Corporation, filed. (Morse, Harry) (Entered: 01/03/2023) |
| 01/04/2023 | | Minute Entry: mediation held.(rcastro, 3) (Entered: 01/04/2023) |
| 01/05/2023 | 79 | REPLY in Support of 63 MOTION for Judgment, filed by Travelers Casualty and Surety Company of America. (Scharfenberg, Elliot) (Entered: 01/05/2023) |
| 01/05/2023 | 80 | REPLY in Support of 65 MOTION to Strike 64 Amended Complaint/Counterclaim/Crossclaim etc. , filed by Travelers Casualty and Surety Company of America. (Scharfenberg, Elliot) (Entered: 01/05/2023) |
| 01/11/2023 | 81 | Supplemental INITIAL DISCLOSURES by Harbor Dredging, Inc., filed.(Barfield, David) (Entered: 01/11/2023) |

| | | |
|---|---|---|
| 01/11/2023 | 82 | Joint MOTION to Strike 78 Notice (Other), 77 Answer to Counterclaim *to Strike Diamond's Jury Demand* by RLB Contracting, Inc., filed. Motion Docket Date 2/1/2023. (Attachments: # 1 Proposed Order)(Schneider, Cody) (Entered: 01/11/2023) |
| 01/18/2023 | 83 | REPLY to 73 Answer to Amended Complaint, Counterclaim *Reply in Support of RLB's Motion to Strike Diamond's Second Amended Complaint and Notice of Diamond's Failure to Respond*, filed by RLB Contracting, Inc.. (Attachments: # 1 Proposed Order)(Schneider, Cody) (Entered: 01/18/2023) |
| 02/01/2023 | 84 | RESPONSE in Opposition to 82 Joint MOTION to Strike 78 Notice (Other), 77 Answer to Counterclaim *to Strike Diamond's Jury Demand*, filed by Diamond Services Corporation. (Attachments: # 1 Exhibit)(Morse, Harry) (Entered: 02/01/2023) |
| 02/08/2023 | 85 | Joint REPLY to 84 Response in Opposition to Motion, 82 Joint MOTION to Strike 78 Notice (Other), 77 Answer to Counterclaim *to Strike Diamond's Jury Demand* , filed by RLB Contracting, Inc.. (Schneider, Cody) (Entered: 02/08/2023) |
| 02/09/2023 | | Docket Call canceled. Parties have announced ready for trial. The court will assign once all pending motions are ruled on. (GeorgeCardenas, 3) (Entered: 02/09/2023) |
| 02/14/2023 | 86 | MEMORANDUM OPINION AND ORDER 60 MOTION to Supplement Motion for Leave to Include Certificate of Conference as to 58 MOTION for Leave to File Excess Pages, 63 MOTION for Judgment, 46 MOTION for Summary Judgment, 50 MOTION for Summary Judgment on RLB's Counterclaims Against Diamond, 65 MOTION to Strike 64 Amended Complaint/Counterclaim/Crossclaim etc., 49 MOTION for Summary Judgment Against Diamond's Claims (Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 3) (Entered: 02/14/2023) |
| 02/14/2023 | 87 | ORDER granting 82 Motion to Strike; striking 82 Joint MOTION to Strike 78 Notice (Other), 77 Answer to Counterclaim to Strike Diamond's Jury Demand.(Signed by Judge Jeffrey V Brown) Parties notified.(GeorgeCardenas, 3) (Entered: 02/14/2023) |
| 02/28/2023 | 88 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 86 Memorandum and Order,, by Diamond Services Corporation (Filing fee $ 505, receipt number ATXSDC-29526320), filed.(Morse, Harry) (Entered: 02/28/2023) |
| 02/28/2023 | 89 | DKT13 TRANSCRIPT ORDER REQUEST by Diamond Services Corporation. No hearings This order form relates to the following: 88 Notice of Appeal, filed.(Morse, Harry) (Entered: 02/28/2023) |
| 02/28/2023 | 90 | Joint MOTION for Attorney Fees by RLB Contracting, Inc., Travelers Casualty and Surety Company of America, filed. Motion Docket Date 3/21/2023. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Proposed Order Proposed Order)(Schneider, Cody) (Entered: 02/28/2023) |
| 03/01/2023 | 91 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 88 Notice of Appeal. Fee status: Paid. Reporter(s): ERO, L. Wells, filed. (Attachments: # 1 Notice of Appeal) (EfrainGarcia, 1) (Entered: 03/01/2023) |
| 03/01/2023 | | Appeal Review Notes re: 88 Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid. Hearings were held in the case. DKT13 has been filed indicating that transcripts are unnecessary, filed.(EfrainGarcia, 1) Modified on 3/2/2023 (EfrainGarcia, 1). (Entered: 03/01/2023) |
| 03/01/2023 | 92 | MOTION for Attorney Fees by Harbor Dredging, Inc., filed. Motion Docket Date 3/22/2023. (Attachments: # 1 Exhibit A - Subcontract between Harbor and Diamond, # 2 Exhibit B - Deposition Excerpts of Stephen Swiber, # 3 Exhibit C - Affidavit of Chris Solop)(Barfield, David) (Entered: 03/01/2023) |
| 03/06/2023 | | Notice of Assignment of USCA No. 23-40137 re: 88 Notice of Appeal, filed.(EfrainGarcia, 1) (Entered: 03/06/2023) |
| 03/09/2023 | | Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: 88 Notice of Appeal USCA No. 23-40137, filed.(EfrainGarcia, 1) (Entered: 03/09/2023) |

| | | |
|---|---|---|
| 03/09/2023 | | *** Electronic access has not been assigned. Attorney of record has not filed Notice of Appearance with the 5th Circuit, filed. (EfrainGarcia, 1) (Entered: 03/09/2023) |
| 03/14/2023 | | Electronic Access to Record on Appeal Provided re: 88 Notice of Appeal to Solop, Christopher, Morse, Harry E.. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 23-40137), filed.(EfrainGarcia, 1) (Entered: 03/14/2023) |
| 03/14/2023 | | Electronic Access to Record on Appeal Provided re: 88 Notice of Appeal to Schneider, Cody. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 23-40137), filed.(EfrainGarcia, 1) (Entered: 03/14/2023) |
| 03/16/2023 | | Electronic Access to Record on Appeal Provided re: 88 Notice of Appeal to John T. Wooldridge Jr.. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 23-40137), filed.(EfrainGarcia, 1) (Entered: 03/16/2023) |
| 03/16/2023 | | Electronic Access to Record on Appeal Provided re: 88 Notice of Appeal to Jane Megan Daily. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 23-40137), filed.(EfrainGarcia, 1) (Entered: 03/16/2023) |
| 03/16/2023 | | Electronic Access to Record on Appeal Provided re: 88 Notice of Appeal to Mark Christopher Guthrie. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 23-40137), filed.(EfrainGarcia, 1) (Entered: 03/16/2023) |
| 03/20/2023 | | Electronic Access to Record on Appeal Provided re: 88 Notice of Appeal to Martin Stewart Bohman, Elliot William Scharfenberg. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 23-40137), filed.(EfrainGarcia, 1) (Entered: 03/20/2023) |
| 03/21/2023 | 93 | RESPONSE in Opposition to 90 Joint MOTION for Attorney Fees, filed by Diamond Services Corporation. (Morse, Harry) (Entered: 03/21/2023) |
| 03/22/2023 | 94 | RESPONSE in Opposition to 92 MOTION for Attorney Fees, filed by Diamond Services Corporation. (Morse, Harry) (Entered: 03/22/2023) |
| 03/28/2023 | 95 | REPLY in Support of 90 Joint MOTION for Attorney Fees, filed by RLB Contracting, Inc.. (Attachments: # 1 Exhibit Supplemental Declaration of Mark C. Guthrie Mark)(Wooldridge, John) (Entered: 03/28/2023) |
| 03/29/2023 | 96 | REPLY to Response to 92 MOTION for Attorney Fees, filed by Harbor Dredging, Inc.. (Barfield, David) (Entered: 03/29/2023) |

| | | | | |
|---|---|---|---|---|
| **PACER Service Center** | | | | |
| **Transaction Receipt** | | | | |
| 04/13/2023 13:29:52 | | | | |
| **PACER Login:** | acfowlkes | **Client Code:** | | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cv-00253 | |
| **Billable Pages:** | 10 | **Cost:** | 1.00 | |

# Tab 2

United States District Court
Southern District of Texas
**ENTERED**
November 14, 2022
Nathan Ochsner, Clerk

# In the United States District Court
# for the Southern District of Texas

## GALVESTON DIVISION

No. 3:21-cv-253

DIAMOND SERVICES CORPORATION, *PLAINTIFF*,

v.

