# NO. 23-40137

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**Diamond Services Corporation**

**Plaintiff/Appellant**

v.

**RLB Contracting, Incorporated.; Harbor Dredging, Incorporated; Travelers Casualty and Surety Company of America**

**Defendants/Appellees**

---

On Appeal from

United States District Court for the Southern District of Texas

3:21-CV-253

---

**RESPONSE BRIEF OF APPELLEE HARBOR DREDGING, INC.**

---

                               **Submitted by:**

                               **Christopher Solop**
                               **Biggs, Ingram & Solop, PLLC**
                               **Paragon Two**
                               **578 Highland Colony Parkway**
                               **Ridgeland, MS  39157**

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities, as described in 5th Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant:** | |
|---|---|
| Diamond Services Corporation | Counsel for Appellant: Harry Morse and Martin Bohman of Bohman Morse, L.L.C., New Orleans, LA |
| Paula Swiber | President, Diamond Services Corporation |
| Stephen P. Swiber | Vice-President, Diamond Services Corporation |

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Harbor Dredging, Inc. | Christopher Solop of Biggs, Ingram & Solop, PLLC, Ridgeland, MS |
| Roland Maturin | President, Harbor Dredging, Inc. |
| Keith Marks | Vice President, Harbor Dredging, Inc. |
| RLB Contracting, Inc. | Mark Guthrie, Cody Schneider, and John Woodridge of Winstead, P.C., Dallas, TX |
| Randy Boyd | President, RLB Contracting, Inc. |

| | |
|---|---|
| Travelers Casualty and Surety Company of America | Elliott Scharfenberg and Jane Daily of Guidry & Guidry, Saint Martinville, LA |

/S/ Christopher Solop
Attorney of Record for Appellee,
Harbor Dredging, Incorporated

## Statement Regarding Oral Argument

Harbor believes that the law, arguments, and record are sufficiently clear that an oral argument will not significantly aid the Court in its review of the District Court's summary judgment and dismissal orders. However, if the Court grants oral argument, Harbor requests to be heard.

## Table of Contents

Page(s)

Certificate of Interested Parties ..................................................................................i

Statement Regarding Oral Argument ...................................................................... iii

Table of Contents ......................................................................................................iv

Table of Authorities ...................................................................................................v

Introduction ................................................................................................................1

Jurisdictional Statement .............................................................................................1

Statement of the Issues ...............................................................................................2

Concise Statement of the Case ...................................................................................3

Standard of Review ....................................................................................................6

Summary of the Argument .........................................................................................7

Argument ....................................................................................................................8

    1. Diamond failed to properly and timely appeal the district court's November 14, 2022, Memorandum Opinion and Order. ..........................8

    2. It is undisputed that Harbor has paid Diamond for all the work performed under the sub-subcontract. ................................................................10

    3. Diamond admits that Harbor is not in any way responsible for any further payment associated with Diamond REA. ...............................................10

Conclusion ................................................................................................................11

Certificate of Service ...............................................................................................12

Certificate of Compliance ........................................................................................13

# Table of Authorities

**Cases**

*Bennett v. Comm'n for Lawyer Discipline*
    489 S.W.3d 58, 69 (Tex. App.—Houston [14th Dist.] 2016 ..........................9

*Celotex Corp. v. Catrett* ...............................................................................6
    477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)

*FDIC v. Ernst & Young*
    967 F.2d 166, 169 (5th Cir.1992) ..................................................................6

*Lindsey v. Prive Corp.*
    987 F.2d 324, 327 n. 14 (5th Cir. 1993) ........................................................7

*Luera v. M/V Alberta* ...................................................................................8
    635 F.3d 181, 189 (5th Cir. 2011).

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574, 587 (1986) ..............................................................................6

*Reeves v. Sanderson Plumbing Prods., Inc.*
    530 U.S. 133, 150 (2000) ..............................................................................6

Williams v. Time Warner Operation, Inc.
    98 F.3d 179, 181 (5th Cir. 1996) ..................................................................7

**Statutes**

Fed.R.Civ.Proc. 56(e) .......................................................................................6

## Introduction

Appellee Harbor Dredging, Inc. ("Harbor") files this response to the initial brief of Appellant Diamond Services Corporation ("Diamond"). Harbor respectfully submits the district court's granting of summary judgment in favor of Harbor dismissing Diamond's claims is supported by the record of undisputed facts and law. Harbor therefore respectfully prays that this Court affirm the district court's decision.

