**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 23-40137**

_____

**DIAMOND SERVICES CORPORATION**
**Plaintiff/Appellant**

v.

**RLB CONTRACTING, INCORPORATED.; HARBOR DREDGING,**
**INCORPORATED.; TRAVELERS CASUALTY AND SURETY COMPANY**
**OF AMERICA**
**Defendants/Appellees**

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

_____

**BRIEF OF APPELLEE**
**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

_____

Elliot Scharfenberg
J. Megan Daily
KREBS FARLEY, P.L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582
Email: escharfenberg@krebsfarley.com
          mdaily@krebsfarley.com
Attorneys for Travelers Casualty and Surety
Company of America

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Local Rule 28.2.1 of the United States Fifth Circuit Court of Appeals, the undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

| Appellant | Counsel for Appellant |
| --- | --- |
| Diamond Services Corp. | Harry Morse and Martin Bohman of Bohman Morse, LLC, New Orleans, LA |

| Appellees | Counsel for Appellees |
| --- | --- |
| RLB Contracting, Inc. | Mark Guthrie, Cody Schneider, and John Woodridge of Winstead, PC, Houston, TX |
| Harbor Dredging, Inc. | Christopher Solop of Biggs, Ingram & Solop, PLLC, Jackson, MS |
| Travelers Casualty and Surety Company of America, which is wholly owned by its ultimate publicly traded parent company, The Travelers Companies, Inc. | Elliot Scharfenberg and Jane Megan Daily of Krebs Farley, PLLC, New Orleans, LA |

DATED this the 22nd day of May, 2023.

/s/ *Elliot Scharfenberg*
Attorney of record for Travelers Casualty and
Surety Company of America

i

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal involves the application of well-established principles of law, oral argument is unnecessary to aid the Court's decisional process.

# **Table of Contents**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF AUTHORITIES ..................................................................................v

ISSUES PRESENTED FOR REVIEW ...................................................................1

STATEMENT OF THE CASE................................................................................1

I.   FACTUAL BACKGROUND...........................................................................3

   A.   The Parties Contracted to Perform Work as Part of the Project. .................3

   B.   The Parties Encountered a Differing Site Condition. ..................................4

   C.   RLB Submitted a Request for Equitable Adjustment. .................................5

II.  PROCEDURAL HISTORY ..............................................................................6

III. THE DISTRICT COURT'S RULINGS ............................................................7

SUMMARY OF THE ARGUMENT ......................................................................9

ARGUMENT ........................................................................................................11

I.   Diamond is a Second-Tier Subcontractor and was Required to Provide Notice of its Claim pursuant to the Miller Act.............................................................11

   A.   There is No Contractual Relationship Between Diamond and RLB. .........12

   B.   Diamond was Required to Plead Notice under the Miller Act as a Condition Precedent to its Claims. ...........................................................15

II.  The District Court Properly Granted the Motions to Strike. ...........................16

   A.   Diamond was Permitted to Amend its Complaint without Leave of Court within 21 days of Service. ..........................................................................16

   B.   Diamond was Afforded an Opportunity to Amend its Pleadings Pursuant to Galveston Division Rule of Practice 6. ......................................................17

C.    Diamond could have Amended its Complaint within 21 days of service of
      RLB's and Travelers' Rule 12(b)(6) Motions. ..........................................18

D.    Diamond Allowed the Deadline to Amend the Pleadings Expire without
      Seeking to Amend its Complaint to Plead Notice under the Miller Act. ....19

E.    In Ruling on the Rule 12(b)(6) Motions, the District Court Ordered
      Diamond to Amend its Complaint within 14-days, but Diamond Failed to
      do so. ........................................................................................................20

F.    The District Court Granted the Motions to Strike the Late-Filed and Futile
      Amendment. ..............................................................................................22

G.    The District Court did not Abuse its Discretion in Granting the Motions to
      Strike, and this Court should Affirm. .......................................................24

CONCLUSION ......................................................................................................27

# TABLE OF AUTHORITIES

*Cases*

Brown v. Alixa-RX,
    No. 22-40160, 2022 WL 4594188 (5th Cir. Sept. 30, 2022) _____ 3, 23

Cambridge Toxicology Group, Inc. v. Exnicios,
    495 F.3d 169 (5th Cir. 2007)_____ 3, 23

Carter Real Estate & Dev., Inc. v. Builder's Serv. Co.,
    718 S.W.2d 828 (Tex. App. 1986) _____ 2

F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.,
    417 U.S. 116 (1974) _____ 13, 14

Girard Fire & Marine Ins. Co. v. Koenigsberg,
    65 S.W.2d 783 (Tex. Civ. App. 1933) _____ 2

Klein v. Marvin Lumber & Cedar Co.,
    575 Fed. App'x 347 (5th Cir. 2014) _____ 21, 23, 25, 26

Liles Constr. Co. v. U.S. ex rel. Stabler Paint Manuf. Co.,
    415 F.2d 889 (5th Cir. 1969)_____ 11, 15

