**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

Case No. 23-40137

Diamond Services Corporation,

Plaintiff – Appellant

v.

RLB Contracting, Inc., Harbor Dredging, Inc., and
Travelers Casualty and Surety Company of America,

Defendants – Appellees

On Appeal from the
United States District Court for the Southern District of Texas, Galveston Division
(3:21-CV-00253-JVB)

## BRIEF OF APPELLEE RLB CONTRACTING, INC.

Submitted by:
Mark C. Guthrie
Federal ID No. 6213
mguthrie@winstead.com
Cody N. Schneider
Federal ID No. 2228631
cschneider@winstead.com
John T. Wooldridge, Jr.
Federal ID No. 3669002
jwooldridge@winstead.com
**WINSTEAD PC**
600 Travis Street, Suite 5200
Houston, Texas 77002
Telephone (713) 650-8400
**COUNSEL FOR APPELLEE**
**RLB CONTRACTING, INC.**

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 28.2.1 of the Fifth Circuit, Appellee certifies as follows:

1.    Appellee RLB Contracting, Inc. ("RLB") is a privately held corporation, RLB has no parent corporation, and no publicly traded company owns 10% or more of the stock of RLB.

2.    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

  a. Diamond Services Corporation ("Diamond") – Appellant,

  b. RLB Contracting, Inc. ("RLB") – Appellee,

  c. Harbor Dredging, Inc. ("Harbor") – Appellee,

  d. Travelers Casualty and Surety Company of America ("Travelers") – Appellee,

  e. Harry Morse and Martin Bohman of Bohman Morse, L.L.C. – Diamond's counsel,

  f. Mark C. Guthrie, Cody N. Schneider, and John T. Wooldridge, Jr. of Winstead PC – RLB's counsel,

  g. Christopher Solop of Biggs, Ingram & Solop, P.L.L.C. – Harbor's counsel, and

  h. Elliot Scharfenberg, J. Megan Daily, and Steven K. Cannon of Krebs Farley & Dry, PLLC – Travelers' counsel.

*/s/ Mark C. Guthrie*
Mark C. Guthrie
Attorney for Appellee RLB Contracting,
Inc.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

RLB believes that the law, arguments, and record are sufficiently clear that an oral argument will not significantly aid the Court in its review of the District Court's summary judgment and dismissal orders. However, if the Court grants oral argument, RLB requests to be heard.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS .................................................................................. v

TABLE OF AUTHORITIES ........................................................................... viii

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUES..........................................................................2

STATEMENT OF THE CASE..............................................................................4

   A.    Undisputed Facts.................................................................................4

   B.    Contractual Terms for the Project.....................................................5

   C.    RLB's Request for Equitable Adjustment. ........................................6

   D.    Settlement of Amended REA..............................................................7

   E.    Underlying Dispute and Appeal.........................................................9

SUMMARY OF THE ARGUMENT ...................................................................13

ARGUMENT AND AUTHORITIES..................................................................18

   A.    Standard of Review ..........................................................................18

   B.    Diamond's appeal concerning the tug expenses is untimely and lacks merit. ..............................................................................................19

      1.    Diamond failed to timely appeal the ruling regarding tug expenses and the Court lacks jurisdiction to consider this issue. ..................................19

      2.    The District Court properly dismissed Diamond's tug expenses claim. 20

   C.    Diamond failed to establish this Court has jurisdiction for its appeal of the quantum meruit and Miller Act claims. ....................................23

D.    The District Court rightfully granted summary judgment on Diamond's
      claim against RLB for equitable-adjustment expenses under a theory of
      quantum meruit. ........................................................................................27

  1.    Diamond submitted no summary judgment evidence or argument in
        support of its quantum meruit claim. ........................................................27

  2.    Diamond's failure to present evidence or assert arguments in support of
        its alleged quantum meruit damages in the District Court waived its
        right to do so now on appeal. ....................................................................28

  3.    Diamond's new arguments and purported evidence do not support a
        reversal of the District Court's summary judgment order against its
        quantum meruit claims against RLB. ........................................................29

  4.    The quantum meruit cases cited by Diamond have no bearing on the
        District Court's summary judgment decision. ..........................................35

  5.    Diamond's certified costs letter, the payments it received, and
        Diamond's own accounting records show its quantum meruit claims fail
        as a matter of law. ....................................................................................43

E.    RLB and Travelers were entitled to summary judgment on Diamond's
      Miller Act Claims. ......................................................................................47

  1.    Diamond's alleged damages exceeded the permissible scope under the
        Miller Act and Diamond cannot, and did not, dispute this reality. ........48

  2.    The District Court acted within its discretion to strike Diamond's
        untimely Miller Act notice pleadings and regardless, the evidence shows
        Diamond failed to provide proper notice. ................................................50

  3.    Diamond's appeal of the District Court's finding that it is a second-tier
        subcontractor, not a first-tier subcontractor, is untimely and is also not
        support of the evidence. ............................................................................54

F.    Diamond failed to challenge the District Court's summary judgment order
      as to RLB's counterclaims on this appeal. ................................................55

CONCLUSION ......................................................................................................55

CERTIFICATE OF SERVICE ..............................................................................57

CERTIFICATE OF COMPLIANCE.........................................................................57

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................20

*Bashara v. Baptist Mem'l Hosp. Sys.*,
    685 S.W.2d 307 (Tex. 1985) .......................................................43

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................20

*Broad. Music, Inc. v. Bentley*,
    No. SA-16-CV-394-XR, 2017 WL 782932 (W.D. Tex. Feb. 28,
    2017) .............................................................................................47

*Christus Health v. Quality Infusion Care, Inc.*,
    359 S.W.3d 719 (Tex. App.—Houston [1st Dist.] 2011, no pet.).....................30

*City of Houston v. RF Ball Const. Co.*,
    570 S.W.2d 75 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ
    ref'd n.r.e.) ...................................................................................43

*FDIC v. Mijalis*,
    15 F.3d 1314 (5th Cir. 1994) .......................................................28

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994) ................................................18, 29

*Hill v. Shamoun & Norman, LLP*,
    544 S.W.3d 724 (Tex. 2018) ................................................*passim*

*Keelan v. Majesco Software, Inc.*,
    407 F.3d 332 (5th Cir. 2005) ................................................18, 28

*Kinsley v. Lakeview Reg'l Med. Ctr. LLC*,
    570 F.3d 586 (5th Cir. 2009) .......................................................19

*Millgard Corp. v. McKee/Mays*,
    49 F.3d 1070 (5th Cir. 1995) ................................................................43

*National Shipping Company of Saudi Arabia v. Valero Marketing and*
    *Supply Company*,
    963 F.3d 479 (5th Cir. 2020) ................................................................24

*PIC Realty Corp. v. Southfield Farms, Inc.*,
    832 S.W.2d 610 (Tex. App.—Corpus Christi–Edinburg 1992, no
    writ) .....................................................................................................31

*Poincon v. Offshore Marine Contractors, Inc.*,
    9 F.4th 289 (5th Cir. 2021) ..................................................................25

*PYCA Industries v. Harrison County*,
    177 F.3d 351 (5th Cir. 1999) ................................................................43

*SCF Waxler Marine, L.L.C. v. ARIS T M/V*,
    902 F.3d 461 (5th Cir. 2018) ................................................................23

*Stoot* v. *Fluor Drilling Services, Inc.*,
    851 F.2d 1514 (5th Cir. 1988) ........................................................19, 54

*Tiblier v. Dlabal*,
    743 F.3d 1004 (5th Cir. 2014) ..............................................................18

*Topalian v. Ehrman*,
    954 F.2d 1125 (5th Cir. 1992) ........................................................18, 51

*U.S. v. Millers Mut. Fire Ins. Co.*,
    942 F.2d 946 (5th Cir. 1991) ................................................................48

*Woodard v. Sw. States, Inc.*,
    384 S.W.2d 674 (Tex. 1964) ................................................................30

## Other Authorities

28 U.S.C. § 2107(a) .....................................................................................19, 54

40 U.S.C. § 3133(b)(1)...............................................................................24, 53

40 U.S.C. § 3133(b)(2)...............................................................................52, 53

Fᴇᴅ. R. Aᴘᴘ. P. 4..............................................................................................54

FED. R. APP. P. 4(a) .................................................................... 19

FED. R. CIV. P. 15(a) ................................................................... 52

FED. R. CIV. P. 56(c)(3) ............................................................. 29

FED. R. CIV. P. 9(h) ................................................................... 26

FED. R. CIV. P. 12(b)(6) ................................................. 10, 20, 22

FED. R. CIV. P. 15 ............................................................... 11, 52

FED. R. CIV. P. 54(b) ............................................................ 2, 25

FED. R. CIV. P. 56 ...................................................................... 29

## **JURISDICTIONAL STATEMENT**

Diamond asserts this Court has jurisdiction over this interlocutory appeal under 28 U.S.C. 1292(a)(3).  Outside of this conclusory statement, Diamond failed to provide any further support appellate jurisdiction.  As detailed below, RLB challenges jurisdiction for this appeal.

## **STATEMENT OF THE ISSUES**

The following issues are presented for review:

1.    Whether Diamond's failure to timely appeal the District Court's November 14, 2022 Order within the mandatory and jurisdictional deadline of 30 days after the entry of that order precludes Diamond from appealing the dismissal of its tug expenses claim (or any other claims dismissed by that order) and if not, whether the District Court properly found that Diamond's tug expenses claim against RLB failed to state a claim upon which relief could be granted because Diamond was obligated to furnish this vessel as part of the scope of work of the sub-subcontract between Diamond and Harbor.