RLB CONTRACTING, INC., *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court are three motions: RLB Contracting, Inc.'s motion to dismiss, Dkt. 22; Travelers Casualty and Surety Company of America's motion to dismiss, Dkt. 30; and RLB Contracting's motion to strike, Dkt. 35. The court grants in part and denies in part RLB's motion to dismiss. The remaining motions are denied.

## I.      Background

RLB Contracting, Inc. ("RLB") was awarded a contract by the Army Corps of Engineers ("the Corps") to perform dredging work in the Houston

1/29

ROA.23-40137.11

Ship Channel from Brady Island to the HSC Turning Basin. Dkt. 1 ¶ 8.[1] As required by the contract and the Miller Act, RLB furnished a surety bond which it obtained from Travelers . *Id.* ¶ 9. To assist it in dredging the volume called for by the Corps, RLB contracted with Harbor Dredging. *Id.* ¶ 10. Harbor, in turn, contracted with the plaintiff, Diamond, for the dredge work. *Id.* ¶ 11; *see* Dkt. 1-2 (Harbor-Diamond Subcontract).

At some point, however, it became clear to Diamond that it would not be able to continue the project profitably. *Id.* ¶¶ 18–19. Diamond told RLB that it anticipated leaving the job. *Id.* ¶ 19. In September of 2020, RLB, Harbor, and Diamond met at Diamond's office to talk it through. *Id.* ¶ 20. To accommodate Diamond's growing concerns, RLB informed Diamond that it would "submit a request for equitable adjustment (REA) to ensure everyone was compensated for the unforeseen circumstances of excess detritus" in the channel. *Id.* Diamond, relying on RLB's representations, continued working. *Id.* ¶ 21.

In October 2020, RLB submitted a request to the Corps for an

---

[1] Diamond's live complaint is technically its first amended complaint, Dkt. 41, but this pleading consists of just two paragraphs. The first paragraph designates this as an admiralty claim within Federal Rule of Civil Procedure 9(h). The second paragraph states only that "Diamond re-pleads its original Complaint in full." *Id.* ¶ 2. Accordingly, the court draws the factual pleadings from the original complaint. Dkt. 1.

equitable adjustment, but Diamond was unhappy with the request because it failed to fully account for Diamond's losses. *Id.* ¶¶ 22–26. After soliciting invoices, time sheets, and other information from Diamond, RLB re-submitted its REA to the Corps. *Id.* ¶¶ 27–30.

Diamond additionally alleges that RLB did not have a tug to transport Diamond's barges from the excavation site to the unloading site. *Id.* ¶ 32. The parties disagreed as to who was responsible for supplying the tug, so "Diamond and RLB compromised: they would each fund half the tug." *Id.* ¶ 33. Diamond brokered a tug for the job and sent RLB's half of the tug expenses to Harbor to be passed onto RLB. *Id.* ¶ 35. Diamond alleges RLB has not paid on any tug invoices. *Id.* ¶ 38. Finally, Diamond alleges that RLB underpaid it based on the total yardage called for throughout the entirety of the dredging operation. *Id.* ¶¶ 41–42.

Diamond sued RLB, Harbor, and Travelers under the Miller Act, alleging claims for (1) breach of contract, (2) implied contract, and (3) quasi-contract. *Id.* ¶¶ 49–50. Diamond alleges it is entitled to quantum-meruit and unjust-enrichment damages for its proportionate share of the REA. *Id.* ¶ 51.

Only RLB and Travelers have moved to dismiss. Dkts. 22, 30. As part of its motion to dismiss, Travelers adopted and incorporated by reference the motion to dismiss filed by its principal, RLB. *See* Dkt. 30. After

ROA.23-40137.13

Travelers filed its motion to dismiss, Diamond responded. Dkt. 34. RLB objected to Diamond's response and moved to strike it. Dkt. 38. The court overrules the objection and considers Diamond's response as a proper responsive pleading to Travelers' motion.

## II.  Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a). While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading offering a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not suffice. *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when the plaintiff pleads factual content allowing the court to draw a reasonable inference of the defendant being liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. While the plausibility standard is not akin to

ROA.23-40137.14

a probability requirement, it does ask for more than a sheer possibility of the defendant acting unlawfully. *Id.*

## III. RLB's Motion to Dismiss

In its complaint, Diamond raises allegations against RLB for damages related to (1) expenses for extra work Diamond performed that was submitted to the Corps in the equitable adjustment; (2) procurement of a tug; and (3) amount owed to Diamond based on total yardage dredged under the Subcontract. Dkt. 1 ¶¶ 48–53. RLB argues that Diamond has failed to raise a claim upon which relief can be granted. The court addresses each argument in turn.

### A. Equitable Adjustment Damages

Diamond alleges that RLB was contractually obligated to compensate it for its proportionate share of the equitable adjustment obtained from the Corps. Dkt. 1 ¶¶ 17–31. Diamond contends that it is entitled to such relief under both breach-of-contract and quasi-contract theories. *Id.* RLB denies the existence of an express contract between it and Diamond and also denies any entitlement to unjust enrichment damages because it argues that an express contract—the Subcontract between Diamond and Harbor—covers the subject matter of the dispute. Dkt. 22 ¶ 43.

ROA.23-40137.15

### 1. Breach of Contract

The threshold question for the court is whether Diamond has alleged facts sufficient to demonstrate the existence of a valid and enforceable contract with RLB upon which relief can be granted.

To prevail on a breach-of-contract claim in Texas, a plaintiff must show "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). For a valid contract to exist, there must be an offer, acceptance, and consideration. *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). "To prove that an offer was made, a party must show (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree." *Id.* (citing *KW Constr. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 883 (Tex. App.—Texarkana 2005, pet. denied)).

While a "meeting of the minds" is not an independent element of a valid contract, it explains the "mutual understanding and assent to the expression of the parties' agreement." *Id.* at 40. (citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied)). If

ROA.23-40137.16

evidence of the parties' mutual agreement consists of their conduct and course of dealing with one another, their mutual agreement may be inferred from the circumstances, in which case the contract is "implied" as opposed to "express." *Double Diamond, Inc. v. Hilco Elec. Co-op., Inc.*, 127 S.W.3d 260, 267 (Tex. App.—Waco 2003, no pet.).

On February 29, 2020, Diamond entered into a contract, entitled "Subcontract," with Harbor for dredging services. Dkt. 1-2. The agreement defines Harbor as "Contractor" and Diamond as "Sub-Contractor." The agreement then identifies the Prime Contract and its parties:



Dkt. 1-2 at 1. Diamond argues that this contract binds RLB because it names RLB as the "general contractor." But the fact that RLB is defined as "General Contractor" is not enough to make it a party to the contract. Instead, the language and format of the Subcontract evinces an intent by the parties that

ROA.23-40137.17

RLB is named only in reference to the Prime Contract which the Subcontract supports. *See Harding Co. v. Sendero Res., Inc.*, 365 S.W.3d 732, 740 (Tex. App.—Texarkana 2012, pet. denied) ("A person is not made a party to a contract merely by being named and described in it."). Further evidence that RLB is not bound by the Subcontract is that RLB is not a signatory to the Subcontract but both Harbor and Diamond are. *See Perez v. Lemarroy*, 592 F. Supp. 2d 924, 930 (S.D. Tex. 2008) (citing *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.—Corpus Christi-Edinburg 2003, pet. denied)).

The court also disagrees that the Subcontract binds RLB because the Prime Contract is "incorporated by reference" in the Subcontract. Under Texas law, to incorporate the terms of another document, "the writing referencing another writing must be signed." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 449 (N.D. Tex. 2019) (collecting cases). Here, because RLB never signed or executed the Subcontract that referenced and attempted to incorporate by reference the Corps' contract, the doctrine of incorporation by reference does not apply. *Id.* For the same reason, Diamond's argument that the Harbor-Diamond Subcontract was orally modified by Diamond and RLB is meritless because only parties to a contract may modify it. *Hovas v. O'Brien*, 654 S.W.2d 801, 803 (Tex. App.—Houston

ROA.23-40137.18

[14th Dist.] 1983, writ ref'd n.r.e.).