## Jurisdictional Statement

Diamond's initial Complaint sets forth federal court jurisdiction based upon the Miller Act, 40 U.S.C. §3133(b)(3) and 28 U.S.C. §1367. In the alternative, Diamond also asserted jurisdiction under 28 U.S.C. §1333 because its Subcontract required "provision of a dredge, a tug, and barges by Diamond to RLB for the purpose of dredging the Houston Ship Channel, a navigable waterway…." Diamond later amended its Complaint to allege jurisdiction pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. Diamond now asserts that this Court has jurisdiction over this interlocutory appeal under 28 U.S.C. 1292(a)(3).

Outside of its conclusory statement regarding this Court's jurisdiction, Diamond is unable to provide any further support for this Court's jurisdiction and thus, Diamond has not satisfied its burden to establish jurisdiction for this appeal. Harbor therefore joins the jurisdictional challenge for Diamond's appeal as set forth in RLB's brief because the only

claims Diamond potentially timely appealed are not admiralty claims and such claims are not appealable under 28 U.S.C. 1292(a)(3).

## Statement of Issues

Diamond has proffered no clear statement of the issues regarding Harbor except to the extent the district court has granted Harbor's motion for summary judgment. Diamond has offered no disputed material facts or set forth any legal authority for this Court to reverse the decision of the district court. Nonetheless, the issues presented by Harbor herein for resolution are as follows:

1.      Whether Diamond properly and timely appealed the district court's November 14, 2022, Memorandum Opinion and Order [Doc. 62] denying Diamond the right to recover the costs from Harbor or RLB for retaining an extra tug, the M/V MISS KERRILYNN, to complete Diamond's scope of work.

2.      Whether the district court erred in granting summary judgment in favor of Harbor and against Diamond where there is no dispute that Harbor paid Diamond in full for its original scope of work and Diamond admittedly did not expect any direct payment from Harbor for Diamond's portion of the request for equitable adjustment submitted to the United States Corps of Engineers.

**Concise Statement of Case**

On September 4, 2019, RLB Contracting, Inc. ("RLB") was awarded Contract No. W912HY19C0015 ("the Prime Contract") by the U.S. Army Corps of Engineers ("USACE"), Galveston District, for pipeline dredging in the Houston Channel, Brady Island to HSC Turning Basin in Harris County Texas ("the Project"). [ROA. 213-19] Thereafter, RLB entered into a Subcontract Agreement with Harbor to perform certain aspects of the Prime Contract. [ROA. 128-30]

Harbor subsequently entered into a Subcontract Agreement (herein referred to as the "sub-subcontract") with Diamond to conduct certain dredging operations within the scope of Harbor's work. [ROA. 28-30] Diamond was to be paid for each cubic yard of material dredged on the Project, as measured, and paid for by the USACE. Together with the mobilization and demobilization amounts provided for in the sub-subcontract, this unit rate included Diamond's direct costs (equipment, material, and labor) along with its overhead and profit. As part of its scope of work in the sub-subcontract, Diamond was "responsible for traversing the hopper barges from [the] excavation site to the unloading site", which might require Diamond to utilize one or more tugboats. *Id.*

During the performance of the Project, RLB, Harbor and Diamond encountered conditions that differed materially from those represented in the Project plans and specifications published by the USACE, also known as a Type I

3

differing site conditions. This differing site conditions had an adverse impact on RLB, Harbor and Diamond's costs and the time for performance. As a result of the differing site conditions, RLB decided to pursue a request for equitable adjustment ("REA") under the Prime Contract for the additional costs associated with this differing site conditions. On October 26, 2020, prior to completion of the Project, RLB submitted its initial REA seeking compensation for the additional costs associated with performing the Prime Contract arising from the differing site conditions. [ROA. 31-35]

After the Project was complete, RLB decided to revise its REA. RLB therefore requested Harbor and Diamond certify and submit their revised total project costs, overhead and profit in accordance with the Federal Acquisition Regulation ("FAR"), Clause 52.243-4, Changes (Jun 2007) and FAR Clause 52.236-2, Differing Site Conditions (Apr. 1984) to calculate the change in costs resulting from the differing site conditions.