Moore v. Belt,
    206 S.W. 225 (Tex. Civ. App. 1918) _____ 2

Muenster v. Tremont Nat. Bank,
    49 S.W. 362 (Tex. 1899)_____ 2

Scarborough v. Kerr,
    70 S.W.2d 607 (Tex. Civ. App. 1934) _____ 2

SGK Props., L.L.C. v. U.S. Bank Nat. Ass'n for Lehman Brothers Small Balance
    Comm. Mortgage Pass-Through Certificates, Series 2007-3,
    881 F.3d 933 (5th Cir. 2018)_____ 24

Stafford v. Lawyers Lloyds of Texas,
    175 S.W.2d 461 (Tex. Civ. App. 1943) _____ 2

*U.S. ex rel. E & H Steel Corp. v. C. Pyramid Enters., Inc.*,
309 F.3d 184 (3d Cir. 2007) _____ 14, 15

*U.S. ex rel. Gulf States Enters. v. R.R. Tway, Inc.*,
938 F.2d 583 (5th Cir. 1991)_____ 11

*U.S. ex rel. Howell Crane & Rigging, Inc. v. Naylor Cos.*,
No. 14-CV-95-OLG, 2014 WL 12586776 (W.D. Tex. Apr. 14, 2014)_____ 15

*Wills v. Tyer*,
186 S.W. 862 (Tex. Civ. App. 1916) _____ 2

*Woldert v. Durst*,
38 S.W. 215 (Tex. Civ. App. 1896) _____ 2

**Statutes**

40 U.S.C. § 3133_____ passim

FED. R. APP. P. 4 _____ 12

FED. R. CIV. P. 15 _____ 21

FED. R. CIV. P. 9 _____ 10

Rule 5, Galveston Division Rules of Practice _____ 21

Rule 6, Galveston Division Rules of Practice _____ 17

**Treatises**

50 Am. Jur., Suretyship § 208_____ 2

RESTATEMENT OF SECURITY § 82 (1941)_____ 2

The district court properly entered judgment in favor of Travelers Casualty and Surety Company of America ("Travelers") and against Diamond Services Corporation ("Diamond"). This Court should reject Diamond's appeal and affirm the district court's judgment in all respects.

## ISSUES PRESENTED FOR REVIEW

1. Did the District Court abuse its discretion in granting Travelers' Motion to Strike Diamond's futile Second Superseding and Amended Complaint that was filed after the expiration of all deadlines for amending pleadings, without leave of court, and without consent from the opposing parties?

## STATEMENT OF THE CASE

Diamond's Statement of the Issues in its brief mischaracterizes the District Court's ruling. Diamond incorrectly asserts that the District Court "dismissed Diamond's claim against Travelers under the Miller Act on the basis that Diamond was not in privity of contract with RLB, and that Diamond did not specifically plead that it had given Travelers requisite notice within ninety days of the end of work."[1] In reality, the District Court granted RLB's Motion for Summary Judgment as to Diamond's Miller Act claims because Diamond sought to recover overhead and

---

[1] Diamond's Br. 1.

1

profits, which are not recoverable under the Miller Act, and failed to identify any recoverable costs.[2]

The District Court's grant of summary judgment to RLB on Diamond's Miller Act claims also disposed of the Miller Act claims as against Travelers. As surety, Travelers' obligations under its bond cannot exceed that of its principal, RLB.[3] Through this contractual relationship, a surety is granted the ability to assert any defense to a suit that is available to its principal.[4] Therefore, subject to exceptions not applicable here, any plea by a principal which would release it from liability on a bond also releases the surety.[5] The Summary Judgment releasing RLB from liability also released Travelers. A District Court's grant of summary judgment is reviewed *de novo*.

The District Court denied Travelers' 12(c) Motion for Judgment on the Pleadings as moot since it had already granted summary judgment to RLB on

---

[2] ROA.1891.

[3] *See Carter Real Estate & Dev., Inc. v. Builder's Serv. Co.*, 718 S.W.2d 828, 830 (Tex. App. 1986) (quoting RESTATEMENT OF SECURITY § 82 (1941)).

[4] *Scarborough v. Kerr*, 70 S.W.2d 607, 607 (Tex. Civ. App. 1934).

[5] 50 Am. Jur., Suretyship § 208, p. 1041, *see also Muenster v. Tremont Nat. Bank*, 49 S.W. 362 (Tex. 1899); *Woldert v. Durst*, 38 S.W. 215 (Tex. Civ. App. 1896); *Moore v. Belt*, 206 S.W. 225 (Tex. Civ. App. 1918); *Wills v. Tyer*, 186 S.W. 862 (Tex. Civ. App. 1916); *Girard Fire & Marine Ins. Co. v. Koenigsberg*, 65 S.W.2d 783 (Tex. Civ. App. 1933); *Stafford v. Lawyers Lloyds of Texas*, 175 S.W.2d 461 (Tex. Civ. App. 1943).