2.    Whether Diamond failed to establish this Court has jurisdiction to hear its interlocutory appeal of the District Court's February 14, 2023 Order dismissing Diamond's quantum meruit and Miller Act claims in which Diamond seeks additional proceeds of the amended request for equitable adjustment because Diamond has admitted that such claims do not give rise to admiralty jurisdiction and because Diamond failed to seek and obtain a Federal Rule of Civil Procedure 54(b) certification from the District Court.

3.  Whether Diamond can assert for the first time on appeal of a summary judgment ruling arguments and alleged evidence in support of its purported damages in connection with its quantum meruit claim against RLB that Diamond did not specifically offer or identify as alleged support in its summary judgment response with the District Court and if so, whether such arguments and alleged evidence can support a claim for quantum meruit under Texas law.

4.  Whether the District Court acted within its discretion to dispose of Diamond's Miller Act claims because Diamond's alleged damages for this claim exceed the permissible scope of damages recoverable under the Miller Act and because Diamond failed to timely amend its complaint to include proper Miller Act notice pleadings as previously ordered by the District Court.

## STATEMENT OF THE CASE

### A.   Undisputed Facts.

The following undisputed facts were unchallenged by Diamond and correctly adopted by the District Court:

a. RLB was the prime contractor for the United States Army Corps of Engineers ("Corps") under Contract No. W912HY19C0015 ("Prime Contract") on a project that involved dredging work in the Houston Ship Channel between Brady Island and the Houston Ship Channel Turning Basin, wholly within Texas ("Project"). ROA.592-740, 1874. Diamond was not a party to or a third-party beneficiary of the Prime Contract. ROA.875,1657.

b. As part of its obligations under the Prime Contract, RLB provided a Miller Act payment bond obtained from Travelers. ROA.742–47, 1874.

c. RLB entered into a subcontract with Harbor ("Subcontract") for Harbor to perform certain portions of RLB's scope of work on the Project. ROA.748-750, 1874.

d. Harbor entered into a sub-subcontract with Diamond ("Sub-Subcontract") to perform portions of Harbor's work on the Project. ROA.752-754, 1874.   RLB was not a party to or a third-party beneficiary of the Sub-Subcontract. ROA.1657–58.

e. There was no written or oral agreement between RLB and Diamond. ROA.1655, 1889.

f. During the performance on Project, the parties encountered an unanticipated differing site condition in the area where Diamond's dredge was excavating material. ROA.1874.

g. After the Project was completed, RLB submitted to the Corps an amended Request for Equitable Adjustment ("Amended REA") of the Prime Contract. ROA.762-65, *see also* ROA.1875.

h. RLB's Amended REA included Harbor's total certified costs for the entire Project, which included Diamond's total certified costs for the

entire Project (including Diamond's direct costs, overhead and profit). ROA.403–04, 405–07, 762-65, 899-900, 1876

i.     Diamond was paid in full for its work under the Sub-Subcontract plus an additional $950,000 it agreed to accept out of the proceeds of the settlement of the Amended REA. ROA.554-555, 867, 886, 924.

j.     Diamond's total receipts on the Project substantially exceed both: (i) Diamond's costs as reflected in its own job cost report, and (ii) the total certified costs, including overhead and profit, Diamond submitted for the Amended REA. ROA.405-07 (Diamond's Certified Costs Letter), 459–71 (Harbor's Checks to Diamond), 555-56, *see also* ROA.767 (Joint Check), 805–06 (Diamond's Job Cost Report reflecting its Project revenue at $3,548,838, costs at $1,789,404.49, and profit at $1,759,433.51).

Based on these uncontested facts alone, the District Court's February 14, 2023 Order should be affirmed. However, if this Court chooses to look beyond the above-mentioned facts, RLB offers the following additional relevant facts to further expand upon the matters Diamond misconstrued in its appellate brief.

**B.     Contractual Terms for the Project.**

RLB's Prime Contract encompassed a great deal more than simply dredging material at the Project, including but not limited to the transport, offloading and disposal of dredged material miles away from the dredging location and disposal of material unsuitable to be disposed in dredge spoil disposal area. ROA.592–740. Diamond and Harbor's Sub-Subcontract was limited to dredging material. ROA.752–54. As part of its obligations under the Sub-Subcontract, Diamond was "responsible for traversing the hopper barges from excavation site to the unloading

site" and Diamond was required to perform, among others, "all work necessary or incidental to complete" its work on the Project. ROA.752.

### C. RLB's Request for Equitable Adjustment.

Due to the unanticipated differing site condition, on October 26, 2020, RLB submitted an initial Request for Equitable Adjustment of the Prime Contract ("Initial REA"). ROA.756–60. The Initial REA was withdrawn by RLB, not "rejected," because the Corps instructed RLB that if it moved forward with the Initial REA the Corps would not entertain future requests for equitable adjustment for costs not included in the Initial REA based on the same conditions during the remainder of the Project and it would require RLB to release its claims for all differing site conditions at the Project. ROA.898.

After the Project was completed, RLB submitted the Amended REA covering the entire Project. ROA.762–66. In preparation for submitting the Amended REA, RLB requested that Harbor certify its total costs for the Project for inclusion in RLB's subcontractor costs in the Amended REA. ROA.899–900. Harbor, and not RLB, then requested that Diamond do the same for inclusion in Harbor's subcontractor costs. Diamond submitted to Harbor its total certified costs for the Project, including overhead and profit, in the amount of $2,362,344. ROA.405–07.

After receiving the total certified costs, RLB submitted the Amended REA to the Corps. ROA.762–65, 899–900. Starting with RLB's total Project costs, RLB

calculated its additional costs due to the differing site conditions using a measured mile methodology that resulted in a calculation of costs expended, plus overhead and profit thereon, as a result of the inefficiency and loss of productivity due to the differing site conditions. ROA.762–65.

The REA process, based on the measured mile calculation, is a method by which the Corps compensates the party whom it contracted for costs caused by the differing site conditions. The Corps does not compensate "everyone for the delay" and certainly does not just compensate a party with whom it did not contract with. Moreover, the calculation identifies inefficiently expended costs of performance, and not delay costs. Accordingly, in the event the Corps approves payment on a REA, the Corps is not responsible for "everyone's" compensation on the Project, instead it was responsible only for compensating the prime contractor, here RLB, as the only party the Corps contracted with. Then RLB would compensate Harbor as its subcontractor and then Harbor would compensate Diamond as its sub-subcontractor.

**D.    Settlement of Amended REA.**

RLB negotiated a settlement of the Amended REA with the Corps which reduced the amount to $6,000,000. ROA.1189. Prior to negotiating this settlement of the Amended REA with the Corps, RLB's principal, Randy Boyd, asked Harbor's principal, Roland Maturin, to advise him as to what amount Harbor would accept to

settle any claims to the proceeds of the Amended REA, so that Mr. Boyd would know what negotiating room RLB had with the Corps. ROA.899, 1190, ROA 1876. In turn, Mr. Maturin spoke with Diamond's Vice President of Operations, Jim Furlette, and asked the same question. ROA.1200. The parties never "acknowledged" that they would "split" the Amended REA. ROA.973. Instead, Mr. Furlette represented to and agreed with Mr. Maturin that Diamond would accept $950,000 in satisfaction of Diamond's claim for the settlement of the Amended REA. ROA.519, 885, 893. Further, Mr. Furlette understood that Mr. Maturin would inform RLB of Diamond's representation and agreement to accept $950,000. ROA.893.

Mr. Furlette also confirmed with Diamond's Executive Vice President, Stephen Swiber, that $950,000 was an acceptable number for Diamond's claim for the settlement of the Amended REA. ROA.885–86, 1160.  Mr. Swiber also knew that Mr. Furlette would pass Diamond's $950,000 settlement offer to Harbor and then to RLB. ROA.1168. Based on Mr. Furlette's representations to, and agreement with, Mr. Maturin that Diamond would accept $950,000, Mr. Maturin reported to Mr. Boyd that Harbor would accept $1,450,000 in total satisfaction of Harbor's rights to the proceeds of settlement of the Amended REA, with Harbor retaining $500,000 and disbursing $950,000 to Diamond. ROA.901, 972–93, 867, 886, 910.

RLB relied on these representations in the negotiations with the Corps to ultimately reach a settlement of the Amended REA. ROA.1877, 1189–91.

After receiving the Amended REA settlement payment, RLB paid Harbor the $500,000 it agreed to accept and RLB and Harbor tendered to Diamond a joint check payable jointly to Harbor and Diamond in the $950,000—and Diamond ultimately accepted and deposited that check. ROA.767–69, 973, 1163, 1175-76, 1877. Thus, in addition to Harbor paying Diamond the full amount under the Sub-Subcontract, Diamond was paid in satisfaction of its claims for a share of RLB's settlement of the Amended REA according to the mutual agreement among the parties, though Diamond now disputes this. ROA.767–69, 844–55, 867, 886, 910–11, 973.

### E.    Underlying Dispute and Appeal.

Despite Diamond being fully paid all amounts due under the Sub-Subcontract, and its representation that it would accept, and subsequently did accept, $950,000 from the proceeds of settlement of the Amended REA, Diamond greedily claimed that it was owed more money. Accordingly, Diamond filed its Original Complaint to start the underlying lawsuit ("Lawsuit") and asserted claims for breach of contract, implied contract, and quasi-contract against Harbor and RLB, request for quantum meruit/unjust enrichment damages against RLB, and a claim under the Miller Act against RLB and Travelers. ROA.15–17.