Finally, Diamond has not put forth sufficient allegations plausibly showing that it was a third-party beneficiary to the Prime Contract between RLB and Harbor. A third party may enforce a contract it did not sign when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party. *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). When the contract confers only an indirect, incidental benefit, a third party cannot enforce the contract. *Id.*; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 315 (1981); 13 WILLISTON ON CONTRACTS § 37:19, at 124–25 (4th ed. 2000) ("An incidental beneficiary acquires no right either against the promisor or the promisee by virtue of the promise."). Traditionally, Texas Courts have maintained a presumption against third-party beneficiary agreements. *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 503–04 (Tex. 1975). Therefore, in the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, courts will not confer third-party beneficiary status by implication. *MCI*, 995 S.W.2d at 651; *see S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). Finally, Diamond has not put forth sufficient allegations supporting its theory that RLB was a third-

ROA.23-40137.19

party beneficiary to the Subcontract, nor would such an argument hold water because RLB is not trying to enforce the Subcontract against Diamond.

Having exhausted all of Diamond's arguments as to the existence of an express, written agreement, the court finds that no express contract exists between Diamond and RLB covering the subject matter of the dispute: the equitable adjustment damages.

The court next turns to whether an oral contract was formed between Diamond and RLB. "The elements of written and oral contracts are the same and must be present for a contract to be binding." *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F. Supp. 3d 552, 567 (S.D. Tex. 2016) (quoting *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.)). "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding the communications." *Id.* "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *Id.* (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)). "[A] contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *see*

ROA.23-40137.20

*also Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 793 (Tex. App.—Dallas 2007, no pet.) ("The contract must be certain and clear as to all essential terms or the contract will fail for indefiniteness."). Therefore, all that is required is that the essential terms of the promise are sufficiently defined for the court to evaluate the parties' obligations; Texas law does not categorically limit enforceable promises to those that, for example, commit to a time limit or a specific quantity of goods. *Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 835 (N.D. Tex. 2011).

Here, Diamond alleges that once the dredging project was underway, it soon became clear that the amount of detritus in the ship channel made the work unprofitable for Diamond. Dkt. 1 ¶ 19. According to Diamond, at the September 2020 meeting between it, RLB, and Harbor, RLB informed it that it would "submit a request for equitable adjustment (REA) to ensure everyone was compensated for the unforeseen circumstances of excess detritus." *Id.* ¶ 20. Diamond, in reliance on RLB's representations, continued working. *Id.* ¶ 21. Thereafter, RLB solicited invoices, time sheets, and other information from Diamond for the REA submittal. *Id.* ¶ 28. However, even taking the factual allegations in the light most favorable to Diamond, the complaint fails to state sufficient facts regarding the material terms for the court to find that a valid oral contract existed. *See Provision Grp., Inc. v.*

*Crown Toxicology, Ltd.*, No. 5:16-CV-1291, 2017 WL 11221433, at *3–4 (W.D. Tex. Oct. 19, 2017) (holding that the material terms were "insufficiently definite," preventing the court from understanding the parties' obligations, such as what "marketing services" Provisions Group would provide or what the pay rate was). Nor do RLB's actions show an intent to bind itself with Diamond; instead, RLB's actions evince an intent to operate through its own subcontractor, Harbor. Thus, the court holds that Diamond has not put forth sufficient allegations showing the existence of an oral contract between it and RLB.

### 2. Quantum Meruit[2]

In the absence of an express contract, Diamond seeks recovery under the theory of quantum meruit, arguing that it provided excess labor and

---

[2] To the extent Diamond's pleadings raise "unjust enrichment" as a separate cause of action, the court dismisses it. "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Id.* A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted). Diamond's pleadings have not alleged facts sufficient to plausibly suggest a claim for unjust enrichment through fraud, duress, or undue advantage. Instead, Diamond's factual allegations suggest only a claim for quantum meruit, which is "founded in the principle of unjust enrichment." *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).

ROA.23-40137.22

materials to RLB for which RLB was compensated for by the Corps through its submission of an equitable adjustment. Dkt. 1 ¶¶ 17–31. RLB disagrees, contending that Diamond's quantum meruit claim is barred because the Subcontract covers the subject matter underpinning Diamond's allegations of nonpayment. Dkt. 22 ¶ 44.

"Quantum meruit is an equitable theory which permits a 'right to cover . . . based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 462 (5th Cir. 2003) (quoting *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976)). Recovery on an express contract and on quantum meruit are inconsistent. *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). Recovery is limited to situations in which non-payment for services rendered would result in unjust enrichment to the party benefitting from the work. *Taylor Pipeline Constr., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 713 (E.D. Tex. 2006) (citing *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).

At the motion-to-dismiss stage, Diamond must allege sufficient facts showing the following elements: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which

ROA.23-40137.23

services and materials were accepted by the person sought to be charged,
used, and enjoyed by him; (4) under such circumstances that reasonably
notified the person sought to be charged that the plaintiff, in performing such
services, was expecting to be paid by the person sought to be charged. *Id.*
(citing *Vortt*, 787 S.W.2d at 944). The plaintiff pursuing a quantum-meruit
action "must show that his efforts were undertaken *for* the person sought to
be charged; it is not enough to merely show that his efforts benefitted the
defendant." *Id.* (quoting *Gibson v. Bostick Roofing & Sheet Metal Co.*, 148
S.W.3d 482, 489 (Tex. App.—El Paso, 2004, no pet.)).

When a valid, express contract exists covering the subject matter, there
can be no implied contract. *Id.*; *Mitsubishi Aircraft Int'l, Inc. v. Maurer*, 675
S.W.2d 286, 288 (Tex. App.—Dallas 1984, no writ). If the work for which
recovery is sought is covered by and falls within the scope of an express
contract, the party seeking to recover damages must look to the contract for
compensation. *Black Lake*, 538 S.W.2d at 86. However, the existence of an
express contract does not preclude recovery in quantum meruit for the
reasonable value of services rendered and materials supplied that are not
covered by the contract. *Id.* In *Black Lake Pipe Line*, the Texas Supreme
Court established a test to determine whether work in the form of services
performed or materials supplied was covered by an express contract or

ROA.23-40137.24

constitutes "extra work" that falls outside the scope of an express contract: "(1) whether the work was extra and (2) whether the contract[] made provision for the type of extra work performed." *Id.*

Here, Diamond alleges that it provided additional labor and materials for RLB. Dkt. 1 ¶¶ 11–12. It "provided a bucket dredge, barges to receive the dredge spoil, and a pushboat" to move both the dredge and the barges. Dkt. 1 ¶ 13. Throughout the project, Diamond "took instruction from and worked at the direction of RLB." *Id.* ¶ 12. RLB "provided a barge for offloading the dredge spoil." *Id.* ¶ 14. Harbor was "merely present at the job" but "did no actual work" and "provided no material toward the job." *Id.* ¶ 12. RLB accepted Diamond's additional labor and recognized it as beyond the scope of the Subcontract because RLB requested an equitable adjustment from the Corps, in part based on Diamond's additional time sheets and invoices. *Id.* ¶ 22. Finally, Diamond alleges that RLB reasonably knew that Diamond was expecting to be paid for the equitable adjustment because of representations RLB made to Diamond at the September 2020 meeting and emailed invoices. *Id.* ¶ 20; *see Vortt*, 787 S.W.2d at 945 (finding reasonable notice based on circumstantial evidence). Diamond alleges that it directly conferred with RLB regarding the excess dredging and additional information needed for the equitable-adjustment request. *Id.*; *see, e.g.*, *Gibson*, 148 S.W.3d at 490

ROA.23-40137.25

(using evidence of no contact with the defendant as important circumstantial evidence).

In response, RLB argues that the subject matter of Diamond's complaint is covered in the Subcontract between Diamond and Harbor. Dkt. 24 ¶ 2. The equitable adjustment, RLB argues, was a measure provided for in the Prime Contract, a contractual provision that RLB utilized for differing site conditions. Dkt. 24 ¶ 7. Because the Prime Contract contemplates equitable adjustments, RLB argues that "work based on differing site conditions is not considered additional work, it *is within* the scope of the [Subcontract]." *Id*.