On March 30, 2021, Harbor submitted to RLB its certified total costs, including direct costs, overhead and profit for the Project in the total amount of $3,179,169.00 to RLB. [ROA. 136-37] This amount included Diamond's certified total costs of $2,362,344.00 for Diamond's scope of work, which also included Diamond's direct costs, overhead and profit. [ROA. 132-34] Using Harbor and Diamond's total certified costs submissions as subcontractor and sub-subcontractor

and RLB's total certified costs, including RLB's direct costs, overhead and profit, RLB amended and resubmitted its REA on April 6, 2021, seeking $8,867,212.00 for the excess costs associated with the differing site conditions. [ROA. 139-75]

After initial review of RLB's amended REA, the USACE notified RLB that it desired to negotiate a settlement of the amended REA. In anticipation of negotiating a resolution of the amended REA with the USACE, RLB asked Harbor to determine the amounts Harbor and its sub-subcontractor Diamond would accept in satisfaction of their claims for a share of the excess costs recovered by RLB from the USACE in a settlement of the amended REA. Diamond agreed that it would accept $950,000.00 to resolve its claim for a share of excess costs recovered by RLB in an REA associated with the differing site conditions. [ROA. 447-48] Mr. Maturin determined that Harbor would accept $500,000.00 in satisfaction of its claim for a share of the excess costs, and Mr. Maturin conveyed Harbor's and Diamond's settlement position total of $1,450,000.00 to RLB in advance of RLB's negotiations with the USACE. [ROA. 487-90]

On August 5, 2021, the USACE and RLB entered Contract Modification No. P00002 for $6,000,000.00 in full and final settlement for RLB's REA associated with the differing site conditions encountered on the Project. [ROA. 194-95] In accordance with the agreement reached between Harbor and Diamond and communicated to RLB, a check was issued to Harbor for its agreed upon

5

settlement amount of $500,000.00 and a joint check to Harbor and Diamond in the amount of $950,000.00 for Diamond's settlement amount. Diamond contends the $950,000.00 does not reflect an equitable settlement of its claimed cost for the differing site conditions it encountered. [ROA. 221-25]

## Standard of Review

When called upon to review the grant of summary judgment this Court considers the merits of the decision *de novo. FDIC v. Ernst & Young,* 967 F.2d 166, 169 (5th Cir.1992). This means that once a motion for summary judgment has been properly made, the burden shifts to the nonmovant to go beyond the pleadings and by his or her own affidavits, depositions, answers to interrogatories, or admissions to come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), Fed.R.Civ.Proc. 56(e). In this instance, Diamond as the nonmoving party could not simply rest upon mere allegations or denials in the pleadings but was required to present evidence setting forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "[T]he court must review the record 'taken as a whole'" to determine the merits of the motion and the evidence offered by the nonmoving party, in this instance Diamond. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). All the evidence must be

construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir. 1993). Here, the district court properly found that Diamond was unable to meet its burden offering insufficient evidence to demonstrate the existence of a disputed genuine issue of material fact or provide adequate jurisprudence to defeat Harbor's motion for summary judgment.

## Summary of Argument

Diamond failed to properly and timely appeal the Memorandum Opinion and Order of the district court dated November 14, 2022, and is barred from raising any issues addressed by the district court in that decision. Diamond is also barred from claiming it is entitled to any further compensation from Harbor. It is undisputed that Harbor paid Diamond all the amounts due and owing under the terms and conditions of the sub-subcontract between Harbor and Diamond. Further, because Harbor was a mere conduit between Diamond and RLB regarding any amounts alleged to be due under the REA, Diamond admits Harbor has no liability to Diamond for any additional claim by it against RLB regarding what Diamond contends is its "equitable" share of RLB's settlement with the USACE.

Accordingly, the district court's decision granting summary judgment in favor of Harbor should be affirmed.

## Argument

### 1. Diamond failed to properly and timely appeal the district court's November 14, 2022, Memorandum Opinion and Order.

The district court has already determined in its Memorandum Opinion and Order dated November 14, 2022, [ROA 1649-77] that Diamond is not entitled to any compensation for what it contends was an extra tug, the M/V MISS KERRILYNN, required to perform Diamond's scope of work under the sub-subcontract. [ROA 1666-68] Diamond did not appeal this decision within the time permitted under 28 U.S.C. 1292(b).[1] Further, 28 U.S.C. § 2107(a) provides that "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, ***within thirty days*** after the entry of such judgment, order or decree." (emphasis added); *see also* FED. R. OF APP. P. 4(a). Accordingly, any issue regarding Diamond's right to recover the costs for the M/V MISS KERRILYNN has been resolved against Diamond and in favor of Harbor and RLB.