Diamond's Miller Act claims, which disposed of Diamond's Miller Act claims against Travelers. As a result, the District Court found that Diamond's attempted amendment to allege notice under the Miller Act no longer served any purpose. For this reason and because the late filing was not accompanied by a motion for leave to file, the District Court granted RLB and Travelers' Motions to Strike. A motion to strike is reviewed for abuse of discretion.[6]

## I.     FACTUAL BACKGROUND

### A.     The Parties Contracted to Perform Work as Part of the Project.

This case arises out of a contract ("Prime Contract") entered into between the United States Army Corps of Engineers ("USACE") and prime contractor RLB Contracting, Inc. ("RLB") on September 4, 2019 for the dredging work in the Houston Ship Channel between Brady Island and the Houston Ship Channel Turning Basin (the "Project").[7] As part of its obligations for the Project, RLB was required to provide a Miller Act payment bond ("Bond"), which RLB obtained from Travelers.[8] RLB entered into a subcontract ("Subcontract") with Harbor Dredging,

---

[6] *Brown v. Alixa-RX*, No. 22-40160, 2022 WL 4594188, at *2 (5th Cir. Sept. 30, 2022); *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).
[7] ROA.591.
[8] ROA.741.

Inc. ("Harbor") to perform certain portions of the Project.[9] Harbor subsequently entered into a sub-subcontract ("Sub-subcontract") with Diamond to perform portions of Harbor's work on the Project.[10]

While working on the Project, Diamond received its directions related to its work on the Project from Harbor, not RLB.[11] Diamond's invoices were addressed and directed to Harbor and Harbor paid Diamond's invoices, not RLB.[12] None of Diamond's contemporaneous invoices on the Project were ever addressed or directed to RLB or issued in RLB's name.[13] Further, Diamond directed all communications on the Project to Harbor and not RLB.[14]

**B. <u>The Parties Encountered a Differing Site Condition.</u>**

During the Project, RLB, Harbor, and Diamond encountered a differing site condition in the area where the dredging work was being performed.[15] The differing site condition had an adverse impact on RLB, Harbor, and Diamond's time and costs to complete the work. On June 18, 2020, RLB provided notice of the differing site

---

[9] ROA.747.
[10] ROA.751.
[11] *See* ROA.859.
[12] *See* ROA.807-855.
[13] ROA.1298; ROA.872-874; ROA.887; ROA.891.
[14] ROA.891-892.
[15] ROA.586; ROA.19.

condition to the USACE in accordance with the Prime Contract.[16] RLB submitted an initial Request for Equitable Adjustment ("REA") of the Prime Contract on October 26, 2020 seeking additional costs associated with the differing site condition.[17] The USACE instructed RLB that if the USACE granted the Initial REA, then the USACE would not allow subsequent REAs for the costs of differing site conditions encountered during the remainder of the Project; RLB ultimately withdrew the initial REA.[18]

### C. **RLB Submitted a Request for Equitable Adjustment.**

After the Project was completed, RLB submitted the Amended REA covering the entire Project to USACE.[19] The submission of the Amended REA came after RLB received Harbor's total certified costs for the entire Project, which included Diamond's total certified costs for the entire Project (including Diamond's direct costs, overhead and profit).[20] RLB calculated its additional costs due to the differing site conditions using a measured mile methodology and submitted its Amended REA to the USACE in April 2021, requesting a time extension and compensation of

---

[16] ROA.31.
[17] ROA.756.
[18] ROA.588; ROA.898.
[19] ROA.762.
[20] ROA.132; ROA.136; ROA.899-900.

$8,867,212 for the additional costs, including overhead and profit, that RLB incurred performing the Prime Contract due to the differing site conditions at the Project.[21]

Ultimately, RLB negotiated a settlement of the Amended REA in the amount of $6,000,000 from the USACE.[22] Notwithstanding the amounts already paid to Harbor and Diamond under the Subcontract and Sub-Subcontract, Harbor and Diamond were paid $500,000 and $950,000, respectively, in satisfaction of their claims for a share of RLB's settlement of the Amended REA according to a mutual agreement among the parties.[23]

## II.  **PROCEDURAL HISTORY**

Diamond filed suit against RLB, Harbor and Travelers on September 16, 2021 seeking recovery of additional amounts recovered under the REA. Diamond pled Miller Act claims against RLB and Travelers. Diamond's Complaint failed to allege that it provided notice under the Miller Act, a prerequisite to asserting a Miller Act claim.[24] RLB and Travelers advised Diamond of the deficiency in its complaint in letters sent on October 26, 2021 and November 5, 2021 respectively. [25] RLB again raised the deficiency in Diamond's pleading in its Motion to Dismiss filed on

---

[21] ROA.139.
[22] ROA.194.
[23] ROA.589; ROA.767; ROA.901; ROA.867; ROA.886; ROA.910.
[24] 40 U.S.C. § 3133(b)(2).
[25] ROA.59; ROA.69; ROA.1701-1702.

December 3, 2021.[26] Travelers adopted RLB's arguments in its own Motion to Dismiss filed on January 21, 2022.[27] On February 7, 2022, Diamond sought and obtained leave to file its First Amended Complaint but did not include any allegations regarding the required Miller Act notice.[28]

### III.    THE DISTRICT COURT'S RULINGS

On November 14, 2022, the District Court entered its Memorandum Opinion and Order on RLB's Motion to Dismiss and Motion to Strike and Travelers' Motion to Dismiss.[29] The court denied Travelers' Motion to Dismiss, but ordered "that Diamond must amend its complaint to incorporate allegations that it gave proper Miller Act notice…within 14 days from the date of this order."[30] Thus, Diamond was required to amend its complaint by November 28, 2022. Diamond failed to timely amend its complaint in compliance with the court's order.