On December 3, 2021, RLB filed its motion to dismiss Diamond's Original Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted ("RLB's Motion to Dismiss"), which Diamond responded to, and RLB filed a reply in support of. ROA.97–126, 176–193, 196–211. Travelers also filed a motion to dismiss under Rule 12(b)(6) ("Travelers' Motion to Dismiss) which Diamond also responded to. ROA.278–281, 296–301, *see also* ROA.304–312, 338–50.

On September 19, 2022, Harbor filed its motion for summary judgment against Diamond's claims ("Harbor's Motion for Summary Judgment"), which Diamond responded to and Harbor filed a reply in support of. ROA.370–518, 1303–1452, 1575–87. On September 29, 2022, RLB filed a motion for summary judgment against Diamond's claims ("RLB Motion for Summary Judgment Against Diamond's Claims") and a motion for summary judgment on RLB's counterclaims ("RLB Motion for Summary Judgment on Its Counterclaims") (collectively referred to as RLB's Motions for Summary Judgment"). ROA.554–938, 939–1302. Despite being two separate motions, Diamond responded to RLB's Motions for Summary Judgment in a single response and thus, RLB filed a single reply in support of RLB's Motions for Summary Judgment. ROA.1459–1574, 1599–1644.

On November 14, 2022, the District Court issued its Order granting in-part and denying in-part RLB's Motion to Dismiss which dismissed with prejudice all of

Diamond's claims against RLB except for "Diamond's claims against RLB for equitable-adjustment expenses under a theory of quantum meruit" and Diamond's Miller Act claims but ordered  Diamond to "file its amended complaint within 14 days for the date of the order" to incorporate allegations that it gave proper Miller Act notice ("November 14th Order"). ROA.1676. However, Diamond disregarded the November 14th Order and filed its Second Amended Complaint late ("Diamond's Untimely Second Amended Complaint") and also failed to motion for leave for this late filing as required by Federal Rule of Civil Procedure 15 and the District Court's local rules. ROA.1685, ROA.1678–84.  Travelers and RLB filed separate motions to strike Diamond's Untimely Second Amended Complaint as well as separate replies in support of their motions. ROA.1699–705, 1740–42, 1799–804, 1833–38.

On February 14, 2023, the District Court granted Harbor's Motion for Summary Judgment, granted RLB's Motion for Summary Judgment Against Diamond's Claims, granted in-part and denied in-part RLB's Motion for Summary Judgment on Its Counterclaims, and granted Travelers and RLB's motions to strike Diamond's Untimely Second Amended Complaint ("February 14th Order"). ROA.1873, 1892. The February 14th Order disposed of all of Diamond's remaining claims against Harbor, RLB and Travelers that had not been dismissed by the November 14th Order.  Diamond filed its notice of appeal on February 28, 2023,

only expressly referencing the February 14th Order, and then filed its appellate brief on April 21, 2023, seeking to appeal portions of both the November 14th Order and February 14th Order.

## SUMMARY OF THE ARGUMENT

Similar to its filings in the District Court, Diamond's appellate brief attempts to disguise fundamental flaws with overexaggerated or misrepresented factual assertions in an attempt to avoid the reality that its claims have failed either as a matter of law or due to Diamond's own missteps.

First, Diamond's interlocutory appeal, if any, must be limited to the claims disposed of by the February 14th Order because Diamond failed to timely appeal the November 14th Order within 30 days after that order was entered. Because this timing requirement is mandatory and jurisdictional, this Court lacks jurisdiction to hear claims dismissed by the November 14th Order. Accordingly, Diamond's attempted appeal of the District Court's dismissal of the tug expenses claims, and any other claims dismissed under the November 14th Order, cannot succeed.

Even if this Court could entertain Diamond's appeal of its dismissed tug expenses claims it would be futile. This is because the District Court properly determined that Diamond's tug expenses claims fail to state a claim upon which relief can be granted because Diamond's own pleadings, and the Sub-Subcontract it included with its complaint, plainly show such work was within the scope of an express contract and thus, quantum-meruit was unavailable as a matter of law. The District Court also determined that there were no oral or written agreements between RLB and Diamond.

Diamond also has failed to meet its burden of establishing this Court's jurisdiction for an interlocutory appeal of the quantum meruit and Miller Act claims disposed of by the February 14th Order. Diamond single, conclusory statement that this Court has jurisdiction under 28 U.S.C. § 1292(a)(3) is not sufficient to satisfy its burden to establish appellate jurisdiction. Diamond's own filings confirm the lack of jurisdiction for its interlocutory appeal here because Diamond has expressly asserted that such quantum meruit and Miller Act claims do not give rise to admiralty jurisdiction. Accordingly, Diamond cannot rely on 28 U.S.C. § 1292(a)(3) to appeal these non-admiralty claims.

Even if this Court had jurisdiction to consider the interlocutory appeal of Diamond's quantum meruit and Miller Act claims, Diamond cannot show the February 14th Order disposing of these claims should be reversed. First, Diamond did not submit any summary judgment evidence or arguments to the District Court to specifically support its quantum meruit claims against RLB in its Response to RLB's Motions for Summary Judgment. Specifically, Diamond failed to submit evidence to demonstrate the reasonable value of the work it performed for which it had not already been paid—Diamond did not even expressly mention or reference its quantum meruit claims in its Response to RLB's Motions for Summary Judgment. Accordingly, Diamond's attempts to now present evidence or arguments in support of its alleged quantum meruit damages are flawed because Diamond

waived the right to assert these arguments and present such evidence for the first time on appeal.

Even if this Court were to consider the new evidence and arguments, such "support" nevertheless fails to demonstrate the damages Diamond seeks to recover under its quantum meruit claims are based on the proper measure damages for quantum meruit under controlling Texas law. Instead, Diamond attempts to directly rely on the "underlying contract," 'contract price," and a unit price ratio for its damage model for this equitable claim. Moreover, Diamond cannot present any evidence of reasonable value of the work for which it has not already been paid because the undisputed evidence shows Diamond was not only paid in-full for any costs on the Project but also recovered its overhead and made a substantial profit. Similarly, the cases Diamond cites in its brief do not salvage Diamond's claims here because they support affirming the February 14th Order, as explained in detail below.

Lastly, this Court should affirm the February 14th Order disposing of Diamond's Miller Act claims against RLB and Travelers because: (1) Diamond's alleged damages under this claim are not recoverable as a matter of law under the Miller Act, and (2) Diamond, despite being ordered to do so by the November 14th Order, failed to timely amend its complaint to properly plead it complied with the Miller Act notice requirements.

Just as with its quantum meruit claim, Diamond failed to present any evidence to the District Court to show that purported damages it allegedly suffered were recoverable under the Miller Act and the alleged support Diamond offers on this appeal now likewise fails to do so. While the REA based on a measured mile compensates a prime contractor for costs that were inefficiently incurred, *i.e.* loss of productivity damages due to a differing site condition, it is not a calculation of damages due solely to delay—it also includes profit. As a matter of well-settled law, Diamond cannot recover damages for loss of efficiency or lost profits under the Miller Act. Diamond also failed to present here or in the District Court any delay damage it suffered for which it did not bear responsibility and for which it has not already been compensated.

The District Court acted within its discretion to strike Diamond's untimely Miller Act notice pleadings because Diamond disregarded the clear and unambiguous November 14th Order to amend its pleadings and failed to request leave to file its untimely complaint as required by the Federal Rules of Civil Procedure and the Court's local rules. Although Diamond attempts to distract away from these truths by asserting untimely arguments against the November 14th Order, which found Diamond was a second-tier subcontractor and thus needed to show it satisfied the Miller Act's notice requirements, such matters were the not the reason for District Court's February 14th Order disposing of Diamond's Miller Act claims

and therefore, such arguments cannot serve as a valid basis for reversing it (and are also legally wrong).

## **ARGUMENT AND AUTHORITIES**

### A.    **Standard of Review**

"A grant of summary judgment is reviewed *de novo*, applying the same standard on appeal that is applied by the district court." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014). "When the movant has made a properly supported motion for summary judgment by demonstrating an absence of evidence to support the non-movants' case, . . . [then] the non-movants must 'go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Forsyth v. Barr*, 19 F.3d 1527, 1536–37 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

It is well settled in the Fifth Circuit that "the scope of appellate review on a summary judgment order is limited to matters presented to the district court [and 'i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir.2002)). As such, an appellate court's inquiry is limited to the summary judgment record before the trial court and thus, parties cannot add new evidence, advance new theories, or raise new issues to attempt to secure reversal. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 n. 10 (5th Cir. 1992).

**B.  Diamond's appeal concerning the tug expenses is untimely and lacks merit.**

"[N]o appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a), *see also* FED. R. OF APP. P. 4(a).  The same is true for cases in admiralty, including interlocutory appeals. *See Stoot* v. *Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988). "The filing of a timely notice of appeal, within thirty days after entry of the court's judgment, is mandatory and jurisdictional." *Kinsley v. Lakeview Reg'l Med. Ctr. LLC*, 570 F.3d 586, 588 (5th Cir. 2009).

  1.  Diamond failed to timely appeal the ruling regarding tug expenses and the Court lacks jurisdiction to consider this issue.

The November 14th Order granted in-part and denied in-part RLB's Motion to Dismiss and Diamond's claims for tug expenses against RLB were among the claims dismissed with order. ROA.1666–69. The deadline for appealing that ruling was December 14, 2022.  28 U.S.C. § 2107(a).  Diamond filed its Notice of Appeal on February 28, 2023 but it did not expressly mention the November 14th Order or the tug expenses claim. DN 1. Instead, Diamond only explicitly mentioned the February 14th Order. Diamond did not expressly mention  the tug expense claims or the November 14th Order until it filed its Appellate Brief on April 21, 2023. DN 32, p. 31–32.