While it is true that the Prime Contract contained provisions for equitable adjustments, Diamond is not a party to the Prime Contract. Instead, the central issue is whether the Harbor-Diamond Subcontract contained provisions to deal with any extra work. The Subcontract did, indeed, contemplate change orders. Article 4 of the Subcontract reads:

> ### ARTICLE 4
>
> **CHANGES:** Contractor, without nullifying this Agreement, may direct Subcontractor in writing to make changes to Subcontractor's work. Adjustment, if any, in the contract price or contract time resulting from such changes shall be set forth in a Subcontract Change Order pursuant to the Contract Documents.

Dkt. 22-1, Art. 4. It is undisputed that dredging and "incidental" work is listed as part of Diamond's obligations in the Subcontract. *Id*. Art. 2. The Subcontract includes no "damages for delay" clause allocating responsibility

16/29

to one party or the other in the case of any delays. *Id.* This makes Article 4 the only relevant contractual provision to make formal changes to the work required in the contract. But neither party has put forth evidence or allegations showing that Harbor directed Diamond in writing to make changes to its work. It follows then that, taking Diamond's allegations as true, the extra work done was not covered by the Subcontract. This scenario is strikingly similar to that in *Black Lake*.

In *Black Lake Pipe Line*, the Texas Supreme Court allowed the plaintiffs to recover under quantum meruit for extra work performed even though the contract contained provisions for determining the amount payable for extra work and outlining the procedure for submitting extra work invoices. *Black Lake*, 538 S.W.2d at 89–90. The Court held that notwithstanding those provisions, the extra work was outside the contract because the contract required any modifications to be made by written agreement signed by both parties. *Id.* at 90. The Subcontract here also contains such a provision: Article 4. Given the similarities between this case and *Black Lake*, the court finds that without evidence conclusively showing that Article 4 was invoked by Harbor and Diamond, this is precisely the type of situation where quantum meruit recovery is allowed under Texas law. *See,*

ROA.23-40137.27

*e.g.*, *Fluor Daniel, Inc. v. Travis Cnty.*, No. A-00-CA-021-SS, 2001 WL 36101284, at *3 (W.D. Tex. Dec. 11, 2001).

Accordingly, RLB's motion to dismiss Diamond's claim for equitable-adjustment damages is denied.

### B. Tug Expenses

Diamond alleges that when it "became apparent that RLB did not have a tug to transport Diamond's barges from the excavation site to the unloading sight," the parties "compromised" and agreed to each fund half the tug. Dkt. 1 ¶¶ 32–33. Diamond further explains that the "payment for the [tug] operated such that Diamond paid for the tug, and invoiced half of the tug expenses to Harbor Dredging, which again, acting as a mere conduit, passed those invoices through to RLB." *Id.* ¶ 35. The Subcontract, Diamond argues, was modified orally and is valid and enforceable against both Harbor and RLB. *Id.* ¶ 49.

RLB argues that Diamond's claims regarding the acquisition of the tug are unenforceable as a separate oral contract or a modification of the Subcontract because the tug was part of the preexisting duties Diamond was required to perform under the Harbor-Diamond Subcontract. Dkt. 22 ¶¶ 14–15.

ROA.23-40137.28

First, as stated previously, *supra* Part III.A.1, the Subcontract is not enforceable against RLB. Thus, any alleged oral modification of the Subcontract to split the cost of the tugboat is unenforceable against RLB. Even if it was, the Subcontract requires change orders to be made in writing by Harbor, which Diamond has not alleged occurred. *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 435 (5th Cir. 2020) ("But change orders, like any modification, must satisfy the normal requirements of a contract.").

And to the extent Diamond alleges quantum-meruit damages against RLB for tug expenses, such expenses are barred as a matter of law. Generally, "where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811 (Tex. 2012) (citation omitted). And where work is contemplated within the scope of the contract, quantum-meruit recovery is unavailable. *D2*, 973 F.3d at 436 (citing *Balfour Beatty Rail, Inc. v. Kan. City Ry. Co.*, 173 F. Supp. 3d 363, 451 (N.D. Tex. 2016); *Bright Excavation, Inc. v. Pogue Constr. Co.*, No. 05-18-00820-CV, 2020 WL 1921681, at *7 (Tex. App.—Dallas Apr. 21, 2020, no pet.)). The Harbor-Diamond contract reads:

ROA.23-40137.29

**ARTICLE 2**

**SCOPE OF WORK:** Subcontractor agrees to commence work herein described upon execution of this contract, and to perform and complete such work in accordance with Contract Documents and under the general direction of Contractor in accordance with the schedule listed in article 3. Sub-contractor shall include all work necessary or incidental to complete the following bid items:

| Item | Unit Price | Est. Quantity | Unit | Total |
|---|---|---|---|---|
| CLIN 0001. Mobilization | $125,000.00 | 1 | LS | $125,000.00 |
| CLIN 0003. Dredging Section 16 | $6.50 | 335,100 | CY | $2,178,150.00 |
| CLIN 0005. Demobilization | $125,000.00 | 1 | LS | $125,000.00 |
| | | | Grand Total | $2,428,150.00 |

Subcontractor will only be paid for volumes dredged and paid for by owner in accordance with owner's before dredging and after dredging surveys in accordance with prime contractor's contract. Subcontractor will be responsible for traversing the hopper barges from excavation site to the unloading site. Subcontractor is responsible for providing appropriate site labor to meet or exceed the specifications in regards to certified crane operators necessary to perform the work stated.

Dkt. 1-2, Art. 2.

The plain language of the contract imposes the burden on Diamond for all incidental work necessary to complete the job. It also states, "Subcontractor will be responsible for traversing the hopper barges from excavation site to the unloading site." *Id.* Tugboats are required to move the loaded hopper barges. Dkt. 22 ¶ 32. A plain reading of the Harbor-Diamond Subcontract shows that Diamond had a preexisting obligation to furnish the equipment necessary to complete the work, including providing a tug in order to traverse the hopper barges. *See D2*, 973 F.3d at 430. Thus, the court dismisses Diamond's claims for tug expenses against RLB for failure to state a claim upon which relief may be granted.

## C. Expenses owed under Harbor-Diamond Contract

Finally, Diamond alleges that RLB failed to pay Diamond for the amount actually dredged. Dkt. 1 ¶ 43. Diamond claims that the job called for

ROA.23-40137.30

dredging 362,289 cubic yards, but that RLB paid for only 314,215 cubic yards. *Id.* ¶ 41.

As stated previously, no express contract exists between RLB and Diamond. *See supra* Part III.A.1. To the extent Diamond raises a claim for quantum meruit against RLB for total cubic yardage, such relief is barred as a matter of law. Quantum meruit is only available where there is no express contract covering the subject matter of the dispute and the defendant has been unjustly enriched. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 376 (5th Cir. 2003). Neither element is present here. Diamond has a Subcontract with Harbor which covers the amount to be paid for total yardage. *See* Dkt. 1-2. Diamond also admits that it was paid "through Harbor." Dkt. 1 ¶ 41. Simply because Harbor may not have paid Diamond all that it is owed on that Subcontract does not void the Subcontract, and it does not allow Diamond to sue RLB. Diamond's remedy is a suit for breach of contract against Harbor, which it has sued here, not a quantum meruit claim against RLB. So the court dismisses Diamond's claim for total cubic yardage damages against RLB.

## IV.  Travelers' Motion to Dismiss

As part of the dredge work, RLB was required to secure a surety bond, which it obtained through Travelers. Dkt. 1 ¶¶ 8–9. Diamond now sues

ROA.23-40137.31

Travelers to recover damages it did not receive after RLB received an equitable adjustment from the Corps. *See United States v. Ins. Co. of Penn.*, No. 2:14-cv-034, 2015 WL 12712067, at *5 (W.D. Tex. May 11, 2015) (finding claims for quantum meruit are recognized under the Miller Act).

### A. Miller Act

The Miller Act requires prime contractors on federal construction projects to furnish "a payment bond . . . for the protection of all persons supplying labor and material in the prosecution of the work provided for in [the] contract." 40 U.S.C. § 270a(a)(2). The payment bond is intended to "protect the rights of these suppliers" who "furnish labor or materials to government construction projects, and thus provides an alternative to a mechanic's lien." *United States ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex.*, 942 F.2d 946, 949 (5th Cir. 1991) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 122 (1974)). The Act permits suppliers to sue if they are not paid within ninety days after the last day of labor was done. *Id.* (quoting 40 U.S.C. § 270b(a)).