Even if Diamond's belated "appeal" regarding the extra tug is considered proper and timely, Diamond offers no support in the record for its entitlement for

---

[1] As noted by this Court, "a plaintiff who asserts admiralty jurisdiction as a basis for the court's subject matter jurisdiction over a claim has automatically elected under Rule 9(h) to proceed under the admiralty rules." *Luera v. M/V Alberta*, 635 F.3d 181, 189 (5th Cir. 2011).

additional compensation. As articulated by the district court, the sub-subcontract language is unambiguous regarding Diamond's scope of work, which provides in pertinent part as follows:

> …Subcontractor will be responsible for traversing the hopper barges from the excavation site to the unloading site.

[ROA. 26].

It was strictly up to Diamond to determine its means and method of performance, including the labor and equipment needed to perform this scope of work, which included the use of at least one tug or more if needed. [ROA. 862 and ROA. 884] Therefore, Diamond could elect to perform its scope of work with a single tug or multiple tugs.

Neither Harbor nor RLB is responsible for Diamond's pricing of the sub-subcontract or its means and method of performance. *See Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 69 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (applying "Texas's fundamental public policy in favor of a broad freedom to contract, which allows parties to allocate risks as they see fit as long as their agreement does not violate the law or public policy."). Diamond assumed the risk inherent in every firm fixed-price contract, that the cost of performance could exceed the bid price. Absent any evidence to justify any deviation from Diamond's contractual obligations under the sub-subcontract, the district court properly refused to place the burden of the extra tug upon Harbor and RLB. Therefore,

regardless of whether Diamond's appeal of the district court's November 14, 2022, Memorandum Opinion and Order is proper or timely, the district court's denial of any compensation to Diamond from Harbor and/or RLB for the extra tug should be affirmed.[2]

### 2. It is undisputed that Harbor has paid Diamond for all the work performed under the sub-subcontract.

Harbor has paid Diamond for all the work performed by Diamond under the sub-subcontract. [ROA. 459] Diamond provided no evidence or argument to the district court to the contrary. Harbor is therefore not responsible for any further payment to Diamond under the sub-subcontract. Diamond has raised no claim to the contrary in its initial brief or offered any citation to the record to the contrary.

### 3. Diamond admits that Harbor is not in any way responsible for any further payment associated with Diamond REA.

Not only has Harbor paid Diamond for all the work performed by it under the sub-subcontract, but Harbor is not responsible for any further payment to Diamond arising out of or related to its REA. *See*, Stephen Swiber's Affidavit at ¶ 5 in which he states:

> Diamond always expected payment [of its claim] from RLB, not from Harbor, Diamond communicated this to RLB on December 14, 2020 via correspondence, and separately in September of 2021 in a meeting at Diamond's office.

---

[2] Harbor further joins RLB in the arguments set forth in its brief concerning the district court's denial of Diamond's claim of entitlement to any amount whatsoever for the M/V MISS KERRILYNN.

[ROA. 514] See also, Swiber Affidavit at ¶ 8 [ROA. 302-03]  Diamond has admittedly released Harbor from any further liability for Diamond's REA pertaining to the differing site conditions. Accordingly, the district court's grant of summary judgment in favor of Harbor and against Diamond should be affirmed.

## Conclusion

Diamond is not entitled to any additional compensation from either Harbor or RLB for the extra tug, the M/V MISS KERRYLYNN.  Diamond can also not articulate any disputed genuine material issue, fact or legal jurisprudence to support its position that Harbor is liable for any further compensation either under the sub-subcontract or arising out of or relating to the REA.  Accordingly, the decision of the district court granting summary judgment in favor of Harbor and against Diamond should be affirmed.

Respectfully submitted, this the 22nd day of May, 2023.

By: /s/ Christopher Solop
Attorney of Record for Appellee, Harbor Dredging, Incorporated
Biggs, Ingram & Solop, PLLC
Paragon Two
578 Highland Colony Parkway
Ridgeland, MS  39157

## **CERTIFICATE OF SERVICE**

I certify that on the 22nd May, 2023, the foregoing document was served to all counsel of record via the Court's CM/ECF Document Filing System.

/s/ Christopher Solop

## **CERTIFICATE OF COMPLIANCE**

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th CIR. R. 32.1, this document contains 3,099 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(A)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 365 in Times New Roman 14.

/s/ Christopher Solop