On December 5, 2022, Travelers filed a Rule 12(c) Motion for Judgment on the Pleadings.[31] The following day, December 6, 2022, Diamond filed its Second

---

[26] ROA.99; ROA.121-122.
[27] ROA.278.
[28] ROA.291; ROA.353.
[29] ROA.1649.
[30] ROA.1676.
[31] ROA.1679.

Superseding and Amended Complaint more than a week after the court's deadline and without seeking leave to do so.[32]

On December 8, 2022, Travelers filed a Motion to Strike Diamond's Second Superseding and Amended Complaint.[33] Shortly thereafter, RLB filed its own Motion to Strike and Answer to Diamond's Second Superseding and Amended Complaint.[34] The District Court granted the Motions to Strike in a Memorandum Opinion and Order dated February 14, 2023.[35] In the Memorandum Opinion and Order, the court also:

1. Granted Harbor's Motion for Summary Judgment;

2. Granted RLB's Motion for Summary Judgment as to Diamond's claims against RLB;

3. Granted in part and denied in part RLB's Motion for Summary Judgment as to its declaratory judgment claims against Diamond;

4. Granted the Motions to Strike; and

---

[32] ROA.1685.
[33] ROA.1699.
[34] ROA.1739.
[35] ROA.1873.

5. Denied Travelers' Rule 12(c) Motion for Judgment on the Pleadings as moot because the court disposed of Diamond's Miller Act claims on other grounds.[36]

Diamond appeals from the District Court's Memorandum Opinion and Order dated February 14, 2023.

## SUMMARY OF THE ARGUMENT

Diamond is a second-tier subcontractor under the Miller Act.[37] There is no contract between RLB and Diamond. Diamond contracted with Harbor, RLB's subcontractor, and was thus required to provide notice under the Miller Act and to plead such notice in its Complaint pursuant to Fed. R. Civ. P. 9(c). Diamond failed to do so and therefore did not plead a valid cause of action against Travelers.

RLB notified Diamond of this deficiency in its pleadings, in writing, on October 26, 2021. Diamond had the opportunity to amend its pleadings to remedy this deficiency but failed to do so. The deadline for amending pleadings expired without any attempt from Diamond to amend its Miller Act claim, but Diamond did obtain leave of court and amend its Complaint to designate its claim as an admiralty claim pursuant to Fed. R. Civ. P. 9(h).

---

[36] ROA.1873.

[37] 40 U.S.C. § 3133 (b)(2).

Long after the deadline for amendments, in its Memorandum Opinion and Order dated November 14, 2022, the District Court granted Diamond yet another chance to amend its pleadings within 14 days to plead notice satisfying the condition precedent to filing a Miller Act claim.[38] Diamond still did not do so.

After the expiration of the District Court's 14-day deadline, Travelers filed a Rule 12(c) Motion for Judgment on the Pleadings based on Diamond's failure to properly plead that it gave the requisite notice under the Miller Act. In response, Diamond filed its untimely Second Superseding and Amended Complaint without seeking leave to file in violation of Fed. R. Civ. P. 15, the District Court's Docket Control Order and Local Rules, and the Memorandum Opinion and Order setting a 14-day deadline for the amendment.

Travelers and RLB responded with motions to strike the Second Superseding and Amended Complaint. The District Court properly granted these motions both because the late amendment was filed without a motion for leave and because it no longer served any purpose since the Court had disposed of Diamond's Miller Act claims for other reasons. This was not an abuse of the District Court's discretion, and the Court should affirm.

---

[38] 40 U.S.C. § 3133 (b)(2); *see* Fed. R. Civ. P. 9(c).

# **ARGUMENT**

I.   **Diamond is a Second-Tier Subcontractor and was Required to Provide Notice of its Claim pursuant to the Miller Act.**

The Miller Act requires prime contractors on qualifying federal construction projects to procure payment bonds and grants *certain* parties the right to sue on such bonds.[39] The right to bring a suit under the Miller Act on a payment bond extends only to those parties having either a direct contractual relationship with the prime contractor furnishing the bond (*i.e.* a first-tier subcontractor) or having a direct contractual relationship with a subcontractor of the prime contractor (*i.e.* a second-tier subcontractor).[40] The distinction between whether a party is a first-tier or second-tier subcontractor is critical because if a party is a first-tier subcontractor then it has a right to bring a claim on a bond without being subject to the Miller Act's notice provisions.[41] But if a party is a second-tier subcontractor then that party must establish it provided timely and adequate notice under the Miller Act.[42]

---

[39] 40 U.S.C. § 3133(b).

[40] *Id.* § 3133(b)(1)-(2); *see also U.S. ex rel. Gulf States Enters. v. R.R. Tway, Inc.*, 938 F.2d 583, 586-87 (5th Cir. 1991).