As a result, this Court lacks jurisdiction to consider and should not consider any appeal by Diamond of the claims dismissed under the November 14th Order, including but not limited to Diamond's claim for tug expenses, because Diamond failed to timely appeal the ruling dismissing these claims.

2.    The District Court properly dismissed Diamond's tug expenses claim.

Even if Diamond timely appealed the November 14 Order dismissing its tug expenses claim that appeal would still fail. The standards for dismissing a claim under Rule 12(b)(6) are drastically different than that of a motion for summary judgment. A motion to dismiss for failure to state a claim only tests whether the plaintiff's complaint contains enough factual allegations that are sufficient to entitle a plaintiff to recovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Unlike a ruling on a motion for summary judgment, a ruling on a motion to dismiss does not constitute a decision on the truth of the allegations in a complaint or a decision on the merits of the claims of the complaint. *Compare Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *with Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

The District Court properly dismissed Diamond's tug expenses claims against RLB for failure to state a claim upon which relief could be granted because Diamond's pleadings, and the Sub-Subcontract included with its pleading, showed: (1) the Sub-Subcontract was not enforceable against RLB and thus any alleged oral modification of the Sub-Subcontract to spilt the cost of the tugboat was likewise not

enforceable against RLB, (2) the "plain reading of the [Sub-Subcontract] shows that Diamond had a preexisting obligation to furnish the equipment necessary to [perform the] work, including providing a tug in order to traverse the hopper barges", and (3) when work is contemplated within the scope of the contract, quantum-meruit recovery is unavailable. ROA.1666–68.

Notably, Diamond attempts to avoid this reality by claiming that although Diamond agreed under the Sub-Subcontract to transport barges, the tug M/V KERRILYNN was not there to transport barges on the job but instead to "move dredge" which allegedly was not referenced in the Sub-Subcontract. DN 32, p. 17–18. First, this position is counter to Diamond's pleadings, which stated "[t]he tug M/V MISS KERRILYNN performed its work in a good and workmanlike manner and it was indispensable to the job **by moving barges** for the removal of dredge spoil." ROA.22 (emphasis added). This pleading by Diamond is reinforced by testimony from Diamond's Executive Vice President, Stephen Swiber, stating that the KERRILYNN took over the "original duty" of the [M/V LADY LAFON] on the Project and that original duty was "[t]o **transverse the hopper barges** to the off-loading location." ROA.1357 (emphasis added).

Regardless, even if the tug M/V MISS KERRILYNN moved dredge instead of moving barges, and such work was somehow different as asserted by Diamond for the first time in this appeal, dismissal was still warranted because the Sub-

Subcontract language stated Diamond "shall include all work necessary or incidental to complete," among other items, dredging of Section 16, which naturally would include moving the dredge. ROA.752. Accordingly, the District Court correctly found that to the extent Diamond alleges quantum-meruit damages against RLB for tug expenses, such expenses were barred as a matter of law because such work was covered by the scope of the Sub-Subcontract. ROA.1667–68.

Diamond further attempts to muddy the appellate waters by offering alleged evidence to purportedly support its tug expenses claim against RLB, including assertions that "RLB included the KERRILYNN on its claim to the Corps" and that RLB's Randy Boyd, "acknowledged that he had money from the Corps for the KERRILYNN in his bank account, but he did not know how much because he did not segregate it." DN 32, p. 32. Notwithstanding that Diamond misstates the record regarding this purported support, even if true it cannot serve as a basis for overturning the District Court's dismissal of Diamond's tug expenses claim because the District Court's dismissal was based **on the pleadings** under Rule 12(b)(6) and not the factual merits of the claim. ROA.1666–68.  Accordingly, such evidence outside the pleadings, even if it exists, should have no bearing on any appeal of the District Court's dismissal of Diamond's tug expenses claim.

Even if the Court were to go beyond the boundaries of Rule 12(b)(6) and consider evidence outside the pleadings to determine whether the dismissal of

Diamond's tug expenses claim was proper, the alleged evidence offered by Diamond would not support a reversal. Although the costs for the tug M/V MISS KERRILYNN were submitted as part of the Amended REA, all such costs for the Project were supposed to be included in the calculation of the Amended REA, regardless of whether they came from RLB, Harbor, or Diamond, and the tug costs were included with Diamond's certified costs for the Amended REA calculation. ROA.405–07, ROA.139–75. Further, despite Diamond's representations otherwise, Mr. Boyd did not "acknowledge[] that he had money from the Corps for the KERRILYNN in his bank account, but he did not know how much because he did not segregate it." DN 32, p. 32. Instead, Mr. Boyd testified that such tug costs were included in the Amended REA but he did not know how much of the settlement received for the Amended REA was for the tug costs because he did not break it out and instead relied on the representation made to him that Harbor and Diamond would be satisfied with receiving $1.45 million as their portion of the proceeds of the settlement of the Amended REA. ROA.1379.

**C.     Diamond failed to establish this Court has jurisdiction for its appeal of the quantum meruit and Miller Act claims.**

Diamond has the burden of establishing appellate jurisdiction for this interlocutory appeal. *SCF Waxler Marine, L.L.C. v. ARIS T M/V*, 902 F.3d 461, 464 (5th Cir. 2018). However, Diamond only offers a single, conclusory statement that this Court has jurisdiction under 28 U.S.C. § 1292(a)(3). DN 32, p. 8. This statement

alone is not sufficient to satisfy Diamond's burden of establishing appellate jurisdiction.

Ordinarily, appellate jurisdiction is limited to "final decisions of the district courts of the United States." 28 U.S.C. § 1291. An appellate court may, however, entertain appeals from interlocutory orders that "determin[e] the rights and liabilities of the parties to **admiralty** cases in which appeals from final decrees are allowed." 28 U.S.C § 1292(a)(3) (emphasis added). This exception is "construed [] narrowly, hewing closely to the statute's 'original purpose of permitting appeals from orders finally determining one party's liability to another and referring the action for a computation of damages.'" *National Shipping Company of Saudi Arabia v. Valero Marketing and Supply Company*, 963 F.3d 479, 482 (5th Cir. 2020) (internal citation omitted).

First, as established above, Diamond's attempt to appeal its claims dismissed under the November 14th Order are **untimely** and should not be considered. As such, Diamond's only potentially appealable claims are its claims for additional proceeds of the Amended REA based on quantum meruit and its Miller Act claims. Diamond, however, admits that these claims do not give rise to admiralty jurisdiction. ROA.1839–44. Specifically, Diamond has stated:

- "[The District] Court's ruling on the motion to dismiss leaves a Miller Act claim and a quantum meruit claim under Texas law, not an admiralty claim . . . . there is no admiralty law claim remaining." ROA.1839.

- "Diamond's claim for the KERRYLYNN, [the District] Court found, fails as a matter of law. Of the surviving claims, none of these gives rise to admiralty jurisdiction. The theories that Diamond pled under admiralty jurisdiction have been dismissed by this Court." ROA.1841.

Based on its own admissions, it is clear that Diamond cannot satisfy its burden of establishing proper appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(3).

Finally, because Diamond's quantum meruit and the Miller Act claims disposed of by the February 14th Order are not admiralty and maritime claims, Diamond's only avenue for a possible appeal was under Federal Rule of Civil Procedure 54(b). *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 294-95 (5th Cir. 2021). But Diamond failed to seek and obtain a Rule 54(b) certification from the District Court before filing this appeal and thus, this Court lacks jurisdiction over Diamond's appeal.

It is anticipated that Diamond will contend that RLB should not be able to argue the claims on appeal are not admiralty and maritime claims giving rise to jurisdiction under 28 U.S.C. § 1292(a)(3) in light of the arguments made in the Joint Motion to Strike Diamond's Untimely and Improper Jury Demand ("Joint Motion to Strike"). However, unlike the appellate issue here, the arguments made in the Joint Motion to Strike, and the District Court's ruling granting the same, were procedural in nature, not jurisdictional. ROA.1810–28, 1857–71, 1893–99. The arguments made in the Joint Motion to Strike pointed out that throughout the Lawsuit, Diamond plead that the case involved traditional maritime activities, gave

rise to admiralty jurisdiction, and designated the Lawsuit under Federal Rule of Civil Procedure 9(h) ("Rule 9(h)"). ROA.1810–28, 1857–71. Accordingly, it was argued under Federal Rules of Civil Procedure 15, 16(b), and 38(b), as well as under the District Court's Docket Control Order, that Diamond should not be permitted to demand a jury trial so late in the Lawsuit as it would prejudice the defendants. The District Court agreed with these procedural arguments and thus, granted the Joint Motion to Strike. ROA.1893–99.[1]

Nowhere in the Joint Motion to Strike, nor anywhere else in this Lawsuit, has RLB ever conceded that Diamond's claims were admiralty and maritime claims or that its Rule 9(h) designation was proper. Instead, RLB has persistently contested the applicability of the same and reserved its right to challenge such if needed. *See e.g.*, ROA.315–20, 521, 1606 ("RLB does not waive any right to contest Diamond's attempts to invoke Rule 9(h)"), 1607, 1826, fn. 4. Accordingly, RLB has not waived its right to challenge Diamond's alleged appellate jurisdiction under 28 U.S.C. § 1292(a)(3).

---

[1] Diamond has not challenged the District Court's order granting Joint Motion to Strike Diamond's Untimely and Improper Jury Demand on this appeal and cannot do so now.