Though the Miller Act is liberally construed, it is not without limits. *Ill. Sur. Co. v. John Davis Co.*, 244 U.S. 376, 380 (1917). The Act extends the right to sue on the payment bond "to those who ha[ve] a contractual agreement with the prime contractor or with a 'subcontractor.'" *Millers*, 942

ROA.23-40137.32

F.2d at 950 (quoting *F.D. Rich.*, 417 U.S. at 122). Further, "the supplier must sue on the Miller Act payment bond within one year of furnishing labor or material in the prosecution of the contractor work." *Id.* (citing *United States ex rel. Tex. Bitulithic Co. v. Fid. & Deposit Co. of Maryland*, 813 F.2d 697, 699 (5th Cir. 1987) (describing one-year limitation period as a "substantive limitation of the rights conferred by the Act")). Finally, only "costs *actually expended* in furnishing the labor or material in the prosecution of the work provided for in the contract" are recoverable if there were out-of-pocket costs for delay. *Id.* at 952. Delay must not have been caused by the subcontractor. *United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 966 (5th Cir. 1998).

The Miller Act extends only to subcontractors and sub-subcontractors. *J.W. Bateson Co. v. United States ex rel. Bd. of Trustees*, 434 U.S. 586, 591 (1978). The distinction between whether a party is a first-tier or second-tier subcontractor is critical because if a party is a first-tier subcontractor, then it has a right to bring a claim on a bond without being subject to the Miller Act's notice provisions. *See* 40 U.S.C. § 3133(b)(1). But if a party is a second-tier subcontractor, then they must establish that they provided timely and adequate notice under the Miller Act. *Id.* § 3133(b)(2); *Liles Constr. Co. v. United States*, 415 F.2d 889, 890 n.2 (5th Cir. 1969).

ROA.23-40137.33

**B. Subcontractor Status**

Diamond argues that for purposes of the Miller Act, it qualifies as a first-tier subcontractor to RLB. Dkt. 23 at 13–15. Diamond contends that because it performed the bulk of the work made subject of the equitable adjustment, relative to Harbor, it had a "direct contractual relationship with RLB for purposes of the Miller Act." *Id.* at 14. Diamond argues that "subcontractor" status applies to one who "performs a specific part of the original contract and has a substantial and important relationship with the prime contractor." *Id.* (quoting *F.D. Rich Co.*, 417 U.S. at 123–24). Travelers disagrees. It argues that Diamond does not qualify as a first-tier subcontractor because it does not have a direct contractual relationship with RLB. Dkt. 22 at 8–9.

The court agrees with Travelers that Diamond does not qualify as a first-tier subcontractor within the meaning of the Miller Act. Diamond urges the court to name it a first-tier subcontractor because it did the dredging work. But such an argument is effectively asking the court to rewrite the parties' express contracts. Diamond may not like that Harbor is a middleman in this deal, but that is the relationship contemplated in the express language of the Subcontract. Diamond has not alleged sufficient facts to qualify as a first-tier subcontractor. Consequently, the court finds that Diamond is a

ROA.23-40137.34

second-tier subcontractor. *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107–08 (1944). And so it is bound by the Miller Act's notice provisions.

### C. Notice

Travelers next argues that Diamond failed to give RLB notice as required by the Miller Act and failed to state in its complaint that it had complied with the Miller Acts' conditions precedent. Dkt. 22 at 25–26.

"The giving of [Miller Act] notice is a condition precedent to a supplier's right to sue on the payment bond." *Liles Constr. Co. v. United States*, 415 F.2d 889, 890 (5th Cir. 1969). Federal Rule of Civil Procedure 9 applies to condition precedents in this circuit. *See E.E.O.C. v. Serv. Temps, Inc.*, No. 3:08-CV-1552, 2010 WL 1644909, at *3 (N.D. Tex. Apr. 22, 2010). Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or have been performed." Fed. R. Civ. P. 9(c). Travelers argues that this means that Diamond must state in its complaint that notice was given, regardless of whether such allegations were raised in any response. *See United States v. Naylor Cos., LLC*, No. SA:14-CV-95, 2014 WL 12586776, at *3 (W.D. Tex. Apr. 14, 2014). In *Naylor*, the court construed the condition precedent requirement as meaning that "for a supplier to state a Miller Act claim under

ROA.23-40137.35

40 U.S.C. § 3133, the supplier must state in the complaint that notice was given." *Id.* The court reasoned that because Rule 8's pleading standards require the "complaint" to contain sufficient factual mater, it is insufficient for a responsive pleading to affirmatively state that the plaintiff gave notice to the contractor. *Id.* (citing *Iqbal*, 556 U.S. at 678).

Here, Diamond's live complaint does not state that the condition precedents have been performed. Dkts. 1, 41. Nevertheless, Diamond does so allege in its response to Travelers' motion. Dkt. 34 at 1–2. Thus, Diamond must further amend its complaint to properly state it complied with all conditions precedents as required by the Miller Act. The court grants Diamond leave to amend its complaint to comply with Rule 9 and include all of its allegations in its second amended complaint.

Next, the court addresses whether Diamond provided adequate and timely notice to RLB. A second-tier subcontractor must provide written notice within ninety days of the last date of performance of work. 40 U.S.C § 3133(b)(2). The notice must be served "by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an office or conducts business or at the contractor's residence." *Id.* Finally, the notice "must state with substantial accuracy the amount claimed and the name of the party to whom the material

was furnished or supplied for or whom the labor was done or performed." *Id.*

"The purpose of the notice requirement of the Miller Act is to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly." *United States ex rel. Jinks Lumber Co. v. Fed. Ins. Co.*, 452 F.2d 485, 487 (5th Cir. 1971). "The Fifth Circuit has permitted some 'liberality as to the manner of communicating the written notice.'" *United States ex rel. Consol. Elec. Distributors, Inc. v. Altech, Inc.*, 929 F.2d 1089, 1092 (5th Cir. 1991) (quoting *Coffee v. United States ex rel. Gordon*, 157 F.2d 968, 969 (5th Cir. 1946)). "[I]t is sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." *Hous. Fire & Cas. Ins. Co. v. United States ex rel. Trane Co.*, 217 F.2d 727, 730 (5th Cir. 1954).

Diamond states in its response to Travelers' motion to dismiss that its dredge demobilized on February 23, 2021, and arrived at its yard on February 27, 2021. Dkt. 34 at 1. Diamond further states that it sent its certified cost and pricing data to Harbor on March 30, 2021, which was "immediately forwarded" to RLB. *Id.* Diamond argues that its cost and pricing data "made plain to RLB that Diamond held RLB responsible to submit an accurate equitable request, inclusive of Diamond's portion, and to

ROA.23-40137.37

satisfy Diamond out of it." Dkt. 34 at 2.

Assuming that Diamond amends its complaint with the aforementioned allegations, it has clearly met the Miller Act's procedural and substantive notice requirements. *See Coffee*, 157 F.2d at 969 (finding list of invoices sufficient to give notice); *Altech*, 929 F.2d at 1093 (finding statements made at a meeting between the parties concerning outstanding balance, coupled with a follow-up letter were sufficient to give notice). Accordingly, the court denies Travelers' motion to dismiss.

\*    \*    \*

For all of the above reasons, the court grants in part and denies in part RLB's motion to dismiss. Dkt. 22. For clarity, Diamond's claim against RLB for equitable-adjustment expenses under a theory of quantum meruit survives. The remainder of its claims against RLB are dismissed with prejudice.

Travelers' motion to dismiss is denied. Dkt. 30. Nevertheless, the court orders that Diamond must amend its complaint to incorporate allegations that it gave proper Miller Act notice pursuant to 40 U.S.C. § 3133(b)(2). Diamond must file its amended complaint within 14 days from the date of this order. The complaint must contain all allegations within its four corners and may not replead the entirety of its original complaint in one paragraph.

RLB's motion to strike Diamond's response is denied. Dkt. 35.

Signed on Galveston Island this 14th day of November, 2022.


_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

ROA.23-40137.39

# Tab 3

United States District Court
Southern District of Texas
**ENTERED**
February 14, 2023
Nathan Ochsner, Clerk

# In the United States District Court
# for the Southern District of Texas

## GALVESTON DIVISION

No. 3:21-cv-253

DIAMOND SERVICES CORPORATION, *PLAINTIFF*,

v.