[41] *See* 40 U.S.C. § 3133(b)(1).

[42] *Id.* § 3133(b)(2); *Liles Constr. Co. v. U.S. ex rel. Stabler Paint Manuf. Co.*, 415 F.2d 889, 890 n.2 (5th Cir. 1969).

A second-tier subcontractor must provide notice of its claim within ninety days of the last date of performance of work.[43] The notice "must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied for or whom the labor was done or performed."[44]

## A. <u>There is No Contractual Relationship Between Diamond and RLB.</u>

Diamond is a second-tier subcontractor under the Miller Act. Diamond contracted with Harbor, not with RLB.[45] RLB was not a party to the Sub-subcontract between Diamond and Harbor.[46] Diamond was not a party to the Prime Contract between RLB and Harbor. The District Court found that there was no express contract between RLB and Diamond.[47] Diamond has not appealed this ruling, so it is final.[48]

Diamond contends that the Subcontract and the Sub-subcontract are identical in scope of work and that this somehow transforms Diamond into a subcontractor of RLB, not Harbor. There is no support for this contention in the contracts, the interactions between the parties, or in the case law on which Diamond relies. It defies

---

[43] 40 U.S.C. § 3133 (b)(2).

[44] *Id.*

[45] ROA.28.

[46] ROA.28

[47] ROA.1658-1660.

[48] *See* Fed. R. App. P. 4(a)(1)(A).

logic and contract law to suggest that parties who have executed no contract can be considered to have a contractual relationship merely because they have both separately contracted with another party.

The interactions between the parties during the Project show that Diamond was Harbor's subcontractor, not RLB's. Diamond received its directions related to its work on the Project from Harbor, not RLB.[49] Diamond's invoices were addressed and directed to Harbor, and Harbor paid Diamond's invoices, not RLB.[50] In fact, none of Diamond's contemporaneous invoices on the Project were ever addressed or directed to RLB or issued in RLB's name.[51] Further, Diamond directed all communications on the Project to Harbor and not RLB.[52] Diamond submitted its certified costs for the Project, which included overhead and profit to Harbor.[53] Harbor submitted to RLB its total certified costs for the entire Project, which also included Diamond's total certified costs for the entire Project, including Diamond's direct costs, overhead and profit.[54] Diamond's conduct demonstrates that it clearly understood that it was Harbor's subcontractor, not RLB's.

---

[49] *See* ROA.859.
[50] *See* ROA.808; ROA.844.
[51] ROA.1298; ROA.872-874; ROA.887; ROA.891.
[52] ROA.891-892.
[53] ROA.771.
[54] ROA.405; ROA.132; ROA.136.

13

The cases Diamond cites do not support its contention that it is a subcontractor of RLB. In *F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.*,[55] the United States Supreme Court considered whether a party who had a direct contract with the contractor should be considered a subcontractor or a materialman for the purposes of determining whether its supplier could assert a Miller Act claim. The Miller Act provides a cause of action to those having a contractual relationship with the contractor or with a subcontractor, not with a materialman.[56] The party was found to be a subcontractor such that its supplier was entitled to assert a Miller Act claim as a second-tier subcontractor.[57] The Court considered the "substantiality and importance" of the relationship between the prime contractor and the party that had directly contracted with the prime contractor in finding that party to be a subcontractor as opposed to a materialman.[58] The Court did not hold that a substantial and important relationship with the prime contractor could replace a contract with prime contractor to make someone a first-tier subcontractor, as Diamond asks this Court to hold.

---

[55] 417 U.S. 116 (1974).

[56] *Id.* at 122.

[57] *Id.* at 124.

[58] *Id.* at 123.

*U.S. ex rel. E & H Steel Corp. v. C. Pyramid Enterprises, Inc.*[59] involved the same issue as to whether a party with a direct contractual relationship with the prime contractor was a subcontractor such that its supplier could file a Miller Act claim. The Third Circuit determined that the party was a material supplier rather than a subcontractor such that its supplier was not entitled to file a Miller Act claim.[60]

There is no support for Diamond's claim that the similarity between the Subcontract and the Sub-subcontract and Diamond's role in the Project transformed Diamond into RLB's subcontractor even though Diamond is not a party to RLB's Prime Contract and RLB is not a party to Diamond's Sub-subcontract. Diamond has not and cannot show that it has a direct contractual relationship with RLB. Diamond's contract was with RLB's subcontractor Harbor, and Diamond is a second-tier subcontractor under the Miller Act.

### B. <u>Diamond was Required to Plead Notice under the Miller Act as a Condition Precedent to its Claims.</u>

As a second-tier subcontractor, Diamond was required to provide notice of its Miller Act claim to RLB within 90 days of its last day of work on the Project and to allege that it provided such notice in its Complaint.[61] Providing notice under the

---

[59] 309 F.3d 184, 185 (3d Cir. 2007).

[60] *Id.* at 186.

[61] 40 U.S.C. § 3133 (b)(2); *U.S. ex rel. Howell Crane & Rigging, Inc. v. Naylor Cos.*, No. 14-CV-95-OLG, 2014 WL 12586776, at *3 (W.D. Tex. Apr. 14, 2014).