**D. The District Court rightfully granted summary judgment on Diamond's claim against RLB for equitable-adjustment expenses under a theory of quantum meruit.**

1. <u>Diamond submitted no summary judgment evidence or argument in support of its quantum meruit claim.</u>

RLB challenged Diamond's quantum meruit claim against RLB for additional proceeds of the settlement of the Amended REA and argued:

1. A valid, express contract (*i.e.* the Sub-Subcontract) covered the subject matter underpinning Diamond's quantum meruit claims, precluding quantum meruit claims. ROA.581–82, and

2. Diamond had no evidence that RLB was unjustly enriched, or the amount of such unjust enrichment, to support Diamond's quantum meruit claims. ROA.582.

Although a summary judgment order against Diamond's quantum meruit claims could have been supported under either ground, the District Court correctly ruled that "[i]n response to RLB's motion for summary judgment, Diamond has not produced evidence demonstrating what the reasonable value of the work it performed or the services it rendered, for which it has not already been paid." ROA.1887. While Diamond now claims it "produced overwhelming evidence of the cost of its delay," specifically evidence of the purported "ratio of the contract price" at 54.16%, no such evidence was submitted as alleged support for its quantum meruit claims at the trial court level and thus, cannot serve as a basis for overturning the February 14th Order now.

2. <u>Diamond's failure to present evidence or assert arguments in support of its alleged quantum meruit damages in the District Court waived its right to do so now on appeal.</u>

As noted above, the scope of review for a summary judgment order is limited to matters presented to the trial court. *Keelan*, 407 F.3d at 339. If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be raised for the first time on appeal. *Id.*, *see also FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

As stated in RLB's Reply in Support of Its Motions for Summary Judgment, Diamond's Response to RLB's Motions for Summary completely failed to provide *any* factual or legal support for Diamond's quantum meruit claims against RLB. ROA.1603, 1459–77. Diamond did not even mention the term quantum meruit anywhere in its Response to RLB's Motions for Summary Judgment, let alone the alleged damages for such. Thus, Diamond failed to press any clear argument or evidence demonstrating what the reasonable value of the work it performed, for which it had not already been paid, and thus, Diamond waived its right to do so on appeal.

Nevertheless, Diamond asserts that "[e]vidence for [its quantum meruit damages] in the record is thorough – nearly overwhelming." DN 32, p. 20. Even if

that were true, Diamond's Response to RLB's Motions for Summary Judgment still failed to identify to the District Court the specific evidence allegedly supporting its quantum meruit damages or articulate the precise manner in which that evidence supported such claims. ROA.1459–77. While Federal Rule of Civil Procedure Rule 56 ("Rule 56") permits a court to consider other materials in the record, a court need consider only the materials cited by the non-movant. FED. R. CIV. P. 56(c)(3). Thus, under Rule 56 it is not the trial court's obligation to sift through the record in search of evidence to support a party's claims, instead it is the party's burden to "identify **specific evidence** in the record, and to articulate the '**precise manner**' in which that evidence supported [its] claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (emphasis added). However, because Diamond failed to identify at the trial court level the **specific evidence** in the record allegedly supporting its quantum meruit damages, or articulate the **precise manner** in which that evidence supported such claims, Diamond failed to satisfy its burden and the District Court correctly granted summary judgment against Diamond's quantum meruit claims.

3.  <u>Diamond's new arguments and purported evidence do not support a reversal of the District Court's summary judgment order against its quantum meruit claims against RLB.</u>

Even if this Court considers the quantum meruit arguments and purported evidence now offered for the first time by Diamond, such nevertheless fails to raise a genuine issue of material fact to warrant reversing the February 14th Order.

Diamond's overarching claim is the "underlying contract" and prior alleged "ratio of the contract price," *i.e.* 54.16%, is evidence of the reasonable value of its work for its alleged quantum meruit damages for the REA.[2] DN 32, p. 20 . However, Diamond's reliance on the "contract price" and "underlying contract" to show its alleged damages is misguided both because it fundamentally contradicts the validity of Diamond's quantum meruit claims under Texas law.

"Recovery on an express contract and on quantum meruit are inconsistent. Where there exists a valid express contract covering the subject matter, there can be no implied contract." *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). This express contract bar applies not only when the plaintiff seeks to recover under quantum meruit from the party with whom he expressly contracted, "but also when the plaintiff seeks recovery from a third party foreign to the original contract but who benefitted from its performance." *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "The question of whether an express contract covers the services at issue is a legal

---

[2] Diamond oddly asserts the District Court claimed Diamond raised its claim that it is entitled to a little more than half of the total of the Amended REA, *i.e.* 54.16%, for the first time in its Response to RLB's Motions for Summary Judgment. DN 32, p. 25. However, the District Court did not say this at all.  Instead, the District Court noted that Diamond's raised the argument that "Harbor orally modified the contract to ensure that **Diamond would be compensated out of the REA using a measured-mile analysis**" for the first time in its Response to RLB's Motions for Summary Judgment and then explicitly pointed out that "Diamond's complaint states that the measure of its outstanding obligation is 'in no event less 54% of the REA,' a figure that represents not a measured mile analysis but its ratio of the unit rate set out in RLB's contract with the Corps." ROA.1883–84 (emphasis added).

question reviewed de novo." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 737 (Tex. 2018).

Diamond's reliance on the "contract price" and "underlying contract" as demonstrating the reasonable value of the work it performed supports summary judgment against these quantum meruit claims—not the other way around. This is because such a position by Diamond shows an express contract covers the work that is the subject of Diamond's quantum meruit claims and thus, are barred as a matter of law.

Even if this Court, reviewing such a legal question de novo, does not find an express contract existed covering the same subject matter as Diamond's quantum meruit claims, the alleged evidence of the "contract price," and similar arguments, cannot serve as support for its alleged quantum meruit damages. This is because "**[a] quantum-meruit claim does not proceed on a contract for a specified price**, but proceeds independently of a contract to recover the value of the services rendered or materials furnished." *Hill*, 544 S.W.3d 736 (emphasis added). Instead, "reasonable value" in the context of quantum meruit is sometimes "construed to mean the **expenses incurred** while providing those services and materials." *PIC Realty Corp. v. Southfield Farms, Inc.*, 832 S.W.2d 610, 616 (Tex. App.—Corpus Christi–Edinburg 1992, no writ) (emphasis added).

Diamond failed to present any evidence on the amount of expenses it incurred for the work it performed, for which it had not already been paid, to support its quantum meruit claims. To the contrary, the evidence shows Diamond was not only compensated in full for its costs and expenses on the Project, including overhead, but also profited substantially on the Project based on the payments made by Harbor under the Sub-Subcontract combined with the $950,000 joint check Diamond accepted for its claims to the proceeds of the settlement of the Amended REA. ROA.459–71, 767, 805–06, 405-07.

Nevertheless, Diamond clings to its quantum meruit claims through alleged testimony from Mr. Boyd that Diamond believes serves as evidence for its damages. Specifically, Diamond *claims* that Mr. Boyd testified that:

- When a contractor receives an REA, it owes others on the job their "fair share" of that REA,

- Mr. Boyd expected to split the first (unpaid and withdrawn) REA on the same basis as the contract price and that he did not know how to spilt the REA otherwise, and

- The "delay affected everyone the same amount" or the tires had the "same effect on everyone."

DN 32, p. 20. First, while Diamond provided some citations to the record in its "Statement of the Case" section, Diamond failed to provide any record cites for the above assertions in its argument section. DN 32, p. 20. Accordingly, either Diamond

has no support in the record for these claims or, at best, one is left to guess what previous record citations purportedly support these claims.

Diamond did not cite any support for its claims Mr. Boyd testified that the delay or tires "affected everyone the same amount" or similar arguments. DN 32, p. 20. But Diamond did previously assert Mr. Boyd testified that as a result of the excessive tires in the dredge spoil "[e]veryone suffered as a consequence." DN 32, p. 9 (citing ROA.1490–92). However, nowhere in this cited testimony did Mr. Boyd state that everyone was affected the "same amount," or any similar assertion, but instead simply discussed everyone going slower as a result of the tires, trash, and debris. ROA.1490–92. Even if there was some support in the record that the delay affected everyone the "same amount," there is no evidence in the record showing what that amount was, what the "reasonable value" was for this amount that affected Diamond, or what expenses Diamond incurred for this amount that affected it.

Similarly, Diamond's assertion that Mr. Boyd testified that when a contractor receives an REA, it owes others on the job their "fair share" is likewise missing any citation. DN 32, p. 20. The closest record citation by Diamond to this kind of assertion was when Diamond claimed "RLB's principal . . . acknowledged that the REA must be split among Diamond, Harbor, and RLB." DN 32, p. 13 (citing ROA.1493–97). However, even this assertion by Diamond was a misrepresentation of the cited testimony because Mr. Boyd never said anything about "splitting the

REA" or a contractor owing others on a job their "fair share" of an REA. Instead, Mr. Boyd was discussing a completely different, private job that Diamond was not involved in and which RLB submitted an REA as the subcontractor to the prime contractor. ROA.1493–97. Nevertheless, even if such testimony existed about a "fair share" of the REA, it does not serve as competent evidence for Diamond's alleged quantum meruit damages because it does not provide evidence on the reasonable value of the work Diamond allegedly was not paid for or its expenses.

Diamond's reference to Mr. Boyd's alleged testimony about expecting to split the *first (unpaid) REA* on the same basis as the contract price and that he did not know how to spilt the REA otherwise, is also misleading. DN 32, p. 20 (again no citations to the record). While Mr. Boyd did testify about the first REA and why it was not accepted by the Corps, Mr. Boyd also testified that he could probably think of a different way to split the REA and may not have recalled correctly what the first REA breakdown was based off of his memory alone. ROA.1499–1501. This certainty cannot constitute evidence of the reasonable value of or expenses for Diamond's work that it allegedly was not paid for on the Project.