RLB CONTRACTING, INC., *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court are three motions for summary judgment filed by Harbor Dredging and RLB Contracting; a motion for judgment on the pleadings and a motion to strike filed by Travelers Casualty and Surety Company of America; and a motion to strike filed by RLB Contracting. Dkts. 46; 49; 50; 63; 65; 73. The court grants Harbor's motion for summary judgment (Dkt. 46), grants RLB's first motion for summary judgment (Dkt. 49), grants in part and denies in part RLB's second motion for summary judgment (Dkt. 50), grants the motions to strike, (Dkts. 65; 73) and denies the motion for judgment on the pleadings as moot (Dkt. 63).

ROA.23-40137.40

## I.   BACKGROUND

On September 4, 2019, the U.S. Army Corps of Engineers, Galveston Division, awarded RLB Contracting, Inc., a contract for pipeline dredging in the Houston Ship Channel. Dkt. 46 at 1. As required by the contract and the Miller Act, RLB furnished a surety bond which it obtained from Travelers. Dkts. 49 at 5; 49-3. To assist it in dredging the volume called for by the Corps, RLB contracted with Harbor Dredging. Dkt. 46-2. Harbor, in turn, contracted with the plaintiff, Diamond, for the dredge work. Dkt. 46-3.

As the project progressed, RLB, Harbor, and Diamond "encountered conditions that differed materially from those represented" by the Corps in its project specifications. Dkt. 46 at 2. The unanticipated presence of tires in the channel, as well as other issues, "slowed down the job considerably." Dkt. 51 at 6. Diamond determined that it would not be able to continue the project profitably. *Id*. Agents of RLB, Harbor, and Diamond met to discuss the situation, and Diamond threatened to leave the project absent changes. *Id*. at 6–7. RLB later pursued a request for equitable adjustment (REA) of the prime contract from the Corps. Dkts. 51 at 6; 49 at 6. In Diamond's view, RLB and Harbor had agreed to compensate Diamond out of the REA using a measured-mile calculation, though in what proportion or for "how much was left unsaid because it was, at the time, unknowable." Dkts. 51 at 8, 17; 51-2 at

ROA.23-40137.41

49–50. As explained by the parties, a measured-mile calculation in this context involves comparing dredging costs incurred during a set period where differing site conditions interrupted operations to dredging costs completed during the same period where differing site conditions did not interrupt operations. Dkts. 54 at 14; 54-2 at 78.

> The contractor compares the best time period, which sets the benchmark. Then that time period is compared to the other time on the contract where the contractor faced delays. The percentage difference is assumed to be on account of the delay and the contractor (and its subcontractors) are entitled to the difference.

Dkts. 51 at 16–17; 51-1 at 87–89.

Diamond, allegedly relying on these representations, continued working and stepped up operations, dredging twenty-four hours a day to build a favorable benchmark for its anticipated measured-mile calculations. *Id*. at 6–7. In October 2020, RLB submitted an REA to the Corps, but Diamond expressed unhappiness with the request because it failed to fully account for Diamond's losses. Dkts. 46-4; 51-6. Diamond demanded the right to participate in the drafting and negotiating of any future REAs, a request that RLB seemingly ignored. *See* Dkts. 51-6; 51-7. RLB ultimately withdrew its October 2020 REA. Dkt. 49 at 6.

After project completion, RLB prepared to submit a second amended REA and asked Harbor to certify and submit its total project costs, including

ROA.23-40137.42

direct costs, overhead, and profit, and corresponding numbers from Diamond. Dkts. 46 at 3; 49 at 6. On March 5, 2021, Diamond executive James Furlette sent Harbor executive Roland Maturin an email stating "this is where we are at." Dkt. 46-8. Attached to the email was a chart, with the sums "$1530,323.09 [sic] Outstanding + 500,000.00 Extra work" scribbled by hand at the bottom. *Id.* The sums totaled $2,030,323.09. *Id.*

On March 30, 2021, Harbor submitted to RLB its certified total costs in the amount of $3,179,169, which included Diamond's certified total costs of $2,362,344. Dkts. 46 at 3–4; 46-5; 46-6. On April 6, 2021, RLB re-submitted its amended REA to the Corps, calculating total excess costs of $8,867,212. Dkt. 46-7. The Corps offered to negotiate a settlement. Dkt. 46 at 4. RLB asked Harbor to determine the amounts that Harbor and Diamond "would accept in satisfaction of their claims for a share of the excess costs recovered by RLB from the [Corps] in a settlement of the amended REA." *Id.*

Here, the parties' accounts diverge. Harbor claims that Diamond agreed, in subsequent conversations between Furlette and Maturin, to accept $950,000 "to resolve its claim for a share of excess costs recovered by RLB in an REA associated with differing site conditions." *Id.* at 6. Diamond insists that "when Harbor asked Diamond if Diamond would accept $950,000. [sic] Diamond responded not with 'yes' but with 'maybe': Diamond said that it

could, but only if that's what the US Army Corps of Engineers was willing to pay . . . its accession to this request by Harbor was conditional," and depended on how the REA was derived and what it included. Dkts. 51 at 3; 51-2 at 70–71. RLB did not communicate with Diamond during the REA negotiation process. Dkts. 51 at 10; 49-14 at 126.

For its part, Harbor determined it would accept $500,000 in resolution of its claims and communicated a total settlement sum of $1,450,000—including the $950,000 allegedly agreed to by Diamond—to RLB. Dkts. 46 at 6; 49-14 at 114. On July 9, 2021, RLB and the Corps negotiated. Dkt. 51-9. Ultimately, the Corps and RLB reached a settlement of the amended REA in the amount of $6,000,000. Dkts. 46 at 7; 46-14. RLB issued a joint check to Harbor and Diamond in the amount of $950,000. Dkt. 49-8.

On September 16, 2021, Diamond filed this suit against RLB, Harbor, and Travelers. Dkt. 1. Against Harbor and RLB, Diamond brought claims for breach of contract, implied contract, and quasi-contract; against RLB and Travelers, Diamond also brought Miller Act claims. Dkt. 1 ¶¶ 43–53.

Harbor endorsed and tendered RLB's check to Diamond on October 29, 2021. Dkt. 46-15. Diamond initially refused to accept the check marked "FULL AND FINAL PAYMENT," but did so after RLB agreed to permit

ROA.23-40137.44

Diamond to disregard the notation. Dkts. 46 at 8; 46-17.

At some point after RLB and the Corps reached a settlement,[1] Maturin placed a recorded phone call to Furlette and remarked that he "got a call from Randy saying that you're not going to sign the agreement that we had for the $950,000." Dkts. 55 at 6–7; 46-16, 00:51-01:06. Furlette replied that he would ask Diamond executive Stephen Swiber about it. *Id.* at 01:24. Later in the conversation, when Maturin brought up the issue again, Furlette responded by inquiring "950 still good"? *Id.* at 04:45.

RLB and Travelers filed motions to dismiss. Dkts. 22; 30. On May 13, 2022, Diamond filed its First Amended Complaint, designating the case as an admiralty claim under Fed. R. Civ. P. 9(h) and otherwise repleading its original complaint in full; RLB subsequently filed a responsive pleading with counterclaims for certain declaratory judgments, promissory estoppel, and money had and received. Dkts. 41; 48. Harbor filed a motion for summary judgment on September 19, 2022; RLB subsequently filed motions for summary judgment against Diamond's claims and in favor of its own claims. Dkts. 46; 49; 50. Diamond timely responded. Dkts. 51; 54.

On November 14, 2022, the court issued a memorandum opinion and

---

[1] Harbor has not provided the court with the date on which Maturin made this phone call.

ROA.23-40137.45

order granting in part and denying in part RLB's motion to dismiss and denying Travelers's motion to dismiss. Dkt. 62. The court dismissed Diamond's unjust-enrichment cause of action and Diamond's express contractual claims against RLB, but preserved Diamond's claim for equitable-adjustment expenses under a theory of quantum meruit. *Id.* at 28. The court denied Travelers's motion to dismiss Diamond's Miller Act claims but ordered Diamond to file an amended complaint within 14 days incorporating allegations that it gave proper Miller Act notice. *Id.* But this deadline passed without Diamond filing an amended complaint. On December 5, 2022, Travelers filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. 63. On December 6, 2022, Diamond filed its second amended complaint, which Travelers and RLB moved to strike. Dkts. 64; 65; 73. On December 28, 2022, Diamond filed an answer to RLB's counterclaims. Dkt. 75. Diamond filed a second answer to RLB's counterclaims on January 3, 2023. Dkts. 77.