Miller Act is a condition precedent to a supplier's right to sue on the payment bond.[62]

Fed R. Civ. P. 9(c) provides: "In pleading conditions precedent, its suffices to allege generally that all conditions precedent have occurred or been performed." Accordingly, to state a Miller Act claim, a sub-subcontractor must state in its complaint that it gave notice pursuant to 40 U.S.C. § 3133 (b)(2). Diamond failed to allege the required notice in its Complaint despite numerous opportunities to do so; accordingly, Diamond's claims against Travelers were properly dismissed under this alternative basis.

## II.    The District Court Properly Granted the Motions to Strike.

### A. Diamond was Permitted to Amend its Complaint without Leave of Court within 21 days of Service.

Fed. R. Civ. P. 15(a)(1) permits a party to amend its pleading as a matter of course within 21 days of service or within 21 days of service of a responsive pleading or Rule 12 motion, which ever is earlier. Fed. R. Civ. P. 15(a)(2) provides that in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.

---

[62] *Naylor*, 2014 WL 12586776, at *3 (quoting *Liles Const. Co. v. United States*, 415 F. 2d 889, 890 (5th Cir. 1969)).

**B. <u>Diamond was Afforded an Opportunity to Amend its Pleadings Pursuant to Galveston Division Rule of Practice 6.</u>**

Local Rule 6 of the Galveston Division Rules of Practice in effect in 2021 provided a party an opportunity to amend its complaint before a motion to dismiss the complaint would be considered. Local Rule 6 required a party intending to file a motion to dismiss under Rule 12(b) to confer with opposing counsel concerning the expected motion's basis and to inform the respondent, by letter, of the right to amend its pleadings, specifying that the amended pleading must be filed within 14 days of the date of the letter.[63] This 14-day period thus provided an additional opportunity for Diamond to amend its complaint after the lapse of the 21-day period for amendment as of right under Fed. R. Civ. P. 15(a)(1).

RLB filed a Notice of Compliance with Local Rule 6 on October 26, 2021 stating that it conferred with Diamond's counsel regarding RLB's intent to file a 12(b) motion to dismiss and the expected bases for the motion and that, by letter dated October 26, 2021, it informed Diamond's counsel of Diamond's right under Local Rule 6 to amend its pleadings within 14 days of the letter.[64] On November 8, Travelers filed its own Notice of Compliance stating that it conferred with

---

[63] Rule 6, Galveston Division Rules of Practice (amended as of February 21, 2023 to provide 21 days for amendment); *see* ROA.59; ROA.69 (citing to Galveston Division Rules of Practice issued April 8, 2020).

[64] ROA.59.

Diamond's counsel on November 4, 2021 and informed counsel by letter date November 5, 2021 of its right under Local Rule 6 to amend its complaint within 14 days.[65] Diamond did not exercise its right to amend its complaint under Local Rule 6.

### C. Diamond could have Amended its Complaint within 21 days of service of RLB's and Travelers' Rule 12(b)(6) Motions.

RLB filed its Rule 12(b)(6) Motion to Dismiss on December 3, 2021 and certified that RLB complied with Local Rule 6 and that Diamond did not timely amend its complaint.[66] RLB argued that Diamond's Miller Act claim should be dismissed because "Diamond's Complaint was required to contain pleadings on how it provided the required notice under the Miller Act" but was wholly devoid of any such pleading.[67] Service of RLB's Rule 12(b)(6) motion gave Diamond another 21-day period within which to amend its complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).

On January 21, 2022, Travelers filed its Rule 12(b)(6) Motion to Dismiss adopting the arguments in RLB's Motion to Dismiss. Travelers certified that

> on November 5, 2021, [undersigned counsel] sent a written letter to Plaintiff's Counsel, Harry E. Morse, via email, in accordance with Galveston District Court Rule of Practice 6 to confer with regard to the

---

[65] ROA.69.
[66] ROA.126.
[67] ROA.120-121.

foregoing Motion to Dismiss. Per Galveston District Court Rule of Practice 6, Plaintiff had 14 days from the letter to amend its complaint. The deadline to amend its Complaint has passed and Plaintiff did not amend its complaint.[68]

Travelers' motion provided Diamond with yet another opportunity to amend its complaint under Fed. R. Civ. P. 15(a)(1)(B), but Diamond failed to do so.

### D. **Diamond Allowed the Deadline to Amend the Pleadings Expire without Seeking to Amend its Complaint to Plead Notice under the Miller Act.**

On January 19, 2022, the District Court entered its Docket Control Order, allowing the parties to amend pleadings until February 4, 2022.[69] The Docket Control Order provided: "After the expiration of this deadline, a party seeking to amend a pleading must file a motion for leave demonstrating both good cause and excusable neglect in accordance with Fed. R. Civ. P. 6(b)(1)(B)."[70] Once again, Diamond failed to amend its pleadings to include allegations regarding Miller Act notice.