Diamond then asserts that "Diamond's correspondence to RLB, written as the job was ongoing and before the REA was negotiated, telling RLB that Diamond anticipated recovering just over half the REA," somehow serves as evidence of Diamond's quantum meruit damages. DN 32, p. 20. However, Diamond again failed

to cite what alleged correspondence it was referring to here. Regardless, simply because Diamond's counsel wrote to RLB that Diamond anticipated recovering "just over half the REA," without more, does not serve as evidence of the reasonable value of its work or expenses that it was not paid for. Instead, this is just self-serving hearsay correspondence setting forth Diamond's demands.

Diamond also offers alleged testimony from Harbor's Roland Maturin that "he did not know how the REA should be split" and "he did not know what Diamond's share should be" as purported support for its quantum meruit damages. DN 32, p. 20–21. But such testimony does not serve to help Diamond's position since this testimony presents no evidence whatsoever of the reasonable value of Diamond's work or expenses it incurred but was not paid for already.

4.  The quantum meruit cases cited by Diamond have no bearing on the District Court's summary judgment decision.

Diamond positions its claim for quantum meruit as one which "Texas courts have routinely approved" and claims the facts of this Lawsuit are similar to the facts of such cases because those cases allowed for recovery under quantum meruit even though there were "no specific invoices marked 'delay' or 'work done'," purportedly "like here." DN 32, p. 21. Merely because Diamond could show no invoices marked "delay" or "work done" was not why the District Court granted summary judgment against its quantum meruit claims. Nowhere in the February 14th Order did the District Court state that it was looking "solely," or in the slightest bit, for a

contractual measure of damages for Diamond's quantum meruit claim, like invoices or otherwise—in fact the District Court made no mention of invoices at all in its February 14th Order. *Compare* DN 32, p. 25, *with* ROA.1873–92. Instead, what doomed Diamond's quantum meruit claims was the fact that Diamond failed to present any evidence "demonstrating what the reasonable value of the work it performed or the services it rendered, for which it has not already been paid." ROA.1887.

None of the cases cited by Diamond share similar facts as those underlying this Lawsuit because none of those cases involved a sub-subcontractor, who had a written contract with the subcontractor covering the work at issue, but yet still sought to recovery alleged damages under quantum meruit from the prime contractor even though the undisputed evidence showed the sub-subcontractor not only was paid for all of its costs, overheads and profit for its work but also profited on the project at issue.

Diamond claims that "[t]he closest case, which is dispositive here, is to *Hill v. Shamoun & Norman, LLP* , 544 S.W.3d 724 (Tex. 2018)." DN 32, p. 21. However, Diamond mischaracterizes the issues and holding in *Hill*. First, *Hill* does not determine whether oral testimony may be appropriate to establish damages. Instead, the court was tasked with determining whether a statute of frauds requiring contingent-fee contracts for legal services be signed and in writing, or common law,

precluded quantum meruit recovery for the services provided under an unenforceable oral contingent-fee agreement. *Id*. at 732. The court understood and cited the general principle that a party cannot generally recover under a quantum-meruit claim when there is a valid contract covering the services or materials furnished. *Id*. at 733. When a written contract is deemed unenforceable, however, then recovery under quantum meruit is permissible. *Id* at 735. Additionally, the court noted that a quantum-meruit claim does not proceed on a contract for a specified price, but proceeds independently of a contract to recover the value of the services rendered or materials furnished. *Id*. at 736.

Here, unlike in *Hill*, Diamond's "underlying contract" with Harbor is enforceable and covers the subject matter of Diamond's quantum meruit claim. Thus, Diamond's reliance on the "underlying contract" does help its case but instead dooms it because Diamond is precluded from recovering in quantum meruit under Texas law due to the "underlying contract." Additionally, unlike in *Hill* where the Texas Supreme Court found there was evidence to support some value for the quantum meruit claim, Diamond failed to present any admissible summary judgment evidence to establish the reasonable value of work performed or materials furnished. *Id.* at 741–42. In fact, the contrary exists because the records shows Diamond was not only compensated in full for its costs and expenses, including overhead, but also profited substantially on the Project based on the payments made

under the Sub-Subcontract combined with the $950,000 joint check Diamond accepted for its claims to the proceeds of the settlement of the Amended REA. ROA.459–71, 767, 805–06, 405-07. Moreover, such evidence of payment to Diamond, including the $950,000 joint check from the proceeds of the Amended REA settlement, shows RLB did not "keep all the money" and was not "unjustly enriched."

Diamond then quotes *Walker & Associates Surveying, Inc. v. Roberts* for the proposition that "[w]hat constitutes a reasonable compensation for benefits furnished does not depend on any single factor, but takes into account all the evidence and circumstances." DN 32, p. 23 (citing 306 S.W.3d 839, 859 (Tex. App.—Texarkana 2010, no pet.)). The circumstances in that case were distinctly different than here because in *Walker* the contractor pulled its crew from the job after only completing approximately fifty percent of the work. *Id.* at 845. The court in *Walker* found these circumstances allowed for a recognized exception to the general rule that "a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials." *Id.* at 858. This exception "allowed a breaching contractor to recover under quantum meruit where the owner has accepted and retained some benefit as a result of a contractor's partial performance." *Id.* However, these are not the circumstances here because Diamond

did not breach the Sub-Subcontract by leaving the Project before its completion and no one retained a benefit as a result of Diamond's partial performance that Diamond was not compensated for on the Project.

Diamond cites *H.E. Butt Grocery Co. v. Rencare, Ltd.* because the appellate court "found a quantum meruit award on the basis of a $400 per diem, instead of the invoiced amount, as fair and reasonable." DN 32, p. 23 (citing 2004 WL 199272 (Tex. App.—San Antonio Feb. 4, 2004, pet. denied)). However, Diamond neglects to mention the court in *H.E. Butt Grocery Co.* also held that in determining the reasonable value of services rendered to recover in quantum meruit "must be **offset** by the amount previously paid to the plaintiff for such services." 2004 WL 199272 at *1 (emphasis added). Accordingly, because the previous payments to Diamond not only covered the costs and expenses for its work but also resulted in a profit for Diamond, such payments would offset any alleged reasonable value for Diamond services and Diamond can take nothing on its quantum meruit claims. *Id.* at *2, *6.

Additionally, Diamond relies on *Elec. Wire & Cable Co. v. Ray* for proposition that an "underlying contract [can be] evidence of value" but such reliance is unwarranted. DN 32, p. 23 (citing 456 S.W.2d 260, 263 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.)). This is because in *Ray* the court did not find an "underlying contract" was evidence of value but instead noted that written correspondence between the parties concerning the work and the costs could

serve as both "some evidence of an expressed contract" and "also evidence of the reasonable value of the materials and labor furnished." 456 S.W.2d at 263. However, the court ultimately found there was no valid express contract in existence that was admitted in the case. *Id.* at 264. Accordingly, in *Ray* there was no "underlying contract" but if there was such a contract it would not have served as evidence of value but instead to preclude the quantum meruit claims altogether. *Id.*

Diamond then cites to *Muller v. Light* and its purported holding that "oral testimony as to the fair value of labor and materials involved in extra work was adequate, even though the plaintiff was unable to provide bills or records of his costs for materials and labor." DN 32, p. 23 (citing 538 S.W.2d 487 (Tex. App.—Austin 1976, writ ref'd n.r.e.)). First, *Muller* did not concern claims for quantum meruit but instead concerned an oral agreement on extra work. 538 S.W. at 490–91. Diamond's citation focuses on the oral agreement for the extra work and whether the sole testimony about the value of the extra work was sufficient evidence to uphold a jury's decision. *Id.*. However, the *Muller* case is not analogous to this situation because this appeal does not concern an oral agreement for the extra work, since any such oral agreement claims by Diamond were dismissed previously by the November 14th Order and does not concern any oral testimony supporting the value of the work at issue because Diamond failed to present any evidence, let alone oral testimony, on the reasonable value of its work that it has not been paid for yet.

Diamond also cites the *Kelly v. Tracy* decision and the court's endorsement of "a wide swath of evidence to support damages: evidence of what others received for like services, opinion of witnesses who are familiar with the value of such services, the opinion of the person performing the service, or possibly even the opinion of the person benefitting." DN 32, p. 24 (citing No. 01-18-00913-CV, 2022 WL 2837335 (Tex. App.—Houston [1st Dist.] July 21, 2022, no pet.). Although "a wide swath of evidence to support damages" may have been endorsed by the court in *Kelly*, such evidence was not presented by Diamond to the District Court with its Response to RLB's Motion for Summary Judgment in support of the reasonable value of its work or expenses that it was not paid for in order to avoid a summary judgment ruling against its quantum meruit claims.