## II.    LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d

ROA.23-40137.46

528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.*

A motion for summary judgment "cannot be granted simply because there is no opposition." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). When no response is filed, the court may accept as

ROA.23-40137.47

undisputed the facts set forth in support of the unopposed motion and grant summary judgment when a *prima facie* showing for entitlement to judgment is made. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996). The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III.  ANALYSIS

### A. Harbor's Motion for Summary Judgment

Harbor argues that Diamond's purported agreement to accept $950,000 in "full and final settlement for its share of the proceeds of the settlement of the REA" bars it from seeking additional compensation from Harbor or RLB. Dkt. 46 at 11–12. Diamond responds that the offer to accept $950,000 in satisfaction of its claims was always conditioned on how the amended REA was calculated and that "very clearly as part and parcel of this agreement, Diamond had to be made aware of what the Corps was in fact willing to pay." Dkt. 51 at 3, 13–14. Because Diamond maintains it was excluded from the REA calculations and not provided with the relevant information, it insists it never actually agreed to $950,000 as a settlement figure. *Id.*

ROA.23-40137.48

Harbor also argues that Diamond "submitted no summary[-]judgment evidence of actual costs it incurred due to differing site conditions or extra work or delays for which it was not compensated and no competent summary judgment evidence that Harbor owes Diamond any further amounts under the Sub-subcontract or otherwise." Dkt. 55 at 10. Harbor observes that Diamond's own estimates placed its excess costs at $500,000, as demonstrated by Furlette's handwritten note listing the value of Diamond's "extra work" on the project at $500,000. Dkts. 46 at 17; 46-8. As Harbor paid Diamond $950,000 above the contract price—a sum large enough to satisfy the $500,000 claim for "extra work," as well as the $414,934.59 associated with the use of the tug *M/V Miss Kerrilynn*[2]—it argues Diamond has no basis to seek additional compensation. Dkt. 46 at 17–18.

In response, Diamond states that its costs exceeded $950,000. Dkt. 51 at 15. But it identifies no specific unpaid costs. Instead, Diamond argues that Harbor, via "a modification of an oral modification to the preexisting contract," and RLB, promised to provide compensation using a "measured[-

---

[2] Diamond has argued that it agreed to split the costs of using the tug with RLB. Dkt. 51 at 1. In its previous opinion, the court found that "a plain reading of the Harbor-Diamond Subcontract shows that Diamond had a preexisting obligation to furnish the equipment necessary to complete the work, including providing a tug in order to traverse the hopper barges." Dkt. 62 at 20. The court dismissed Diamond's claims for tug expenses against RLB. *Id.*

ROA.23-40137.49

]mile analysis," which is "not a function of adding up hard costs." Dkt. 51 at 16, 17. And Furlette's $500,000 notation for extra work "was a number on a page. It was not a measured[-]mile analysis." *Id.* at 16. Diamond also points to testimony from Furlette attempting to cast doubt on the notion that $500,000 represented all of Diamond's additional costs. Dkt. 51-13 at 49.

Diamond and Harbor had a contract. And as the court has explained in its previous opinion, Article 4 of that contract is "the only relevant contractual provision to make formal changes to the work required in the contract." Dkts. 62 at 16; 46-3. Article 4 provides that Harbor may direct Diamond in writing to make changes to its work, and corresponding adjustments to the contract price resulting from such changes shall be set forth in a change order. Dkts. 46-3; 62 at 19. As there is no evidence either party ever submitted a change order, Harbor's payment of the contract price satisfied its underlying contractual obligations to Diamond.

Diamond does not dispute that Harbor met its obligations under the original contract, but submits that Harbor orally modified the contract to ensure that Diamond would be compensated out of the REA using a measured-mile analysis. Dkt. 51 at 8, 17. This argument appears to be raised for the first time in response to Harbor's motion for summary judgment. Diamond's complaint states that the measure of its outstanding obligation is

ROA.23-40137.50

"in no event less 54% of the REA," a figure that represents not a measured-mile analysis but its ratio of the unit rate set out in RLB's contract with the Corps.[3] Dkt. 1 ¶ 51; *see also* Dkt. 41 ¶ 2.

Regardless, in the face of a properly supported motion for summary judgment, Diamond has not produced evidence demonstrating the existence of an oral contract modification. Indeed, at the meeting where RLB executive Randy Boyd allegedly promised to compensate Diamond on a measured-mile basis, Swiber testified that Harbor's agent, Roland Maturin, "did not say much." Dkt. 51-2 at 49. Diamond's complaint does not seem to allege that Harbor made any agreements related to Diamond's compensation from the REA, instead alleging that RLB did so. *See* Dkt. 1 ¶ 20. Nor is there evidence that Harbor and Diamond ever agreed to compensate Diamond with payment equal to 54% of the second amended REA. Accordingly, Harbor is entitled to summary judgment on Diamond's breach-of-contract claim.

The only remaining claim Diamond has against Harbor is quasi-contractual—under a theory of quantum meruit. "Quantum meruit is an equitable theory which permits a 'right to cover . . . based upon a promise implied by law to pay for beneficial services rendered and knowingly

---

[3] The prime contract paid RLB $12 for every cubic yard dredged; Diamond's unit rate was $6.50 for every cubic yard dredged, i.e. 54%. Dkt. 51 at 2.

ROA.23-40137.51

accepted.'" *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 462 (5th Cir. 2003) (quoting *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976)). Recovery on an express contract and on quantum meruit are inconsistent. *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). Though Diamond and Harbor did have an express contract, a quantum meruit theory remains viable where, as is the case here, extra work is performed outside of the contract. *See Black Lake*, 538 S.W.2d at 89–90; Dkt. 62 at 16–18. Nevertheless, Diamond may not pursue tug-related expenses under quantum meruit, as the contract covers such expenses. *Id.* at 19–20.

To survive a properly supported motion for summary judgment, Diamond must introduce evidence as to the reasonable value of the work it performed or the materials it furnished. *M.J. Sheridan & Son Co., Inc. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 624–25 (Tex. App.—Houston [1st Dist.] 1987, no writ). Diamond has not done so. In response to Harbor's evidence, including Diamond's notation of $500,000 as the amount it was owed for "extra work," Diamond presents testimony from Furlette stating that he had "no idea" what that number represented, while acknowledging it could have represented Diamond's outstanding costs related to differing site conditions or "the entirety of the extra work" completed by Diamond on the

ROA.23-40137.52

project. Dkt. 46-9 at 47, 49, 93. This fails to create a fact issue. And while Diamond's complaint seems to express that the measure of its quantum meruit damages is "in no event less than 54% of the REA," Diamond does not present evidence that this figure bears a resemblance to the reasonable value of the work it performed or the services it rendered. Accordingly, Harbor is entitled to summary judgment against Diamond's quantum meruit claim.

## B. RLB's Motion for Summary Judgment Against Diamond's Claims

RLB has moved for summary judgment on Diamond's breach-of-contract, implied-contract, and quasi-contract claims, as well as its Miller Act claims. Dkt. 49 at 10. The court has already dismissed Diamond's breach-of-contract and unjust-enrichment claims against RLB. Dkt. 62 at 10–12 n.2. And the court has also held that any quantum meruit damages against RLB for tug expenses or underpayment for total cubic yardage dredged "are barred as a matter of law." *Id.* at 19, 21.[4]

---

[4] In response to Diamond's motions for summary judgment, RLB argues that "to the extent the facts at trial would show that RLB was not a party to that contract, but that RLB separately contracted with Diamond for the KERRILYNN, and that RLB separately contracted with Diamond as part of the REA, then maritime law would apply to those contracts of its own force." Dkt. 54 at 10. The court notes that its previous opinion and memorandum order held that Diamond's claims for tug expenses against RLB failed to state a claim upon which relief could be granted. Dkt. 62 at 20. The court also held that no express contract existed between RLB and Diamond. *Id.* at 21.