Diamond did not seek leave to amend its Complaint before the lapse of the February 4, 2022 deadline for amendments established by the District Court's Docket Control Order.[71] After the lapse of the deadline, on February 7, 2022,

---

[68] ROA.281.
[69] ROA.272.
[70] ROA.272.
[71] ROA.272.

Diamond filed a Motion for Leave to File First Amended Complaint to designate its Complaint as an admiralty claim pursuant to Fed. R. Civ. P. 9(h). Diamond claimed excusable neglect because e-filing was unavailable on Friday, February 4, 2022 and good cause because the admiralty designation was "unrelated to the subject matter of the pending motions" and nothing would be prejudiced by the amendment. The District Court granted Diamond's Motion for Leave and the First Amended Complaint was filed in the District Court record on May 13, 2022, but it did not address the deficiency in Diamond's pleading of its Miller Act claim.

### E. **In Ruling on the Rule 12(b)(6) Motions, the District Court Ordered Diamond to Amend its Complaint within 14-days, but Diamond Failed to do so.**

On November 14, 2022, the District Court entered a Memorandum Opinion and Order on Travelers' and RLB's Motions to Dismiss and RLB's Motion to Strike Diamond's Response to Travelers' Motion to Dismiss.[72] The District Court granted in part and denied in part RLB's Motion to Dismiss such that Diamond's quantum meruit claims against RLB survived, while the remainder of its claims were dismissed.[73] Regarding Travelers' Motion to Dismiss, the District Court found that while Diamond's Complaint did not allege that Miller Act notice was provided, its

---

[72] ROA.1649.
[73] ROA.1649.

response to Travelers' Motion to Dismiss did so allege.[74] Accordingly, the District Court denied Travelers' Motion to Dismiss, but found that "Diamond must further amend its complaint to properly state it complied with all conditions precedents as required by the Miller Act."[75] Accordingly, "the court order[ed] that Diamond must amend its complaint to incorporate allegations that it gave proper Miller Act notice pursuant to 40 U.S.C. § 3133(b)(2). Diamond must file its amended complaint within 14 days from the date of this order."[76] Thus, the District Court provided Diamond with another opportunity to amend its complaint out of time to allow Diamond to remedy a deficiency in its pleadings that it had failed to correct despite having been on notice of the deficiency for over a year.

Still, Diamond failed to amend its pleadings within the District Court's 14-day deadline, which expired on November 28, 2022. A week after the expiration of the deadline, Travelers filed its Rule 12(c) Motion for Judgment on the Pleadings seeking a judgment dismissing Diamond's Miller Act claims with prejudice because Diamond failed to allege that it satisfied the procedural and substantive notice

---

[74] ROA.1649.

[75] ROA.1649.

[76] ROA.1649.

requirements under the Miller Act.[77] The following day, Diamond improperly filed its Second Superseding and Amended Complaint without leave of court.[78]

Two days later, Travelers responded by filing its Motion to Strike Second Superseding and Amended Complaint arguing that the complaint should be stricken because the amended complaint would prejudice the parties and Diamond did not comply with Rule 15, the District Court's deadline for filing its amended complaint, the Docket Control Order, or Rule 6.[79] Shortly thereafter, RLB filed its Motion to Strike and Answer to the Second Superseding and Amended Complaint.[80]

### F.  **The District Court Granted the Motions to Strike the Late-Filed and Futile Amendment.**

On February 14, 2023, the District Court entered a Memorandum Order and Opinion granting the motions to strike and granting summary judgment to RLB and Harbor regarding Diamond's remaining claims.[81] Because the District Court had granted RLB summary judgment on Diamond's Miller Act claims for other reasons,

---

[77] ROA.1678.

[78] ROA.1685; *see* Rule 5(i), Galveston Division Rules of Practice; Fed. R. Civ. P. 15(a); *Klein v. Marvin Lumber & Cedar Co.*, 575 Fed. App'x 347, 349-50 (5th Cir. 2014) (district court did not abuse its discretion in striking late-filed complaint where no leave of court was obtained before filing).

[79] ROA.1699.

[80] ROA.1739.

[81] ROA.1873.

it denied Travelers' Rule 12(c) Motion for Judgment on the Pleadings as moot.[82]

Granting the Motions to Strike, the District Court explained that it had "authorized

Diamond to file an amended pleading for one purpose: to cure deficiencies in

pleading notice of its Miller Act claim."[83] Because it found RLB entitled to summary

judgment on the Miller Act claims for different reasons, the court found that the

attempted amendment no longer served any purpose.[84] The District Court further

reasoned that the late-filed amended complaint was not accompanied by a motion

for leave to file as required by Galveston District Court Rule of Practice 5(i) and

Fed. R. Civ. P. 15(a).[85] The District Court cited *Klein v. Marvin Lumber & Cedar

Co.*[86] for the holding that a district court did not abuse its discretion in striking an

untimely complaint filed without leave of court where no prejudice would result

from the court striking the complaint.

---

[82] ROA.1891.
[83] ROA.1891.
[84] ROA.1891.
[85] ROA.1891.
[86] 575 Fed. App'x 347, 350.