While Diamond correctly quotes the black letter law in *Air Conditioning, Inc. v. L.E. Travis & Sons, Inc.*, Diamond's reliance on this case is misguided and fatal for its appeal. DN 32, p. 25 (citing 578 S.W.2d 554, 556 (Tex. Civ. App.—Austin 1979, no writ)). This is because the court in *Air Conditioning, Inc.* ultimately found there was a "complete absence of evidence" to support the jury's answer as to the reasonable value of the mechanical painting work at issue for the appellee's quantum meruit claim. 578 S.W.2d at 556. The court in *Air Conditioning, Inc.* found that the appellee "failed to prove a contract existed between it and the appellant." *Id.* However, the appellee "tried the case and proved up its damages **in contract**" by

introducing evidence of its bills to appellant, its invoices from suppliers for materials used on the job, and testimony as to the methods and procedures by which it computed its bills to appellant on a cost-plus twenty-five percent contract basis. *Id.* (emphasis added). Accordingly, such evidence of "damages in contract" could not support the appellee's quantum meruit claim because "[a] claim in quantum meruit does not proceed upon the contract for the contract price, but proceeds independently of the contract to recover the value of the services rendered or materials furnished." *Id*. The only evidence presented as to the reasonable value of the appellee's mechanical painting was testimony that such value was $10,000 but the jury awarded $23,465.99 and thus, the court found there was "a complete absence of evidence to support the answer given by the jury." *Id.* Accordingly, the court noted it was "apparent that appellee tried the case upon the wrong theory," just like Diamond here with its contract ratio theory that it is entitled to recover 54.16% of the Amended REA based on the "underlying contract"—which is clearly an attempt by Diamond to prove up its damages "in contract." *Id.*

Despite Diamond citing several cases for the black letter law in Texas, Diamond noticeably failed to mention that for quantum meruit to be a valid claim it is not enough to show that the claimant's efforts benefited another party but instead requires proof that the claimant's efforts were "undertaken for the person sought to be charged" and not just flowing to him on account of services rendered to another.

*Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). Diamond did not, and cannot, present admissible summary judgment proof that its efforts in connection with the delays were undertaken **for RLB** and not just flowing to RLB on account of the services Diamond rendered to Harbor under the Sub-Subcontract or otherwise.

Lastly, Diamond cites to *City of Houston v. RF Ball Const. Co.*, 570 S.W.2d 75, 77 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.), *Millgard Corp. v. McKee/Mays*, 49 F.3d 1070 (5th Cir. 1995), and *PYCA Industries v. Harrison County*, 177 F.3d 351, 362 (5th Cir. 1999), all of which discuss the enforceability of a no damages-for-delay provision. However, these cases have no bearing on the issues on appeal because as Diamond states "[t]hough not referenced in the district court's ruling on motions for summary judgment, the district court had previously ruled that Diamond's contract with Harbor included a no-damages for delay clause." DN 32, p. 26 (citing ROA 1664). Accordingly, Diamond's own admission shows this Court should ignore these cases and related arguments.

5.   Diamond's certified costs letter, the payments it received, and Diamond's own accounting records show its quantum meruit claims fail as a matter of law.

Diamond inaccurately claims RLB did not argue that Diamond could not show damages in its summary judgment pleadings. As noted above, RLB argued that Diamond had no evidence that RLB was unjustly enriched, or the amount of such unjust enrichment, to support Diamond's quantum meruit claims. ROA.582. Further,

throughout RLB's Motion for Summary Judgment Against Diamond's Claims, and

RLB's Reply in Support of the Motions for Summary Judgment, RLB argued that

the evidence showed Diamond was not only compensated fully for the costs and

expenses on the Project but actually profited and thus, could not show any alleged

damages. ROA.554–57, 577–78, 581, 1605–06, 1617–18, 1622–24. Specifically,

RLB argued the following:

- Diamond has been paid all it is entitled to for its work on the project at issue. Nevertheless, Diamond greedily seeks more. ROA.554.

- Diamond has been paid in full for its work under the Sub-Subcontract and in addition has been paid the $950,000 it agreed to accept out of proceeds of settlement of the Amended REA. ROA.555.

- As reflected in its own job cost report, Diamond's total receipts on the Project substantially exceed both its total certified costs on the Project, including overhead and profits, and its costs reflected in the job cost report such that it is inconceivable that Diamond is entitled to any further compensation for the Project **under any theory**. ROA.555–56 (emphasis added).

- Diamond cannot demonstrate uncompensated costs or damages, recoverable under the Miller Act **or otherwise**, because Diamond has been paid substantially more than its certified total Project costs, including overhead and profit and received receipts substantially in excess of the costs reflected in Diamonds job cost report. ROA.557 (emphasis added).

- Diamond cannot demonstrate that it has any uncompensated delays. Diamond's own records show it has not only been compensated in full for its Project costs (including overhead and profits) but also shows Diamond has been compensated substantially more than its Project costs based on the payments made by Harbor under the Sub-Subcontract combined with the $950,000 joint check Diamond accepted for its claims to the proceeds of the settlement of the Amended

REA. ROA.577–78, *see also* ROA.581, 1605–06, 1617–18, 1622, 1624.

As such, Diamond's claims that it had to "rebut unmade arguments," and that RLB's arguments and the District Court's holding are "at odds," are plainly contrary to summary judgment filings and the evidence in the record.

Further, Diamond's assertion that RLB's argument that Diamond is limited to the certified costs submittal it made as part of the Amended REA was "rejected" by RLB's principal because "Mr. Boyd testified that he anticipated splitting the REA based on the total job cost," is unsupported by the evidence and not controlling. As explained above, Mr. Boyd did not testify that he anticipated splitting the Amended REA based on the total job cost. *See supra* Section D.2.  Regardless, even if Mr. Boyd had testified about "anticipating" such, this would not change the fact that Diamond's reliance on the "underlying contract" and "ratio of the contract price" is not an acceptable damage model for its quantum meruit claims under Texas law. *See supra* Sections D.2 and D.4. Such alleged testimony by Mr. Boyd would not change the fact that the **undisputed evidence** shows Diamond was not only compensated in full for its costs and expenses on the Project but also profited substantially on the Project based on the payments made by Harbor under the Sub-Subcontract combined with the $950,000 joint check Diamond accepted for its claims to the proceeds of the settlement of the Amended REA. ROA.459–71, 767, 805–06, 405-07. Notably, these facts were not disputed by Diamond.

As noted by the District Court, "when the nonmoving party has failed 'to address or respond to a fact raised by the moving party and supported by evidence,' then the fact is undisputed…. 'Such undisputed facts may form the basis for summary judgment.'" ROA.1880 (quoting *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017)). Such undisputed facts are of particular importance when considering any alleged reasonable value of the services performed by Diamond must be offset by the amount previously paid for such services. *H.E. Butt Grocery Co., Inc..*, 2004 WL 199272, at *1. Therefore, because such undisputed facts show Diamond received payments totaling  far more than its expenses and costs for the Project, any alleged reasonable value of the services it rendered for the delays forming the basis for the Amended REA have been offset and Diamond is not entitled to receive any additional compensation.

Finally, Diamond's claim that "RLB, through counsel, told the district court that Diamond actually gets none of the REA, and the district court's opinion endorses this," is a gross misrepresentation of the record. DN 32, p. 29. Neither RLB nor its counsel have ever told the District Court that "Diamond actually gets none of the REA."  To the contrary, it has been RLB's position consistently throughout this Lawsuit that Diamond was paid $950,000 out of the proceeds of the settlement of the Amended REA as agreed to by Diamond's Mr. Furlette, and Diamond has

accepted and deposited this amount. ROA.555, 559–62, 577–78, 1621–22, 1624.  As noted in RLB's Reply in Support of the Motions for Summary Judgment, Diamond did not dispute these facts.  Reply, p. 7.  As such, the District Court acted well within its discretion to rely on such undisputed facts when forming the basis of its summary judgment. *Broad. Music, Inc.*, 2017 WL 782932, at *2.

**E.    RLB and Travelers were entitled to summary judgment on Diamond's Miller Act Claims.**

As Diamond correctly noted, the principal reason for the District Court's summary judgment against Diamond's Miller Act claims against RLB was that Diamond failed to satisfy its burden of showing it could recover its alleged damages under the Miller Act. DN 32, p. 32, ROA.1887–88, 1891. However, the District Court also disposed of Diamond's Miller Act claims because Diamond failed to timely amend its complaint to incorporate proper Miller Act pleadings as previously instructed by the District Court. ROA.1891. Yet Diamond failed to specifically address either of these reasons on appeal and instead focused on "factual" arguments that it was a subcontractor, not a sub-subcontractor, for the Project and that Diamond purportedly gave timely notice of its claims under the Miller Act.  DN 32, p. 32–34. However, because these were not the reasons for the District Court disposal of Diamond's Miller Act claims, they cannot serve as a basis for the February 14th Order.

1.  <u>Diamond's alleged damages exceeded the permissible scope under the Miller Act and Diamond cannot, and did not, dispute this reality.</u>

Diamond summarily and incorrectly claims it "has established its damages" and thus, did not address its alleged damages at all in its Miller Act argument section. DN 32, p. 32–34. However, Diamond did not with the District Court, and has not on appeal, "established its damages" for either its underlying quantum meruit claims, as detailed above, (*see supra* Section D), or its Miller Act claims, as explained below. Diamond's failure to address such damages in its Miller Act argument section dooms its appeal on such claims.

Diamond's claimed damages are not allowed under the Miller Act because the only delay damages a subcontractor can recover from a Miller Act principal or surety are the "additional or increased costs **actually expended** in furnishing the labor or material in the prosecution of the work provided for in the contract and **attributable to the delay**." *U.S. v. Millers Mut. Fire Ins. Co.,* 942 F.2d 946, 951 (5th Cir. 1991) (emphasis original). The subcontractor may not recover delay damages due to its own delays. *Id.* at 952, n. 14. Thus, liability is limited to the "out-of-pocket costs of delay" and a claimant "cannot recover from a Miller Act surety the profits on out-of-pocket expenditures attributable to delay." *Id.* at 952-53.

RLB argued at the summary judgment stage that Diamond's Miller Act damage model, based on the same "54.16%" contract ratio it pushes on this appeal, was not recoverable under the Miller Act because: (1) it was not based on Diamond's

alleged **increased costs actually expended** in furnishing the labor or materials for Diamond to prosecute the work **attributable to any delay or differing site condition claims**, (2) Diamond's contract ratio unquestionably **included both overhead and profit**, (3) Diamond made no effort to compile, and provided no evidence of, out of pocket costs attributable to delays caused by differing site conditions **unmixed with its own delays or any other delays**, and (4) Diamond's own records showed it was not only fully compensated for its Project costs but also was actually compensated substantially more than its Project costs based on the payments made by Harbor under the Sub-Subcontract combined with the $950,000 joint check Diamond accepted for its claims to the proceeds of the settlement of the Amended REA. ROA.576–78, *see also* ROA.1623–24.