ROA.23-40137.53

The court grants RLB's motion for summary judgment regarding Diamond's quantum meruit claims. Under Texas law, "the measure of damages for recovery under a quantum-meruit theory is the reasonable value of the work performed and the materials furnished." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 733 (Tex. 2018). In response to RLB's motion for summary judgment, Diamond has not produced evidence demonstrating what the reasonable value of the work it performed or the services it rendered, for which it has not already been paid.

RLB is also entitled to summary judgment on Diamond's Miller Act claims. The Miller Act protects subcontractors on government projects by requiring contractors to obtain payment bonds to protect "all persons supplying labor and material in carrying out the work provided for in the contract." *United States ex rel. Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, PC*, 26 F.4th 952, 956 (D.C. Cir. 2022) (quoting 40 U.S.C. § 3131(b)). It also allows subcontractors to "recover increased out-of-pocket costs for labor and materials furnished in the course of performing its subcontract caused by contractor or government delay." *United States ex rel. T.M.S. Mechanical Contractors, Inc. v. Millers Mutual Fire Ins. Co.*, 942 F.2d 946, 951 (5th Cir. 1991). However, the Miller Act does not permit recovery of "profits on out-of-pocket expenditures attributable to delay." *Id.*

ROA.23-40137.54

at 953. Claims that do not involve "actual outlay" of funds are also excluded from Miller Act recovery. *See id.* (citation omitted); *see also Consol. Elec. & Mech., Inc. v. Biggs Gen. Contracting, Inc.*, 167 F.3d 432, 436 (8th Cir. 1999) ("lost profits . . . are not within the scope of remedies provided under the Miller Act.").

Here, Diamond's Miller Act claims involve the REA award RLB allegedly misallocated. But that award incorporates sums that Diamond never actually expended, including overhead and profits. *See* Dkt. 46-6. Neither are recoverable under the Miller Act. Even more fatally, Diamond has failed to meet its summary-judgment burden in response to RLB's argument that the amended REA "did not segregate out delay costs, much less any delay costs of Diamond." Dkt. 49 at 24. Accordingly, RLB is entitled to summary judgment on Diamond's Miller Act claims.

### C. RLB's Motion for Summary Judgment on RLB's Counterclaims

RLB has also moved for summary judgment on its declaratory-judgment claims. Dkt. 50 at 12. The court takes these up in turn.

#### 1. Declaration that RLB does not have a direct or indirect contractual relationship with Diamond.

Based on the motion, response, and reply; the record; and the applicable law, the court grants summary judgment on RLB's counterclaim

16/20

ROA.23-40137.55

for declaratory relief and declares that RLB does not have a direct or indirect contractual relationship with Diamond. *See* Dkt. 50 at 19. The accompanying relief RLB has sought—the dismissal of Diamond's breach-of-contract claims—has already been granted. *See* Dkt. 62.

### 2. Declaration that RLB was entitled to rely on Diamond's representations as to the amount Diamond would accept in connection with the settlement of the Amended REA.

RLB asks the court to grant summary judgment on its declaratory-judgment counterclaim to the effect that RLB was entitled to rely on Diamond's representations as to the amount Diamond would accept in connection with the settlement of the amended REA. Dkt. 50 at 19. The court denies that motion.

### 3. Declaration that Diamond's agreement to accept, and/or acceptance of, the $950,000 constitutes an accord and satisfaction of its claim for any amounts allegedly owed from the proceeds of RLB's settlement of the amended REA

RLB asks the court to grant summary judgment on its declaratory-judgment counterclaim to the effect that Diamond's agreement to accept, and or acceptance of, the $950,000 constitutes an accord and satisfaction. *Id.* at 21. The court denies that motion.

ROA.23-40137.56

### 4. Declaration that Diamond does not have a valid Miller Act claim against RLB or Travelers

RLB asks the court to grant summary judgment on its declaratory-judgment counterclaim to the effect that Diamond does not have a valid Miller Act claim against RLB or Travelers. *Id.* at 23. Based on the motion, response, and reply; the record; and the applicable law, the court grants summary judgment on RLB's counterclaim for declaratory relief and declares that Diamond does not have a valid Miller Act claim against RLB or Travelers.

### 5. Promissory-Estoppel Counterclaim

RLB asks the court to grant summary judgment on its promissory-estoppel counterclaim. *Id.* at 26. The court denies RLB's motion.

### 6. Money Had and Received Counterclaim

RLB asks the court to grant summary judgment on its money-had-and-received counterclaim. *Id.* at 28. The court denies RLB's motion.

### D. Travelers's Motion for Judgment on the Pleadings/Motion to Strike

Travelers has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. 63. Travelers argues that in the court's November 12 memorandum opinion and order, the court gave Diamond 14 days to amend its complaint to incorporate allegations that it gave proper Miller Act notice pursuant to 40 U.S.C. § 3133(b)(2). *See* Dkts. 62; 63 at 2. Diamond failed to

ROA.23-40137.57

do so; consequently, its Miller Act claims are deficient, and the court should enter judgment dismissing those claims. Dkt. 63 at 4. In the alternative, Travelers argues that Diamond failed to meet the standards of Fed. R. Civ. P. 15 in amending its complaint. *Id.* Travelers and RLB also move to strike the untimely amended complaint. Dkts. 65; 73.

The court authorized Diamond to file an amended pleading for one purpose: to cure deficiencies in pleading notice of its Miller Act claim. The court finds that RLB is entitled to summary judgment on Diamond's Miller Act claims for other reasons, so the attempted amendment no longer serves any purpose. Additionally, the late filing was not accompanied by a motion for leave to file. *See* Galveston District Court Rule of Practice 5(i); Fed. R. Civ. P. 15(a); *Klein v. Marvin Lumber & Cedar Co.*, 575 Fed. App'x 347, 349–50 (5th Cir. 2014) (holding a district court did not abuse its discretion in striking a late-filed complaint where no leave of court was sought before the filing, and where no prejudice would result from the court striking the complaint). Moreover, Diamond has not filed a response to RLB's motion to strike. Dkt. 73. The motions to strike the amended complaint are granted. But Travelers's 12(c) motion for judgment on the pleadings is denied as moot as the court has already disposed of Diamond's Miller Act claims.

\*    \*    \*

ROA.23-40137.58

The court grants Harbor's motion for summary judgment. Dkt. 46. RLB's motion for summary judgment against Diamond's claims is also granted. Dkt. 49. RLB's motion for summary judgment on its counterclaims is granted in part and denied in part. Dkt. 50. Travelers's and RLB's motions to strike are granted and its motion for judgment on the pleadings is denied as moot. Dkts. 63; 65; 73. The only live claims remaining in this case are RLB's counterclaims. RLB's claims for attorney's fees are carried with the case.

Signed on Galveston Island this 14th day of February, 2023.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

20/20

# Tab 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**for the use and benefit of**<br>**DIAMOND SERVICES CORPORATION** | **CIVIL ACTION NO: 3:21-cv-00253** |
| | **DISTRICT JUDGE** |
| **VERSUS** | **HON. JEFFERY V. BROWN** |
| | |
| **RLB CONTRACTING, INC.,** | **MAGISTRATE JUDGE** |
| **HARBOR DREDGING, INC., and** | **HON.  ANDREW M. EDISON** |
| **TRAVLERS CASUALTY AND SURETY** | |
| **COMPANY OF AMERICA** | |

**NOTICE OF APPEAL UNDER 28 U.S.C. 1292(A)(3)**

Notice is hereby given that Diamond Services Corporation appeals to the United States

Court of Appeals for the Fifth Circuit from the Court's Order dated February 14, 2023 [Rec. Doc.

86], dismissing Diamond's claims against RLB, against Travelers, and against Harbor Dredging

with prejudice, as well as all other orders, rulings and decrees leading up to and related to that

judgment that are adverse to Diamond Services Corporation, under 28 U.S.C. 1292(a)(3).

**DATED**: February 28, 2023

Respectfully submitted:

**Bohman | Morse, LLC**

/s/Harry E. Morse
HARRY E. MORSE (#31515)
MARTIN S. BOHMAN (#22005)
400 Poydras Street, Suite 2050
New Orleans, LA  70130
Telephone: (504) 930-4009
Fax: (888) 217-2744
E-Mail: Harry@BohmanMorse.com
E-Mail: Martin@BohmanMorse.com

*Attorneys for Diamond Services Corporation*

ROA.23-40137.60