## G. **The District Court did not Abuse its Discretion in Granting the Motions to Strike, and this Court should Affirm.**

This Court reviews a motion to strike for abuse of discretion.[87] On multiple occasions, this Court has sanctioned a district court's decision to strike a late-filed complaint filed without leave of court. In *Brown v. Alixa-RX*,[88] the Court held that a district court did not abuse its discretion when it struck plaintiff's second amended complaint which was filed after the expiration of the deadline for amending pleadings and while plaintiff's motion for an extension of time to file an amended pleading was pending.

In *SGK Properties, L.L.C. v. U.S. Bank Nat. Ass'n for Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3*,[89] the Court found that a district court properly struck certain additional claims plaintiffs asserted in response to defendant's counterclaim, which effectively served as an attempt to amend their complaint.[90] Plaintiffs did not comply with the procedure set out in Fed. R. Civ. P. 15(a)(2) to amend their complaint, and the district court

---

[87] *Brown v. Alixa-RX*, No. 22-40160, 2022 WL 4594188, at *2 (5th Cir. Sept. 30, 2022); *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

[88] 2022 WL 4594188, at *3.

[89] 881 F.3d 933, 944 (5th Cir. 2018).

[90] *Id.*

properly granted defendant's motion to strike.[91] Plaintiffs then sought leave to amend their complaint to add the stricken claims, which was denied. While the district court did not give reasons for the denial, the court found that the justification for the denial was readily apparent because the amendment of the pleadings would have been futile because the court had already granted summary judgment that would resolve those claims.[92] The district court did not abuse its discretion in disallowing the amendment.[93]

In *Klein v. Marvin Lumber & Cedar Co.*,[94] an untimely amended complaint was filed without leave more than 21 days after the filing of the original pleading, but within the deadline for amending pleadings set forth in the scheduling order.[95] This Court found that the district court acted within its discretion in striking the amended complaint for failure to comply with Fed. R. Civ. P. 15 and that the plaintiff was in no way prejudiced by the striking of the amended complaint, which contained exactly the same causes of action as his previous complaint.[96] The Court found that the additional facts alleged in the amended complaint were unhelpful in the context

---

[91] *Id.*

[92] *Id.* at 945.

[93] *Id.*

[94] 575 Fed. App'x 347, 349-50 (5th Cir. 2014).

[95] *Id.* at 350.

[96] *Id.*

25

of summary judgment because, even accepted as true, the additional alleged facts did not defeat the defendant's motion for summary judgment.[97]

Here, Diamond's amended complaint was filed without leave of court more than 21 days after its original complaint, long after the February 4, 2022 deadline for amending pleadings set forth in the Docket Control Order, and after the expiration of an additional period the District Court granted Diamond to amend its complaint. Diamond did not file a motion for leave to file or a motion for extension of time to file. As in *SGK* and *Klein*, the additional facts alleged in Diamond's Second Superseding and Amended Complaint as to notice under the Miller Act are unhelpful in the context of summary judgment because even if Diamond were allowed to amend its complaint to plead notice under the Miller Act, its Miller Act claims still would not survive summary judgment.[98] Thus, Diamond suffered no prejudice as a result of the striking of its Second Superseding and Amended Complaint.

The District Court acted within its discretion when it granted the motions to strike Diamond's untimely Second Superseding and Amended Complaint filed without leave of court and without consent of the opposing parties.

---

[97] *Id.*

[98] *Id.*

## **CONCLUSION**

Diamond was put on notice of its failure to satisfy the pleading requirements for its Miller Act claims in October 2021. Diamond had ample opportunity to amend its Complaint to plead that it provided the requisite notice. On November 14, 2022, the District Court finally ordered Diamond to amend its Complaint to allege notice within 14 days. Diamond still failed to amend within this 14-day period. Diamond did not attempt to amend its complaint until after the expiration of its 14-day deadline when Travelers filed a Rule 12(c) Motion for Judgment on the Pleadings. Diamond filed its untimely Second Superseding and Amended Complaint without seeking leave of court to file. The District Court struck Diamond's late-filed amendment because it was filed without leave and because the amendment would serve no purpose. The District Court granted summary judgment to RLB on Diamond's Miller Act claims for other reasons, and Diamond did not suffer prejudice from the striking of the amendment.

Respectfully submitted this the 22nd day of May, 2023.

/s/ *Elliot Scharfenberg*
Elliot Scharfenberg (La. Bar No. 35304)
SDTX No. 3063969
J. Megan Daily (La. Bar No. 37650)
KREBS FARLEY, P.L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582
Email: escharfenberg@krebsfarley.com
        mdaily@krebsfarley.com

Attorneys for Travelers Casualty and Surety
Company of America

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief has been filed with the Clerk of the Court using the ECF system, which will send notification to all registered users, including the opposing party's attorney.

/s/ *Elliot Scharfenberg*

## **CERTIFICATE OF COMPLIANCE**

1.    This document complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.1:

> This brief contains 6,497 words,

2.    This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

> This document has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman, Font Size 14.

> /s/ *Elliot Scharfenberg*
> Elliot Scharfenberg
> Attorney for Travelers Casualty and Surety
> Company of America
> Dated: May 22, 2023

29