Diamond's only response to these arguments was that there was alleged testimony from RLB's Mr. Boyd and Harbor's Mr. Maturin about the measured mile analysis being "a method to calculate the cost of delay" and then cited the same case, and quoted the same language, that RLB offered in its Motion for Summary Judgment Against Diamond's Claims as purported support for Diamond's position, specifically that "a subcontractor can recover increased out-of-pocket costs for labor and materials furnished in the course of performing its subcontract caused by contractor or government delay." ROA.1476 (quoting *Miller's Mutual Fire Ins. Co. of Texas*, 942 F.2d at 951) (internal quotation marks omitted). As such, in its

Response to RLB's Motions for Summary Judgment, like on this appeal, Diamond wholly failed to address the clear and fatal flaws with its proposed damages for its Miller Act claims.

Accordingly, the District Court correctly recognized Diamond's Miller Act claims involved the proceeds of settlement of the Amended REA which incorporated amounts that Diamond never actually expended in the direct performance of the work including calculated overhead and profits, neither of which are recoverable under the Miller Act, and also properly found Diamond failed to meet its summary judgment burden in response to RLB's argument that the Amended REA "did not segregate out delay costs, much less any delay costs of Diamond." ROA.1888 (citing ROA.405–07, 577). On this appeal, Diamond has again presented no arguments or evidence in the record to counter these findings that would warrant a reversal of the District Court's summary judgment against Diamond's Miller Act claims.

2.   The District Court acted within its discretion to strike Diamond's untimely Miller Act notice pleadings and regardless, the evidence shows Diamond failed to provide proper notice.

In addition to finding that Diamond failed to satisfy its burden of showing it could recover its alleged damages under the Miller Act, the District Court also disposed of Diamond's Miller Act claims because Diamond failed to timely amend its complaint to incorporate proper Miller Act pleadings as instructed by the District Court. ROA.1887–88, 1891.  Similar to Diamond disregarding the District Court's

Miller Act damages ruling, outside of one general comment about Diamond not pleading it gave timely notice, Diamond's Miller Act arguments on appeal fail to specifically address the District Court's ruling on Travelers and RLB's Motions to Strike Diamond's Untimely Second Amended Complaint and the disposal of its Miller Act claims on that basis. Instead, Diamond attempts to shift focus to its alleged "factual" arguments that it purportedly gave timely notice under the Miller Act.

Diamond likely failed to specifically address or attempt to appeal the District Court's ruling on Travelers and RLB's Motions to Strike Diamond's Untimely Second Amended Complaint because it likely knew it could not show the District Court abused its discretion. "District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion." *Topalian*, 954 F.2d at 1139 (5th Cir. 1992). Whether to permit Diamond to untimely amend its complaint squarely falls within the District Court's control of its docket and trial procedure applications.

The District Court acted well within its discretion when it granted Travelers and RLB's Motions to Strike Diamond's Untimely Second Amended Complaint because: (1) Diamond failed to timely amend its complaint to cure its pleading deficiencies by incorporating allegations that it gave proper Miller Act notice

pursuant to 40 U.S.C. § 3133(b)(2) as directed by the November 14th Order, (2) Diamond failed to file a motion for leave for its untimely Second Amended Complaint as required by Rule 15 and the District Court's local rules, (3) Diamond failed to obtain consent from any of the opposing parties to amend its complaint, (4) Diamond failed to show good cause and excusable neglect for filing an untimely pleading amendment as required by the controlling Docket Control Order and Rule 16(b), and (4) Diamond did not file any response to RLB's motion to strike. ROA.368, 1676, 1685, 1699–1703, 1740–1742, 1833–35, *see also* Fed. R. Civ. P. 15(a), Fed. R. Civ. P. 16(b), Galveston District Court Rule of Practice 5(i). Accordingly, the District Court did not abuse its discretion when it granted Travelers and RLB's Motions to Strike Diamond's Untimely Second Amended Complaint and as such, there is no basis for reversing the District Court's disposal of Diamond's Miller Act claims.

Nevertheless, even if this Court disregarded the District Court's right to control its docket and found it abused its discretion by granting Travelers and RLB's Motions to Strike Diamond's Untimely Second Amended Complaint, the evidence shows Diamond did not provide proper notice under the Miller Act. Diamond claims that its March 30, 2021 certified costs letter for the Amended REA, and correspondence to RLB in April and May of 2021 demanding "payment under the REA," constitutes valid notice under the Miller Act. DN 32, p. 34 (citing ROA.132).

However, such claims are unfounded because under the Miller Act Diamond, as a second-tier subcontractor, was required to provide notice that "state[s] with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied for or whom the labor was done or performed." *See* 40 U.S.C. §§ 3133(b)(1), (b)(2).

First, Diamond's certified costs letter woefully falls short of providing proper notice under the Miller Act because it does not state the alleged amount it is owed **under the Miller Act**, or even mention the Miller Act, but instead states it was being submitted for the Amended REA. ROA.132. Moreover, Diamond's certified costs letter does not name RLB as "the party to whom the material was furnished or supplied for or whom the labor was done or performed," but instead it is addressed to Harbor. *Id.*

Second, the April and May of 2021 correspondence that Diamond relies on only vaguely states: "[t]he purposes of this correspondence is to serve as notice under the Miller Act of Diamond's claim of no less than $2,433,768.77, exclusive of interest, costs, and fees: the sum of its unpaid invoices and the known sum it is owed for delay at the inception of the contract." This is not adequate notice as required by the Miller Act. Therefore, the evidence shows that Diamond failed to provide the required notice under the Miller Act and there is no basis for reversing the District Court's disposal of such claims against RLB and Travelers.

3. <u>Diamond's appeal of the District Court's finding that it is a second-tier subcontractor, not a first-tier subcontractor, is untimely and is also not support of the evidence.</u>

Diamond vaguely attempts to challenge the finding that Diamond was a sub-subcontractor, and not a subcontractor from the November 14th Order.  DN 32, p. 26. However, like Diamond's appeal of the District Court's dismissal of its tug expenses claim, this challenge is also untimely because it was not appealed within 30 days of the November 14th Order. *See* 28 U.S.C. §2107(a), Fed. R. of App. P. 4, *Stoot*, 851 F.2d at 1517, *see also* ROA.1672–73, DN 1, DN 32, p. 26.

Moreover, even if this Court disregards the fact that any attempted appeal by Diamond of the District Court's finding that it was a second-tier subcontractor is untimely, the evidence still establishes that Diamond was not a first-tier subcontractor. As detailed in RLB's Motion for Summary Judgment Against Diamond's Claims, and as determined previously by the District Court in its November 14th Order, Diamond did not have a direct contractual relationship with RLB. ROA.564–71, 1658, 1660. Consequently, Diamond cannot qualify as a first-tier subcontractor under the Miller Act. 40 U.S.C. § 3133(b)(1).

Notably, the alleged support offered by Diamond on appeal cannot change the fact that it did not qualify as a first-tier subcontractor under the Miller Act. First, just because Diamond claims "Diamond's and Harbor's contracts are identical in the great majority of regards," does not change the fact that Diamond has no direct

contractual relationship with RLB. ROA.564–71, 1658, 1660.  Second, no deposition testimony from Harbor's Roland Maturin's deposition can change the facts about the contractual structure of the parties.  Although Diamond offers a single portion from Mr. Maturin's deposition testimony as support, this sole citation is extremely misleading because it neglects to include Mr. Maturin's later testimony which clearly shows his understanding of the contractual relationships of the parties and that Diamond was not RLB's subcontractor. ROA.912.  Therefore, even if this Court were to consider Diamond's alleged support, there is no basis for reversing the District Court's disposal of Diamond's Miller Act claims.

## F.     Diamond failed to challenge the District Court's summary judgment order as to RLB's counterclaims on this appeal.

Diamond did not challenge the February 14th Order as to RLB's counterclaims. ROA.1888–90. Accordingly, the District Court's summary judgment as to these counterclaims by RLB should stand and not be reversed for Diamond's failure to timely and properly appeal such matters.

## <u>CONCLUSION</u>

RLB requests that this Court either dismiss this appeal for lack of jurisdiction or affirm the District Court's orders dismissing all of Diamond's claims against RLB and Travelers and award RLB all such other and further relief, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

By:   */s/ Mark C. Guthrie*
         Mark C. Guthrie
         Texas Bar No. 08636600
         Federal ID No. 6213
         mguthrie@winstead.com
         Cody N. Schneider
         Texas Bar No. 24073595
         Federal ID No. 2228631
         cschneider@winstead.com
         John T. Wooldridge, Jr.
         Texas Bar No. 24118590
         Federal ID No. 3669002
         jwooldridge@winstead.com
         **WINSTEAD PC**
         600 Travis Street, Suite 5200
         Houston, Texas 77002
         Telephone (713) 650-8400
**COUNSEL FOR APPELLEE
RLB CONTRACTING, INC.**

## CERTIFICATE OF SERVICE

I certify that on May 22, 2023, the foregoing document was served upon all counsel of record via the court's CM/ECF Document Filing System.

*/s/ Cody N. Schneider*
Cody N. Schneider

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 12,801 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point type face.

*/s/ Cody N. Schneider*
Cody N. Schneider